UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INSIGHT TERMINAL SOLUTIONS, LLC | ) | **CASE NOS. 19-32231** |
| | ) | |
| INSIGHT TERMINAL HOLDINGS, LLC | ) | **CASE NOS. 19-32232** |
| | ) | |
| | ) | |
| **Debtors** | ) | **Proposed Jointly Administered** |
| | ) | **Chapter 11 Cases** |
| | ) | |

**EMERGENCY MOTION OF DEBTORS AND
DEBTORS-IN-POSSESSION FOR INTERIM AND FINAL ORDERS
(A) AUTHORIZING DEBTORS TO OBTAIN SUPERPRIORITY POST-PETITION
FINANCING PURSUANT TO 11 U.S.C. §§ 364(c)(1) AND (B) SCHEDULING
FINAL HEARING PURSUANT TO RULES 4001(b), 4001(c) AND 9014**

Come now the above-styled Debtors, Insight Terminal Solutions, LLC and Insight Terminal Holdings, LLC (the "Debtors") in the above captioned chapter 11 case (the "Chapter 11 Cases"), by and through counsel, and hereby files this Motion of Debtors and Debtors-in-Possession for Interim and Final Orders (A) Authorizing Debtors and Debtors in Possession to Obtain Superpriority Post-Petition Financing Pursuant to 11 U.S.C. §§ 364(c)(1) and (B) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b), 4001(c) and 9014, (the "Bridge DIP Motion") seeking an Interim Order and a Final Order, pursuant to Sections 364(c)(1) of the United States Bankruptcy Code ("Bankruptcy Code") and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") for superpriority post-petition financing from Cecelia Financial Management, LLC (the "Bridge DIP Lender")[1] on the terms set

---

[1] The Bridge DIP Lender is owned by Sharon Siegel, the wife of the Debtors' manager, John Siegel, Jr., and their two children. Sharon Siegel is also the owner of Insight Terminal Holdings, LLC. As such, the Bridge DIP Lender is an "insider" as defined in Section 101(31) of the Bankruptcy Code.

forth in the attached Exhibit A (the "Bridge DIP Facility"). In support of this Bridge DIP Motion, the Debtors provide as follows:

## JURISDICTION

1. On July 17, 2019 (the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court"), their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* as amended (the "Bankruptcy Code"), which commenced this Chapter 11 Case.

2. The Debtors continue to operate their business and manage their property as a debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no committee has yet been appointed or designated.

3. This Court has jurisdiction to consider this Bridge DIP Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The statutory bases for relief are §§ 105(a) and 364(c) of the Bankruptcy Code.

## BACKGROUND AND REQUEST FOR RELIEF

4. By this Bridge DIP Motion, the Debtors are seeking an Interim Order and a Final Order, for superpriority post-petition financing from the Bridge DIP Lender pursuant to Section 364(c)(1) of the Bankruptcy Code on the terms set forth in the Bridge DIP Facility Term Sheet.

5. Shortly prior to and since the inception of these cases, the Debtors have been in continuing separate negotiations with its prepetition lender, Autumn Wind Lending, LLC, and with another third-party entity, regarding longer term DIP financing that will fund these chapter 11 cases. A deal with one of the prospective DIP lenders has not been reached, but discussions with

both candidates remain ongoing. The Debtors remaining optimistic that a longer term DIP arrangement can be reached in the early part of August.

6. Until the Debtors can reach an agreement on a longer term DIP facility, it has certain essential and necessary expenses it will incur from July 31 through the week of August 12, 2019. These critical expenses are for payroll and monthly compensation, office rent and expenses, monthly insurance premiums, and business meeting and travel expenses; the foregoing expenses may total up to $75,000.[2]

7. Section 364(c)(1) of the Bankruptcy Code provides in relevant part that "[i]f the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt . . . with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title . . . ."

8. Courts have articulated a three-part test to determine whether a debtor in possession is entitled to financing under section 364(c) of the Bankruptcy Code: (i) whether the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim; (ii) whether the credit transaction is necessary to preserve the assets of the estate; and (iii) whether the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. *See, e.g., In re Farmland Indus., Inc.*, 294 B.R. 855, 880 (Bankr. W.D. Mo. 2003); *In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa, 1991).

---

[2] The expenses for (i) payroll and monthly compensation ($45,500), (ii) office rent and expenses ($12,000) and (iii) a monthly insurance premium ($2,000) are fixed. The remaining expenses relating to business meetings and travel expenses are unknown, but are estimated and will be capped at $15,500 under the DIP Bridge Facility.

9. In satisfying the standards of section 364(c) of the Bankruptcy Code, a debtor need not seek credit from every available source but should make a reasonable effort to seek other sources of credit available of the type set forth in Sections 364(a) and (b) of the Bankruptcy Code. *See In re Snowshoe Co*., 789 F.2d 1085, 1088 (11th Cir. 1986); *see also In re Sky Valley, Inc*., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing"), *aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc*., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

10. The Debtors have determined, in the exercise of their best and reasonable business judgment, that the financing to be provided by the Bridge DIP Lender is the most favorable funding available under the circumstances and addresses the Debtors' immediate necessary financing needs during these Chapter 11 Cases. The financing available under the DIP Term Sheet and the DIP Orders will enable the Debtors, among other things, to avoid the cessation of its operations, maintain the continuity of its operations, and maximize the value of its business. Based upon the totality of the circumstances, the Debtors submit that such protections are appropriate, in the best interest of the creditors of these estates and should be approved by this Court.

11. The Debtors and the Bridge DIP Lender engaged in arm's length and good faith negotiations over the terms of the Bridge DIP Facility. Due to their immediate financial constraints, the Debtors are presently unable to obtain, in the ordinary course of business or otherwise, credit allowable under sections 364(b) of the Bankruptcy Code.

12. Notice of the filing of this Bridge DIP Motion and the expedited hearing requested hereon has been given to the United States Trustee for the Western District of Kentucky, the Debtors' twenty largest unsecured creditors as designated in Debtors' Petitions, and all secured

creditors, including counsel for Autumn Wind Lending LLC, via electronic mail, facsimile, and/or overnight express mail, as appropriate.

WHEREFORE, Debtors respectfully request the Court to enter an order substantially in the form attached hereto as <u>Exhibit B</u>, and a final order in a form to be presented prior to a final hearing on this Motion: (i) authorizing the Debtors to obtain post-petition financing and enter into Bridge DIP Term Sheet substantially in the form attached to the Bridge DIP Motion as <u>Exhibit A</u>; (ii) granting superpriority claims for the benefit of the Bridge DIP Lenders; (iii) authorizing the Debtors to obtain and utilize the Bridge DIP Facility, pending a final hearing; (iv) scheduling the Final Hearing and approving notice with respect thereto;, and (v) granting any additional relief that is just and proper.

Dated: July 29, 2019

Respectfully submitted,

*/s/ Andrew D. Stosberg*
Andrew D. Stosberg
KBA ID No. 87969
MIDDLETON REUTLINGER
401 S. Fourth Street, Suite 2600
Louisville, Kentucky 40202
Tel: (502) 625-2734
astosberg@middletonlaw.com
PROPOSED COUNSEL FOR THE DEBTORS

## CERTIFICATE OF SERVICE

It is hereby certified that on July 29, 2019 a true and correct copy of the foregoing was served (a) electronically through the court's CM/ECF system at the electronic addresses as set forth in the ECF system, including the U.S.Trustee, and (b) sent via facsimile, electronic mail, or overnight mail to all secured creditors, the Debtors' twenty largest unsecured creditors as designated in the Debtors' Petitions.

*/s/ Andrew D. Stosberg*
Andrew D. Stosberg
PROPOSED COUNSEL FOR THE DEBTORS