UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| INSIGHT TERMINAL SOLUTIONS, LLC, *et al.*[1] ) | CASE NO. 19-32231 |
| ) | |
| Debtors ) | Jointly Administered |
| ) | Chapter 11 Cases |
| ) | |

**MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING SECURED AND SUPER-PRIORITY FINANCING PURSUANT TO SECTIONS 364 AND 507(B), (II) MODIFYING AUTOMATIC STAY UNDER SECTION 362, (III) GRANTING OTHER RELATED RELIEF, AND (IV) SCHEDULING A FINAL HEARING**

Come now the above-styled Debtors, Insight Terminal Solutions, LLC and Insight Terminal Holdings, LLC (the "Debtors") in the above captioned chapter 11 case (the "Chapter 11 Cases"), by and through counsel, and hereby files this Motion of Debtors and Debtors-in-Possession for Interim and Final Orders (i) Authorizing Secured and Super-Priority Financing Pursuant to Sections 364 and 507(b), (ii) Modifying Automatic Stay under Section 362, (iii) Granting Other Related Relief, and (iv) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Motion"). In support of this Motion, the Debtors provide as follows:

**JURISDICTION**

1. On July 17, 2019 (the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court" or "Court"), their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11

---

[1] The Debtors in these Chapter 11 cases are Insight Terminal Solutions, LLC (Case No. 19-32231) and Insight Terminal Holdings, LLC (Case No. 19-32232), and the Court has entered an order in this case directing for the procedural consolidation and joint administration of the Chapter 11 cases. The docket in this Case No. 19-32231 should be consulted for all matters affecting the above listed cases.

U.S.C. §§ 101 *et seq.* as amended (the "Bankruptcy Code"), which commenced this Chapter 11 Case.

2.     The Debtors continue to operate their business and manage their property as a debtors-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no committee has yet been appointed or designated.

3.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409. The statutory bases for relief are §§ 105(a) and 364(c) of the Bankruptcy Code, and this Motion is filed is filed in accordance with Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## BACKGROUND

4.     The Debtors' businesses require the availability of credit in order to finance the ordinary costs of their operations. Without such credit, the Debtors will not be able to pay their employees and otherwise finance their other direct operating expenses. The ability of the Debtors to pay employees and otherwise finance their operations is essential to the Debtors' continued viability. In addition, the Debtors' have a critical need for immediate financing. Without the immediate availability of the post-petition financing, the continued operation of the Debtors' businesses would not be possible, and serious and irreparable harm to the Debtors and their estates would occur. The preservation, maintenance, and enhancement of the going concern value of the Debtors are of the utmost importance to a successful reorganization of the Debtors under Chapter 11 of the Bankruptcy Code.

5. Earlier in these Chapter 11 Cases, this Court approved a certain Existing DIP Facility funded by Cecelia Financial Management, LLC ("Cecelia"). (*See* Order Granting Motion to Amend Interim Order Granting Motion to Borrow dated August 5, 2019 [Doc. No. 53]). The Existing DIP Facility provided by Cecelia allows the Debtors to operate through August 30, 2019. However, Cecelia is unwilling or unable to provide an additional DIP facility to fund these Chapter 11 Cases on a longer-term basis.

6. Since the inception of these Chapter 11 Cases through roughly mid-August, the Debtors negotiated with its prepetition lender, Autumn Wind Lending, LLC ("AWL"), regarding a longer-term DIP loan that could fund these Chapter 11 Cases for a significant period of time. These negotiations with AWL, however, were unsuccessful.

7. The Debtors also communicated about post-petition financing with Bay Bridge Exports, LLC concurrently during their aforementioned negotiations with AWL. These discussions with Bay Bridge Exports, LLC resulted in an agreement between the parties that provides for the post-petition financing for which the Debtors now seek approval.

### REQUEST AND BASIS FOR RELIEF

8. The Debtors seek approval of interim and final orders authorizing them to, *inter alia*, obtain post-petition financing (the "Post-Petition Financing") pursuant to the terms and conditions of the Debtor-in-Possession Loan Agreement (the "Loan Agreement"[2] and, together with all notes, security agreements and all ancillary or related instruments, agreements or other documents at any time executed in connection therewith, the "Loan Documents" and each individually, a "Loan Document") between the Debtors and Bay Bridge Exports, LLC (the

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Loan Agreement and in the Motion. In the case of any conflicting definitions, the definitions provided by the Loan Agreement will control.

3

"Lender"), including obtaining expedited interim approval of the Loan Documents and the Post-Petition Financing through the date of a final hearing for the same; and requesting that this Court schedule a final hearing and approve notice with respect thereto; and further requesting that this the entry a final order by this Court approving the Post-Petition Financing on a permanent basis.

Summary of the Post-Petition Financing

9.  The terms of the Post-Petition Financing shall be governed by (a) the Loan Agreement attached hereto as <u>Exhibit A</u> and (b) certain Court Orders, including (i) an interim order approving the Motion that is substantially in the form of the proposed Interim Order attached hereto as <u>Exhibit B</u> (the "<u>Interim Order</u>") and (ii) an order approving the Post-Petition Financing on a permanent basis after a final hearing on the Motion (the "<u>Final Order</u>"). A summary of the terms and conditions Post-Petition Financing is below:

(a) **DIP Loan Amount**: The Debtors are expressly authorized to borrow from the Lender, on the terms and subject to the conditions and limitations set forth in the Loan Documents, up to one million $1,000,000.00 to operate during the Chapter 11 Cases, subject to Use of Proceeds terms and conditions. All loans made under the Loan Agreement are referred to as the "<u>Loans</u>".[3] The amount of the initial draw under the Post-Petition Financing shall be One Hundred Sixty-Six Thousand Five Hundred Dollars ($166,500.00). plus Lender's legal fees and expenses.

(b) <u>Use of Proceeds</u>. Subject to the Budget attached hereto as <u>Exhibit C</u>, the Interim Order and the Final Order, Debtors agree that they shall use the proceeds of the Loans solely (i) to provide working capital for Debtors and to pay costs of administration of the Bankruptcy Cases, all in accordance with the Budget, (ii) repay the Existing DIP Loan, and (iii) to pay all fees and expenses of counsel to Lender incidental to this Agreement and prior negotiations. No portion of the Loans shall be used in any way to investigate any claims against Lender or to assert any claims or defenses of any

---

[3] Any interest on the Loans, and all fees, costs, expenses, indebtedness, obligations and liabilities of the Debtors to the Lender under, or in respect of, the Loan Documents, the Interim Order and the Final Order ultimately entered by the Court, are referred to herein as the "<u>Obligations</u>".

kind or character against Lender whether such claims or defenses arise under the Loans or any other loan or lease or other transaction or occurrence.

(c) **Interest Rate**. The fixed rate of ten percent (10%) per annum.

(d) **Lender Fees and Expenses**: The Debtors are further authorized and obligated to pay all facility and other fees and expenses, including, but not limited to, all reasonable fees and expenses of professionals engaged by the Lender (including the out-of-pocket expenses, reasonable fees, and disbursements of counsel to the Lender) in accordance with the terms of the Loan Documents. The professional fees and expenses incurred by the Lender are not subject to the provisions of Bankruptcy Code §§ 327, 328, 329, 330 or 331, and will be paid pursuant to the Loan Documents without the necessity of further order of this Court.

(e) **Lender Liens under Section 364(c) of the Bankruptcy Code**: As security for the Obligations, and as provided in the Loan Documents, and pursuant to Sections 364(c)(1) and (2) of the Bankruptcy Code, the Lender shall have (except as set forth below, effective upon the date of the Interim Order and continuing without the necessity of the execution, filing and/or recordation of mortgages, security agreements, patent security agreements, trademarks security agreements, pledge agreements, financing statements or otherwise), valid, perfected, and enforceable security interests and liens (collectively, the "Lender's Lien") upon all present and after-acquired personal property, fixtures, real property, leasehold interests and interests in the foregoing property of the Debtors of any nature whatsoever, wherever located, including, without limitation, Debtors' leasehold interest under that Army Gateway Redevelopment Project Sub-Ground Lease for West Gateway dated as of September 24, 2018, between Oakland Bulk and Oversized Terminal, LLC, as sub-landlord, and ITS, as subtenant (the "Sub-Ground Lease") and all proceeds thereof, all accounts, deposit accounts, inventory, general intangibles, commercial tort claims, equipment, goods, fixtures, chattel paper, books, records, investment property, money, cash and cash equivalents, patents, trademarks, copyrights, royalty payments, license fees and any other item of Collateral (as defined in the Loan Agreement) (collectively, with all proceeds and products of the foregoing, the "Collateral"), provided, however, that (i) the Collateral does not include any of the Debtors' claims and causes of action arising under Bankruptcy Code §§ 544, 545, 547, 548, 549, and 550, or proceeds therefrom, and (ii) the Lender's Lien is subject to the Carve-Out. Notwithstanding the statements herein,

5

the Lender's Lien on the Sub-Ground Lease is subject to the issuance of the Final Order.

(f) **Non-Priming Lien**. Subject to the Carve-Out, the Lender's Lien in the Collateral held by or granted to the Lender as security for the Obligations shall be a first priority, senior, perfected lien securing the full amount of the Obligations as described above, except that the Lender's Lien shall not prime any pre-petition liens and security interests held by Autumn Wind Lending, LLC's ("AWL") in the AWL Collateral (as defined below) to the extent AWL's pre-petition liens and/or security interests are valid, enforceable and unavoidable and were properly perfected pre-petition (such pre-existing non-avoidable security interests in favor AWL, the "AWL Liens"). The term "AWL Collateral" is limited to personal property acquired by Borrowers prior to the Petition Date and does not include Debtors' leasehold interest under the Sub-Ground Lease or any proceeds thereof.

(g) **Lender Super-Priority Claim Status**: Subject to the Carve-Out, in accordance with Bankruptcy Code §§ 364(c)(1) and 507(b), and separate and independent from the security for the Obligations granted to the Lender, the Obligations also shall be an administrative claim (the "Super-Priority Claim") with priority in payment over the Existing DIP Loan and any and all other administrative expenses of any kind, and the Super-Priority Claim granted to the Lender shall be senior to the rights of the Debtors, and any successor trustee or any other creditor or estate representative in the Bankruptcy Cases or any subsequent proceedings under the Bankruptcy Code. No cost or expense of administration shall be senior to, equal to, or pari passu with, the Super-Priority Claim granted to the Lender for the Obligations. Notwithstanding the foregoing, but without affecting in any way the Lender's priority over any and all other administrative claims or other claims, the Super-Priority Claim granted to the Lender will not have priority over the Carve-Out.

(h) **Carve-Out**: "Carve-Out", as used herein, means (i) the amount of statutory fees and expenses owed by the Debtors to the United States Trustee, and (ii) the amount of legal fees and expenses of Middleton Reutlinger, P.S.C ("MR"), proposed counsel for the Debtors. Notwithstanding any other provision of Interim Order, the Super-priority Claim and any Liens in favor of the Lender, shall be subject to the Carve-Out. Upon entry of the Final Order, Debtors' may use proceeds of the Loan to fund the Carve-Out in advance by remitting funds in an amount not to exceed two hundred fifty thousand dollars ($250,000) to the Debtors to hold in escrow at MR (the "Carve-Out Retainer"). Debtors and Lender

6

        reserve the right to seek to replenish the Carve-Out retainer. Disbursements of any amounts from the Carve-Out Retainer shall be subject to prior allowance and approval by the Court. Any funds remaining upon full payment of all Carve-Out amounts shall be returned to Lender.

(i)     **Maturity Date**. February 25. 2020.

(j)     **Events of Default**. *See* Section 8.1 of the Loan Agreement.

(k)     **Guaranty**. The Post-Petition Financing is to be personally guaranteed by John J. Siegel, Jr. ("Siegel"). Siegel is the Manager of both Debtors.

The Debtors advise that this preceding summary is not comprehensive, and all parties in interest should review the Loan Agreement and the proposed Interim Order to understand the full and complete terms and conditions of the Post-Petition Financing.

### Legal Support for the Post-Petition Financing

10.     Section 364(c) of the Bankruptcy Code provides in relevant part that

> "[i]f the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt . . . (1) with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien.

*See* 11 U.S.C. § 364(c).

11.     Courts have articulated a three-part test to determine whether a debtor in possession is entitled to financing under section 364(c) of the Bankruptcy Code: (i) whether the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, *i.e.*, by allowing a lender only an administrative claim; (ii) whether the credit transaction is necessary to preserve the assets of the estate; and (iii) whether the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. *See, e.g.*,

*In re Farmland Indus., Inc.*, 294 B.R. 855, 880 (Bankr. W.D. Mo. 2003); *In re Aqua Assocs.*, 123 B.R. 192, 195-96 (Bankr. E.D. Pa, 1991).

12.  In satisfying the standards of section 364(c) of the Bankruptcy Code, a debtor need not seek credit from every available source but should make a reasonable effort to seek other sources of credit available of the type set forth in Sections 364(a) and (b) of the Bankruptcy Code. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (11th Cir. 1986); *see also In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing"), *aff'd sub nom., Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

13.  The Lender has indicated a willingness to consent and agree to provide financing to the Debtors pursuant to the Loan Documents, subject to the terms and conditions thereof and the entry of the Interim Order. The Debtors are unable to obtain interim or permanent financing from sources other than the Lender on terms more favorable than under the Loan Documents. The Debtors have been unable to obtain interim unsecured credit solely under § 503(b)(1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtors without (a) granting to the Lender claims having super-priority over that of all administrative expenses of the kind specified in §§503(b), 507(b) and 546(c) of the Bankruptcy Code (subject to the Carve-Out), and (b) securing such loans and other obligations with senior liens on and security interests in all of the pre-petition and post-petition assets, properties and interest in property of the Debtors (the "Collateral") subordinate only to the AWL Liens on the AWL Collateral and the Carve-Out.

14. The Debtors have determined, in the exercise of their best and reasonable business judgment, that the financing to be provided by the Lender is the most favorable funding available under the circumstances, and addresses the Debtors' immediate and longer term necessary financing needs during these Chapter 11 Cases. If approved on an interim basis, the Post-Petition Financing under the Loan Documents will enable the Debtors, among other things, to avoid the cessation of its operations, maintain the continuity of its operations, and maximize the value of its business. Based upon the totality of the circumstances, the Debtors submit that such protections are appropriate, in the best interest of the creditors of these estates and should be approved by this Court.

15. Lender is the holder of a certain Conversion Right Option in up to fifty percent of ITH's Class A units pursuant to an Amended and Restated Secured Convertible Promissory Note by and between Siegel (as borrower), and Lender (as lender). Notwithstanding the existence of the parties' prior transaction and relationship, the Post-Petition Financing has been negotiated in good faith between the Debtors and the Lender; and any credit extended and loans made to the Debtors pursuant to the Loan Documents should be deemed and found to have been extended, issued, or made in good faith as required by and within the meaning of § 364(e) Bankruptcy Code.

16. Based on the foregoing the terms of the Post-Petition Financing are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and that the lien, security interest, and administrative claim granted to the Lender in conjunction with the Post-Petition Financing are supported by reasonably equivalent value and fair consideration.

17. Notice of the filing of this Motion and the expedited hearing requested hereon has been given to the United States Trustee for the Western District of Kentucky, the Debtors' twenty largest unsecured creditors as designated in Debtors' Petitions, and all secured creditors, including counsel for Autumn Wind Lending LLC, via electronic mail, facsimile, and/or overnight express mail, as appropriate.

WHEREFORE, Debtors respectfully request the Court to enter an order substantially in the form attached hereto as <u>Exhibit B</u> (i) generally approving and authorizing the Debtors to obtain Post-Petition Financing, execute and enter into Loan Agreement substantially in the form attached to the Motion as <u>Exhibit A</u>, and execute the related Loan Documents; (ii) granting the Lender's Lien and superpriority claims for the benefit of the Lender as described herein; (iii) scheduling the Final Hearing and approving notice with respect thereto allowing the approval of the foregoing on a permanent basis; and (iv) granting any additional relief that is just and proper.

Dated: August 28, 2019

                                          Respectfully submitted,

                                          <u>/s/ Andrew D. Stosberg</u>
                                          Andrew D. Stosberg
                                          KBA ID No. 87969
                                          MIDDLETON REUTLINGER
                                          401 S. Fourth Street, Suite 2600
                                          Louisville, Kentucky 40202
                                          Tel: (502) 625-2734
                                          astosberg@middletonlaw.com
                                          PROPOSED COUNSEL FOR THE DEBTORS

**CERTIFICATE OF SERVICE**

It is hereby certified that on August 28, 2019 a true and correct copy of the foregoing was served (a) electronically through the court's CM/ECF system to counsel for the U.S. Trustee and upon all parties receiving electronic notifications in this case through the U.S. Bankruptcy

10

Court's CM/ECF system; and, (b) sent by first class U.S. mail, postage prepaid to all persons identified in Debtors' Mailing Matrix.

                                                   */s/ Andrew D. Stosberg*
                                                   Andrew D. Stosberg
                                                   PROPOSED COUNSEL FOR THE DEBTORS