UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: ) | |
| ) | |
| INSIGHT TERMINAL SOLUTIONS, LLC, et al. ) | CASE NO. 19-32231(1)(11) |
| ) | |
| Debtors ) | |

### MEMORANDUM- OPINION

This matter is before the Court on the Motion of Autumn Wind Lending, LLC ("Autumn Wind") for Entry of an Order Dismissing the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. § 1112 ("Motion to Dismiss"). The Court considered the Motion to Dismiss of Autumn Wind, the Objection to the Motion to Dismiss filed by Debtor Insight Terminal Solutions, LLC ("ITS") and Associated Debtor Insight Terminal Holdings, LLC ("ITH"), as well as the comments of counsel and testimony of the witnesses at the evidentiary hearing held on the matter. For the following reasons, the Court will **DENY** the Motion to Dismiss.

### PROCEDURAL AND FACTUAL BACKGROUND

On or about September 24, 2018, ITS as the Borrower, and ITH as the Guarantor, entered into a Loan and Security Agreement with Autumn Wind as Lender under which Autumn Wind extended a term loan facility to ITS in a principal amount up to $6,800,000. The purpose behind the loan facility was to provide financing to the Debtors so they could retain rights in a sublease to develop and operate a rail terminal in Oakland, California. The original maturity date of the loan was December 31, 2019.

As part of this transaction, the Debtors granted Autumn Wind a first priority lien upon and security interest in all of the Debtors' tangible and intangible property and proceeds thereof defined

in the Loan Security Agreement which was intended by Autumn Wind to include all rights under the sublease. The parties dispute whether the interest in the sublease was properly perfected by Autumn Wind.

Debtor acknowledges that Autumn Wind's perfected collateral includes the outstanding membership interests of ITS, as well as all general intangibles related to such membership interest, referred to as the "Pledged Equity". This was perfected by the delivery of a certificate evidencing the ownership of 100 membership units of ITS by ITH to Autumn Wind.

The parties subsequently amended the loan document terms on several occasions. Ultimately, the maturity date of the term loan was changed from December 31, 2019 to June 30, 2019.

Additionally, Autumn Wind included a provision of a Bankruptcy Rights Waiver in the documents which provided as follows:

(a) ITH purporting to agree that [i]f the Obligations due under the Loan are not paid in full on or before June 30, 2019 and Lender elects not to grant any extensions to the Borrower of the Maturity Date, Guarantor shall relinquish its rights to the Collateral as described in the Loan Agreement; and

(b) ITS and ITH each purporting to agree to an amendment respective organizational documents so that neither would be permitted to either (i) file for bankruptcy protection under the Bankruptcy Code, unless they first obtained the prior written consent of (a) all holders of membership interest in ITH, and (b) all holders of warrants exercisable for interest in ITH.

In accordance with this provision, both ITS and ITH amended their respective Operating Agreements to include bankruptcy filing waivers. *See* The Second Amended and Restated Operating Agreement of ITS and ITH, both dated February 22, 2019.

In June 2019 with the Note Maturity Date approaching, the Debtors began discussing filing Chapter 11 with its attorneys in the event they defaulted on the Term Loan on June 30, 2019.

On June 28, 2019, each Debtor executed and adopted Resolutions to address the Bankruptcy Rights Waiver. The Resolutions, stated in part:

> (a) modified Section 8.1 of the Amended Operating Agreement to allow ITH to maintain its membership rights and interests in ITS (including but not limited to all controlling voting rights, authorities, powers and interests), notwithstanding any contrary or limiting provisions in Section 18.801(a)(4) or other sections of the Delaware Limited Liability Company Act in the event of a bankruptcy filing;
>
> (b) authorized the filing of a voluntary petition in the United States Bankruptcy Court for the Western District of Kentucky pursuant to Chapter 11 of Title 11 of the United States Code; and
>
> (c) authorized the Debtors' Manager to execute and deliver all documents necessary to initiate and participate in the Chapter 11 Cases on behalf of each of the Debtors.

*See* Resolutions, Dkt. 2, Case No. 19-32231 and Dkt. 2, Case No. 19-32232.

On July 1, 2019, the Debtors defaulted on the Term Loan Obligations to Autumn Wind. Autumn Wind then delivered a Notice of Retention of Collateral in Full Satisfaction of Obligations (referred to herein as "Strict Foreclosure Notice") to ITS on July 2, 2019. This put ITS on notice that Autumn Wind intended to retain the Pledged Equity in full satisfaction of Debtors' obligations in accordance with Article 9 of the Uniform Commercial Code and that Debtors had 20 days to object to Autumn Wind's proposed retention of the Pledged Equity.

On July 17, 2019, prior to expiration of the 20 day objection period, ITS filed its Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code, Case No. 19-32231. ITH, also filed a Voluntary Petition seeking relief under Chapter 11 of the United States Bankruptcy Code on the same date. The two cases were consolidated for joint administrative purposes under Case No. 19-32231 on July 31, 2019.

On July 25, 2019, Autumn Wind filed the Motion to Dismiss.

Autumn Wind contends in the Motion that under the Loan and Security Agreement entered into between the parties, the Debtors' lack authority to file the Petitions. Autumn Wind states that under various Loan and Security Agreements dated September 24, 2018, and subsequent loan documents, ITH agreed to automatically relinquish its rights to the collateral and all of its assets, including ITH's ownership interest in ITS, when the Debtors failed to repay their obligations under the Loan and Security Agreement dated September 24, 2018 and other documents on June 30, 2019. Autumn Wind contends that ITH granted it a security interest in 100% of the membership interest in ITS upon its default under the loan agreements and that ITH's right to exercise voting and/or consensual rights and powers over such membership interest ceased immediately and such rights became vested solely and exclusively in Autumn Wind. Thus, upon Debtors' failure to repay their obligations under the loan documents on June 30, 2019, ITH's interest in the collateral, including the right to vote its membership interest in ITS, were automatically terminated. Therefore, Autumn Wind states that ITH did not have the necessary corporate authority to file the Voluntary Petitions. Autumn Wind specifically relies on its capacity as warrant holder to consent to any bankruptcy filing and that its consent was neither requested nor obtained requiring dismissal of the Petitions.

Debtors dispute Autumn Wind's interpretation of the loan documents as well as much of the testimony of Autumn Wind's primary witness at the hearing on the Motion to Dismiss, Viktor Tanden. Based upon prevailing legal authority regarding bankruptcy waiver provisions, such as the one at issue here, the Court must deny Autumn Wind's Motion as a matter of law.

**LEGAL ANALYSIS**

It is clear to the Court that under Delaware law, the law under which Debtors were organized, Debtors' Reformed Operating Agreement executed on June 28, 2019, authorized the Debtors' Manager, John J. Siegel, to execute all documentation necessary to file Chapter 11 Petitions on behalf of the Debtors. The Reformed Operating Agreement was executed and effective prior to the time when the Pledged Equity and voting rights in the corporations would have been transferred to Autumn Wind.

The only way Autumn Wind would have been able to foreclose on its security interest in a limited liability company membership was through the strict foreclosure process set forth in UCC § 9-620. Debtors, however, contend that the strict foreclosure process was not followed here and therefore there was no transfer of ownership to Autumn Wind. While this is a compelling argument, the Court need not address this issue, as there is a more compelling reason to overrule Autumn Wind's Motion to Dismiss. The Bankruptcy Rights, Wavier and Restrictions relied upon by Autumn Winding are ineffective as against public policy.

The enforceability of bankruptcy restrictions based on public policy, such as the one at issue here, is a question of federal law. *IN re Lexington Hospitality Group, LLC*, 577 B.R. 676, 683 (Bankr. E.D. Ky. 2017). In *In re Intervention Energy Holdings, LLC*, 553 B.R. 258 (Bankr. D. Del. 2016), the Delaware bankruptcy court held that pre-petition agreements that waive or interfere with a debtor's rights under the Bankruptcy Code are unenforceable as against public policy. *See*, *Id.* at 263 and cases cited therein. This longstanding policy continues to apply although "resourceful attorneys have continued that tradition" of attempting to circumvent the bankruptcy laws by "circuitry of arrangement." *National Bank of Newport v. Nat'l. Herkimer County Bank*, 225 U.S. 178 (1912). The court in *Intervention Energy* stated the reason behind the policy as follows:

> The federal public policy to be guarded here is to assure access to the right of a person, including a business entity, to seek federal bankruptcy relief as authorized by the Constitution and enacted by Congress. It is beyond cavil that a state cannot deny to an individual such a right. I agree with those courts that hold the same applies to a "corporate" or business entity, in this case an LLC."

*Id.*, citing *In re Lake Michigan Beach Poltawattamie Resort, LLC*, 547 B.R. 899, 912 (Bankr. N. D. Ill. 2016) ("in the same way that individuals may not contract to waive their bankruptcy rights, corporations should be similarly constrained.")

In this case, Autumn Wind's primary witness testified that it was well aware that a contractual provision limiting a debtor's right to seek relief under the Bankruptcy Code was legally unenforceable as against public policy. It was for this very reason that Autumn Wind included terms in the waiver and amendment that if Debtors did not achieve additional financing during the 3-1/2 month period they provided, then the agreement would provide a prohibition on filing for bankruptcy under this amendment. On July 1, 2019, the collateral would be turned over to Autumn Wind. Autumn Wind believed that by using this provision, they would avoid the public policy issue. Mr. Tanden testified that Autumn Wind was very clear on this point and it was a material inducement for the granting of the amendment and waiver. However, the terms of the surrender of the collateral were not fully consummated as there was no completion of the strict foreclosure process. Furthermore, the attempt to circumvent the bankruptcy laws and public policy by "circuitry of arrangement," were ineffective. Autumn Wind tried to get around this argument by making itself an equity holder, however, the process to achieve this was not completed. Autumn Wind did not become an equity holder, nor did they become the owner of the collateral through the strict foreclosure process. Furthermore, attempts to limit the Debtors' access to the bankruptcy process were against public policy and invalid. Therefore, there was no restriction on these Debtors from

filing their Chapter 11 Petitions. For these reasons, the Motion to Dismiss lacks legal merit and must be denied.

## CONCLUSION

For all of the above reasons, the Motion to Dismiss of Autumn Wind Lending, LLC, be and hereby is, **DENIED**. An Order incorporating the findings herein accompanies this Memorandum-Opinion.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: September 23, 2019

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

IN RE: )
)
INSIGHT TERMINAL SOLUTIONS, LLC, et al.   )   CASE NO. 19-32231(1)(11)
)
Debtors )

## ORDER

This matter having come before the Court on the Motion of Autumn Wind Lending, LLC for entry of an Order dismissing the Debtors Chapter 11 cases pursuant to 11 U.S.C. § 112, be and hereby is, **DENIED**.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: September 23, 2019