**EXHIBIT 1**

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC et al.[1] | Case No. 19-32231 |
| Debtors. | (Jointly Administered) |
| | Judge Joan A. Lloyd |

### DISCLOSURE STATEMENT FOR AUTUMN WIND LENDING, LLC'S CHAPTER 11 PLAN OF REORGANIZATION FOR THE BANKRUPTCY ESTATE OF DEBTOR INSIGHT TERMINAL SOLUTIONS, LLC PURSUANT TO BANKRUPTCY CODE SECTION 1121(c)(2)

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF ANY CHAPTER 11 PLAN DESCRIBED HEREIN. THIS DOCUMENT IS PROVIDED FOR INFORMATION PURPOSES ONLY TO ENABLE HOLDERS OF CLAIMS AND INTERESTS TO DETERMINE WHETHER TO OBJECT TO THE CHAPTER 11 PLAN DESCRIBED HEREIN.**

### DISCLAIMER

This disclosure statement (the "Disclosure Statement") contains summaries of certain provisions of Autumn Wind Lending, LLC's (the "Prepetition Lender") chapter 11 plan of reorganization (the "Plan")[2] for Debtor Insight Terminal Solutions, LLC (the "Debtor") dated April 27, 2020, as may be amended, supplemented, or otherwise modified from time to time, and certain other documents and financial information.

The Prepetition Lender is making this Disclosure Statement available to each Holder of Claims against, and Interests in, the Debtor as a matter of disclosure pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"). Insight Terminal Holdings, LLC ("ITH"), a jointly administered debtor in the above captioned case, will not be reorganized under the proposed Plan. Holders of Subordinated Claims against, and Interests in, the Debtor will receive no distributions of money or property under the Plan and are therefore deemed to reject the Plan under section 1126(g) of the Bankruptcy Code. The Prepetition Lender is impaired

---

[1] The Debtors in these chapter 11 cases are Insight Terminal Solutions, LLC (Case No. 19-32231) and Insight Terminal Holdings, LLC (Case No. 19-32232). The Court has ordered the joint administration of these chapter 11 cases. The docket in this Case No. 19-32231 should be consulted for all matters affecting the above listed cases.

[2] Capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the Plan. Terms not defined in the Plan or Disclosure Statement have the meanings ascribed to them in the Bankruptcy Code or the Loan Documents between the Debtor and Prepetition Lender, as applicable.

under the Plan and will receive New Membership Interests in the Reorganized Debtor on account of its Claim.  The Prepetition Lender will therefore vote on whether to accept or reject the Plan and, as the Plan proponent, intends to vote to accept the Plan

All other Classes of Claims are unimpaired and are therefore deemed to accept the Plan under section 1126(f) of the Bankruptcy Code.  Accordingly, the Prepetition Lender is not soliciting votes to accept or reject the Plan from Holders of Claims or Interests and is making the Disclosure Statement available solely for informational purposes. The information included herein should not be relied upon for any purpose other than to determine whether or not to object to the Plan.

The Prepetition Lender believes that information set forth herein is fair and accurate.  The summaries of financial information and the documents which are attached to, or incorporated by reference in, the Disclosure Statement are qualified in their entirety by reference to such information and documents.   In the event of any inconsistency or discrepancy between a description in the Disclosure Statement with either other documents and financial information incorporated in the Disclosure Statement by reference, or the Plan, the other documents and financial information, or the Plan, as the case may be, shall govern for all purposes.

The statements contained in this Disclosure Statement are made only as of the date of this Disclosure Statement, and there is no assurance that the statements contained in this Disclosure Statement will be correct at any time after such date.  Except as otherwise provided in the Plan or in accordance with applicable law, the Prepetition Lender is under no duty to update or supplement this Disclosure Statement.  Holders of Claims and Interests reviewing the Disclosure Statement should not assume at the time of such review that there have been no changes in the facts set forth in this Disclosure Statement since the date of this Disclosure Statement.  Holders of Claims or Interests should not rely on any information, representations, or inducements that are not contained in or are inconsistent with the information contained in this Disclosure Statement, the documents attached to this Disclosure Statement, and the Plan.  This Disclosure Statement does not constitute legal, business, financial, or tax advice. Any person or entity desiring any such advice should consult with their own advisors.  Neither the United States Securities and Exchange Commission nor any similar federal, state, local, or foreign regulatory agency has approved or disapproved of the Plan or passed upon the accuracy or adequacy of the statements contained in this Disclosure Statement.   The Prepetition Lender has sought to ensure the accuracy of the financial information provided in this Disclosure Statement, but the financial information contained in, or incorporated by reference into, this Disclosure Statement has not been, and will not be, audited or reviewed by independent auditors unless explicitly provided otherwise. Counsel to and other advisors retained by the Prepetition Lender have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement.  Although counsel to and other advisors retained by the Prepetition Lender have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained herein.

Regarding contested matters, adversary proceedings, and other pending, threatened, or potential litigation or other actions, this Disclosure Statement does not constitute, and may not be construed as, either (a) an admission of fact, liability, stipulation, or waiver by the Prepetition

Lender or any other party, but rather as a statement made in the context of settlement negotiations in accordance with Rule 408 of the Federal Rules of Evidence and any analogous state or foreign laws or rules.

Confirmation and consummation of the Plan are subject to certain material conditions precedent described in Article VIII of the Plan. There is no assurance that the Plan will be confirmed or, if confirmed, that such material conditions precedent will be satisfied or waived. You are encouraged to read this Disclosure Statement in its entirety, including the Plan and the Section in this Disclosure Statement entitled "Risk Factors," before considering filing an objection to the Plan. The Bankruptcy Court's approval of this Disclosure Statement does not constitute a guarantee of the accuracy or completeness of the information contained in this Disclosure Statement or an endorsement of the merits of the Plan by the Bankruptcy Court.

Except as otherwise expressly set forth herein, all information, representations, or statements contained herein have been provided by the Debtor or the Prepetition Lender. No person is authorized by the Prepetition Lender in connection with this Disclosure Statement or the Plan to give any information or to make any representation or statement regarding this Disclosure Statement or the Plan other than as contained in this Disclosure Statement and the exhibits attached hereto or as otherwise incorporated herein by reference or referred to herein. If any such information, representation, or statement is given or made, it may not be relied upon as having been authorized by the Prepetition Lender.

## I.    INTRODUCTION, SUMMARY, AND OVERVIEW OF CHAPTER 11

Pursuant to section 1125 of the Bankruptcy Code, the Prepetition Lender submits this Disclosure Statement in connection with confirmation of *Autumn Wind Lending, LLC's Chapter 11 Plan of Reorganization for the Bankruptcy Estate of Debtor Insight Terminal Solutions, LLC Pursuant to Bankruptcy Code Section 1121(c)(2)* (the "Plan"). The Prepetition Lender filed the Plan and this Disclosure Statement with the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court") on April 27, 2020. This Disclosure Statement provides information regarding the Plan, which the Prepetition Lender is seeking to have confirmed by the Bankruptcy Court. A copy of the Plan is attached hereto as **Exhibit A**.

The Plan comprises the Prepetition Lender's proposal for a comprehensive reorganization of the Debtor that will (i) restructure certain of the Debtor's obligations so that the reorganized Debtor will be financially stable and able to fulfill its ongoing business relationships with creditors; (ii) pay Priority Claims and General Unsecured Claims in full; (iii) cure outstanding lease defaults; and (iv) allow the Reorganized Debtor to emerge from chapter 11 expeditiously and efficiently.

On April 27, 2020, the Prepetition Lender filed the *Autumn Wind Lending, LLC's Motion for Entry of an Order (I) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Plan for the Bankruptcy Estate of Debtor Insight Terminal Solutions, LLC; (II) Fixing Deadline to Object to Disclosure Statement and Plan; (III) Waiving Solicitation of the Plan and Approving Manner of Notice of Commencement, Combined Hearing, and Objection Deadline; (IV) Approving Notice and Objection Procedures for the Assumption or Rejection of*

*Executory Contracts and Unexpired Leases; and (VI) Granting Related Relief* (the "Combined Hearing Motion").  The Combined Hearing Motion seeks, among other things, to:

(a)    schedule a combined hearing (the "Combined Hearing") on (i) the adequacy of the Disclosure Statement, and (ii) confirmation of the Plan;

(b)    establish the deadline (the "Objection Deadline") to object to the adequacy of the Disclosure Statement and confirmation of the Plan;

(c)    waive the need for solicitation of the Plan and approving the manner of  the notice (the "Notice Procedures") of the Combined Hearing, and the Objection Deadline (the "Combined Notice");

(d)    approve the notice and objection procedures for the assumption and rejection of executory contracts and unexpired leases (the "Executory Contract Procedures"); and

(e)    grant related relief.

The Prepetition Lender is making this Disclosure Statement available solely as a matter of disclosure pursuant to section 1125 of the Bankruptcy Code so that Holders of Claims and Interests can determine whether to object to confirmation of the Plan.  The Prepetition Lender is not soliciting votes to accept or reject the Plan from other Claim or Interest Holders.  All Claim and Interest Holders, other than the Prepetition Lender, are conclusively presumed to either accept or reject the Plan based on the proposed treatment under the Plan. The rules of interpretation set forth in Article I.B of the Plan shall govern the interpretation of this Disclosure Statement.

The purpose of this Disclosure Statement is to provide Holders of Claims and Interests with adequate information about (i) the Debtor's business and certain historical events, (ii) the Chapter 11 Case, (iii) the rights of Holders of Claims and Interests under the Plan, and (iv) other information necessary to enable each Holder of a Claim to make an informed judgment as to whether or not to object to confirmation of the Plan.

## II.    ARTICLE II - PRELIMINARY STATEMENT

A.    **Summary of the Plan**. The Plan provides for the following key economic terms and mechanics:[3]

1.    All General Unsecured Claims of the Debtor will be unimpaired and paid in full in Cash.

2.    Certain executory contracts and unexpired leases will be rejected through the Plan pursuant to section 365 of the Bankruptcy Code.  The counterparties to the rejected executory contracts and unexpired leases will also be unimpaired as their Allowed Rejection Damages Claims will

---

[3] Any summaries or descriptions of the Plan are qualified in their entirety by reference to the provisions of the Plan.

be paid in full in cash in accordance with the relevant provisions of the Bankruptcy Code.

3.     Certain Executory Contracts and Unexpired Leases will be assumed or rejected through the Plan pursuant to section 365 of the Bankruptcy Code. The Prepetition Lender will cure the assumed Unexpired Leases in accordance with the relevant provisions of the Bankruptcy Code.

4.     The Prepetition Lender will fund distributions under the Plan through the Cash Contribution and JMB Capital Partners Master Fund, LP ("JMB Capital") will provide a guarantee of payment of all Allowed Claims that exceed the Cash Contribution.  An affidavit in support of the JBM Guarantee is attached hereto as **Exhibit B**.

5.     Interests will be canceled as of the Effective Date.  The Reorganized Debtor will issue New Membership Interests under the terms of the Plan, effectively transferring ownership of the Reorganized Debtor to the Prepetition Lender.  The Reorganized Debtor will continue to operate as a going concern after the Effective Date.

6.     The Prepetition Lender believes the Plan is in the best interests of the Debtor and its Creditors, and that the Plan will successfully pay Creditors in full on account of Allowed Claims, except Subordinated Claims.

B.     **Overview of Chapter 11**

Pursuant to chapter 11 of the Bankruptcy Code, a debtor may reorganize for its benefit and the benefit of its creditors.  In a chapter 11 case, the debtor typically remains in control of the estate as a "debtor-in-possession."  Upon filing a petition for chapter 11 relief and during the pendency of a case, the Bankruptcy Code imposes an automatic stay against creditors' attempts to collect or enforce, through litigation or otherwise, claims against the debtor.  The automatic stay provisions of section 362 of the Bankruptcy Code, unless modified by court order, will generally prohibit or restrict attempts by creditors to collect or enforce any claims against the debtor that arose prior to the commencement of the chapter 11 case.

A chapter 11 plan is the vehicle for implementing the reorganization and satisfying or otherwise addressing the claims against and interests in a debtor.  Under sections 301 and 1121 of the Bankruptcy Code, the Debtor is the only entity that may propose a chapter 11 plan within 120 days of the commencement of a voluntary chapter 11 case, unless extended by the court. If the Debtor does file a plan within this time period, parties in interest, including the Prepetition Lender, may propose a competing chapter 11 plan if the Bankruptcy Court has not granted the Debtor an extension.  Autumn Wind filed a competing chapter 11 plan on April 27, 2020 after the Debtor was denied a second extension of the exclusive time to file a plan.

After the chapter 11 plan is filed, holders of claims against, and interests in, a debtor, whose claims or interests are impaired under the plan, may vote to accept or reject the plan. Under section 1126 of the Bankruptcy Code, claim and interest holders who are unimpaired under a plan are not entitled to vote on the plan.  Similarly, claim and interest holders who will

-5-

not receive or retain any property under the plan on account of their claims or interests are conclusively presumed to have voted against the plan, and the plan proponent is not required to solicit a vote from such claim holders.

Section 1125 of the Bankruptcy Code requires that before soliciting acceptances of the proposed plan, a plan proponent must prepare a disclosure statement containing adequate information of such kind, and in such detail, as to enable a hypothetical reasonable investor to make an informed judgment about the Plan. **In this case, the Prepetition Lender is impaired and entitled to vote on the Plan under the Bankruptcy Code. All other Classes are conclusively presumed or deemed to have either accepted or rejected the Plan. The Prepetition Lender will vote in favor of the Plan. The Prepetition Lender is making this Disclosure Statement available to Claim and Interest Holders solely for informational purposes, in order to enable Holders of Claims and Interests to determine whether to object to the Plan.**

C.      **Rules of Construction.**

1.      <u>Generally</u>. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded in the Plan or in the Confirmation Order.

2.      <u>Time Periods</u>. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth therein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

3.      <u>Miscellaneous Rules</u>. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

III.    **ARTICLE III - BACKGROUND REGARDING THE PREPETITION LENDER AND DEBTOR**

A.      **The Debtor's Operations**.

The Debtor's sole potential asset of substantial value is a sublease to develop and operate a rail terminal in the Port of Oakland in Oakland, CA (the "<u>Sublease</u>").  Despite the Debtor

taking possession of the subject premises (the "<u>Premises</u>") over a year ago, as subtenant, the Debtor has, upon information and belief, failed to maintain and secure the Premises or even to commence development of the project, rendering it a liability at this time.  Moreover, in addition to defaulting with respect to its obligation to the Prepetition Lender, the Debtor has, upon information and belief, also failed to honor its payment obligations to the landlord, Oakland Bulk and Oversized Terminal, LLC (the "<u>Landlord</u>") and the City of Oakland. The Debtor's mismanagement and complete lack of attention to the Premises have, upon information and belief, resulted in theft, vandalism, and a state of disrepair. As a result, the Premises and the value of the Sublease are deteriorating and the erosion of value will happen all the more rapidly as long as the Debtor's current management is allowed to retain control.

The Premises consists of a 19 acre parcel in the Port of Oakland, a port and ship facility located in Oakland, California. The Premises, a portion of the Port of Oakland known as the West Gateway, is an undeveloped parcel that the Debtor subleases from the Landlord in order to develop and operate a ship-to-rail terminal for the purposes of exporting bulk goods and importing oversized cargo. The Sublease is the Debtor's primary asset and, upon information and belief, the Debtor has yet to commence development of the Premises nor is such development expected to commence in the near term. The Debtor has little or no cash or liquid assets, does not presently have substantial operations or revenue, and at most a handful of employees.  As a result, the Debtor has no ability to service its debt to the Prepetition Lender, the risk of which was the precise reason for the parties' original agreement to implement a marketing and sale process absent repayment by February 15, 2019.

B.      **Debt Obligation to Prepetition Lender**.

The Prepetition Lender, Debtor, and Insight Terminal Holdings, LLC ("<u>ITH</u>"), a jointly administered debtor, entered into a certain Loan and Security Agreement dated September 24, 2018 (the "<u>LSA</u>") and other Loan Documents (as defined below) with the primary purpose of allowing the Debtor to execute the Sublease and funding the Debtor's development of a rail terminal in Oakland, CA, which is enabled, in part, by a certain Army Base Gateway Redevelopment Project Sub-Ground Lease for West Gateway with the Landlord.

Under the LSA, among the Debtor, as borrower, ITH, as guarantor, and the Prepetition Lender, as lender, the Prepetition Lender extended a senior secured term loan facility to the Debtor in a principal amount up to $6,800,000.00 (the "<u>Initial Term Loan</u>"). The Initial Term Loan was evidenced pursuant to that certain Promissory Note dated September 24, 2018 in the amount of $6,800,000.00. In connection with entry into the LSA, the Debtor executed and delivered a side letter between the Prepetition Lender and itself dated September 24, 2018 (the "<u>Side Letter</u>"). Pursuant to the Side Letter, the Debtor agreed, among other things, that in the event the Debtor failed to repay all obligations under the LSA and all ancillary and related documents, instruments and agreements (collectively, the "<u>Loan Documents</u>")[4] on or before February 15, 2019, the Debtor would, on the next business day, "commence a process to market and sell, on a best efforts basis, all of its right, title and interest under and to the [Sublease]" and

---

[4] The Loan Documents are voluminous. True and correct copies of certain of the relevant Loan Documents are attached to the Tandon Declaration [Docket No. 12]. Copies of any omitted documents are available upon request to the Prepetition Lender.

that "all Net Cash Proceeds received by the Borrower from a sale of the Borrower's right, title and interest under and to the [Sublease] shall, within three (3) Business Days of the receipt of such proceeds by the Borrower, be turned over to the Lender." The purpose of the agreed-upon sale process was to protect the Prepetition Lender from the exact situation in which the parties find themselves today, stemming from the risk of the Debtor's long-term inability to pay debt service with respect to the Initial Term Loan.

In connection with entry into the Initial Term Loan, the Debtor also executed and delivered that certain Unsecured Promissory Note dated September 24, 2018 in the principal amount of $3,400,000.00 (the "Initial Unsecured Note"). The original maturity date of the Initial Term Loan and Initial Unsecured Note was December 31, 2019.

Despite the Debtor's failure to commence development of the Premises, at the request of the Debtor, on December 19, 2018, the Debtor, ITH, and the Prepetition Lender agreed to amend the LSA pursuant to that certain First Amendment to Loan and Security Agreement (the "First Amendment"). Pursuant to the First Amendment, the Prepetition Lender agreed to make an additional term loan to the Debtor in the amount of $300,000.00 (the "Additional Term Loan" and, together with the Initial Term Loan, the "Term Loan"). The Term Loan was evidenced by that certain Amended and Restated Promissory Note dated December 19, 2018 and executed by the Debtor in favor of Prepetition Lender in the amount of $7,100,000.00 (the "A&R Term Note"). In connection with the extension of the Additional Term Loan, the Debtor executed and delivered that certain Amended and Restated Unsecured Promissory Note dated December 19, 2018 by which the Initial Unsecured Note was increased to $3,550,000 (the "A&R Unsecured Note" and, together with the Initial Unsecured Note, the "Unsecured Note").

On February 16, 2019, the Debtor defaulted under the terms of the Loan Documents when it failed to: (i) repay its obligations under the Term Loan on or before February 15, 2019, and (ii) commence a sale process. Notwithstanding its agreement in the Side Letter to commence a process to market and sell its interest in the Sublease in the event all obligations under the Loan Documents were not repaid by that date, John S. Siegel ("Siegel"), the Debtor's manager, informed the Prepetition Lender that he wished to seek a refinancing transaction in lieu of marketing the Sublease for sale, as the Debtor initially agreed.

Despite Siegel's representations that a refinancing transaction was imminent as recently as late-June 2019, no such refinancing occurred. In fact, no written proposal or commitment letter was ever provided to the Prepetition Lender. On May 1, 2019, the Debtor failed to make its regularly scheduled interest payment on the Term Loan when due. Siegel further assured the Prepetition Lender that the Debtor would be able to achieve a refinancing that would repay the Prepetition Lender in full by no later than June 30, 2019; in turn, the Debtor and the Prepetition Lender negotiated amended terms and entered into that certain Waiver and Amendment Agreement dated February 22, 2019, which, in exchange for additional Warrants and other consideration from the Debtor, amended the Term Loan maturity date to June 30, 2019.

The Debtor failed to achieve a refinancing transaction by June 30, 2019 and failed to repay the Term Loan by the June 30, 2019 maturity date, constituting an Event of Default under the Loan Documents. Furthermore, on July 8, 2019, the Prepetition Lender received notification

from the Landlord that additional Events of Default existed, as the Debtor failed to (i) make payments owed to the Landlord and (ii) pay taxes owed to the City of Oakland, including failing to appear at an administrative hearing on July 1, 2019 with respect to such taxes. The Landlord's notification further delineated multiple failures by the Debtor to maintain and secure the property in violation of the Sublease, resulting in theft, vandalism, and the property falling into disrepair. The Debtor commenced the Chapter 11 Case on July 17, 2019, and, upon information and belief, has made little progress towards developing the Sublease since.

      C.      **New Management and the Reorganization Business Plan**.

Upon information and belief, the Debtor is presently unprofitable and unable to pay its debts as they become due.  If the Prepetition Lender's Plan is not confirmed, it is the Prepetition Lender's belief that it is unlikely the Debtor will be able to pay General Unsecured Creditors in full.

However, the Prepetition Lender believes that, under new management, the Reorganized Debtor can successfully develop or actively market and sell the Sublease.  Under new management, the Reorganized Debtor will actively participate in settling all of the Debtor's regulatory issues with the City of Oakland, develop the Sublease and maintain the property, thereby protecting the value of the Debtor's primary asset.  In the alternative, the Reorganized Debtor intends to solicit competitive bids for the Sublease.

## IV.      ARTICLE IV - SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

      A.      **Commencement of Chapter 11 Case.**

The Debtor commenced the Chapter 11 Case on July 17, 2019 (the "Petition Date") by filing a petition for relief pursuant to chapter 11 of the Bankruptcy Code [Docket No. 1]. The Chapter 11 Case is assigned to the Honorable Joan A. Lloyd, United States Bankruptcy Judge for the Western District of Kentucky.  Since the Petition Date, the Debtor has operated as a debtor-in-possession under Bankruptcy Code §§ 1107 and 1108.  The Debtor retained Middleton Reutlinger as its bankruptcy counsel.

      B.      **Prepetition Lender's Motion to Dismiss**.

The Prepetition Lender filed a motion seeking to dismiss the Chapter 11 Case on July 25, 2019 [Docket No. 13]. After an evidentiary hearing, the Bankruptcy Court entered a Memorandum and Order on September 23, 2019 denying the motion to dismiss [Docket No. 98].

      C.      **Administrative Debtor Motions**.

The Debtor filed motions seeking the relief outlined below, among other relief, from the Bankruptcy Court (the "Administrative Motions").  Titles of the Administrative Motions are taken verbatim from the docket.

      1.      *Motion to Extend time to File Schedules and Statement of Financial Affairs* [Docket No. 24].  Filed on July 29, 2019 and granted on July 31, 2019 [Docket No. 42].

2.    *Motion for Joint Administration* [Docket No. 25].  Filed on July 29, 2019 and granted on July 31, 2019 [Docket No. 42].

3.    *Motion to Amend Interim Bridge DIP Order* [Docket No. 48]. Filed on August 2, 2019 and granted on August 5, 2019 [Docket No. 53].

4.    *Application to Employ Andrew D. Stosberg and the firm of Middleton Reutlinger as Attorney* [Docket No. 58]. Filed on August 16, 2019, granted on October 10, 2019 [Docket No. 109], and amended on October 18, 2019 [Docket No. 114].

5.    *Application to Employ The McConnell Group, Inc,, Millcreek Engineering Company, Zennie62.com as Political and Lobbing Consultant, Engineers, Social media and marketing consultant, respectively* [Docket No. 137]. Filed on December 9, 2019, granted on January 24, 2020 [Docket No. 163].

D.    **Postpetition Debtor Borrowing**. The Debtor filed the following motions seeking postpetition financing in the Chapter 11 Case:

1.    *Motion to Borrow $75,000.00 in order to Post-petition Financing* [Docket No. 28].  Filed on July 29, 2019 and interim relief granted on August 1, 2019 [Docket no. 46] authorizing the Debtor to borrow up to $100,000 from Cecelia Financial Management, LLC ("Cecelia") and subsequently amended on August 6, 2019 [Docket No. 53].

2.    *Motion to Borrow Up to $1,000,000.00 in order to Secured and Super-Priority Financing* [Docket No. 73]. Filed on August 28, 2019 and interim relief granted on September 5, 2019 [Docket No. 83] (the "September 5 Order") authorizing the Debtor to borrow up to $211,500.00 from Bay Bridge Exports, LLC ("Bay Bridge").  On September 25, 2019 court denied the Debtor's motion to borrow up to $1,000,000 [Docket No. 100]. The September 5 Order was later amended by an agreed order entered by the Bankruptcy Court on September 30, 2019 [Docket No. 102], and a second agreed order entered by the Bankruptcy Court on October 4, 2019 [Docket No. 108]. The agreed orders were granted so that Debtor could make rent payments while negotiating a DIP loan and increased the Debtor's borrowing cap to $280,900.00.

3.    *Emergency Motion to Borrow up to $1,125,000.00 in order to post-petition financing* [Docket No. 125].  Filed on December 3, 2019 and interim relief granted on December 11, 2019 [Docket No. 144] authorizing the Debtor to further increase its borrowing limit from Bay Bridge up to $706,040.00 and granted on a final basis pursuant to an order entered by the Bankruptcy Court on January 31, 2020 [Docket No. 167] authorizing the Debtor to borrow up to $1,125,000.

4.    *Agreed Motion to Borrow additional $440,000.00 in order to pay projected necessary expenses through March 31, 2020* [Docket No. 173]. Filed on February 14, 2020 and interim relief granted on February 19,

2020 [Docket No. 175] authorizing the Debtor to increase its borrowing limit from Cecelia from $100,000 to $320,000 and from Bay Bridge from $1,125,000 to $1,345,000.  The Bankruptcy Court has not entered a final order.

E.    **Motions to Extend Exclusivity Periods**.  On November 13, 2019, the Debtor filed a *Motion to Extend the Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement and Solicit Acceptances Thereof* (the "First Exclusivity Motion") [Docket No. 118].  On November 14, 2019, the Prepetition Lender filed an objection the First Exclusivity Motion [Docket No. 120].  On March 25, 2020, the Bankruptcy Court entered an order granting the First Exclusivity Motion [Docket No. 182].  On March 19, 2020, the Debtor filed the *Second Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement and Solicit Acceptances Thereof* (the "Second Exclusivity Motion") [Docket No. 179].  On April 14, 2020, the Prepetition Lender filed an objection to the Second Exclusivity Motion [Docket No. 192].  On April 23, 2020, the Bankruptcy Court entered an order denying the Second Exclusivity Motion [Docket No. 194].

## V.    ARTICLE V - DESCRIPTION OF THE PLAN

A.    **Treatment of Unclassified Claims Under the Plan**.

.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified and are not entitled to vote on the Plan.  The Plan provides for the treatment of such Claims as follows:

1.    Administrative Claims.  Except to the extent that a Holder of an Allowed Administrative Claim and either the Reorganized Debtor and Prepetition Lender agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of such Allowed Administrative Claim, be paid the full unpaid amount of such Allowed Administrative Claim in Cash on, or as soon thereafter as is reasonably practicable, (a) the Effective Date or, if payment is not then due, (b) on the due date of such Allowed Administrative Claim, or (c) within five (5) Business Days from such Administrative Claim being Allowed; *provided*, *however*, that Administrative Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.  Any taxes that arose postpetition shall be paid in the ordinary course of business.

2.    Professional Fee Claims. Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) five Business Days after the

Professional Fee Claim is Allowed; and (b) another date on which the Holder of the Professional Fee Claim and the Reorganized Debtor agree. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Prepetition Lender and Reorganized Debtor its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

3.    <u>Priority Tax Claims</u>. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Reorganized Debtor and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

B.    **Classification and Treatment of Classified Claims and Interests**.  The Plan provides that classified Claims and Interests are divided into numbered Classes as follows:

| **Class** | **Treatment** | **Entitled To Vote** |
|---|---|---|
| Class 1 – Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| Class 2 – Prepetition Lender Claim | Impaired | Yes |
| Class 3 – General Unsecured Claims | Unimpaired | No (Deemed to Accept) |
| Class 4 – Subordinated Claims | Impaired | No (Deemed to Reject) |
| Class 5 – Interests | Impaired | No (Deemed to Reject) |

1.    <u>Class 1: Other Priority Claims</u>

a.    Treatment: Except to the extent that a Holder of an Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, each Holder of such Other Priority Claim shall receive the following at the option of the Prepetition Lender:

(1)    Payment of an Allowed Other Priority Claim in full in Cash in the ordinary course of business;

(2)    Reinstatement of such Other Priority claim; or

(3)    Such other treatment rendering such Other Priority Claim Unimpaired.

      b.     Impairment and Voting: Holders of Other Priority Claims are unimpaired and all Holders of Other Priority Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

2.     <u>Class 2: Prepetition Lender Claim</u>

      a.     Treatment: The Prepetition Lender Claim is Allowed in full. The Prepetition Lender shall receive, in exchange for full and final satisfaction, settlement, release, and discharge of its Prepetition Lender Claim, 100 Units of New Membership Interests in the Reorganized Debtor on the Effective Date, or as soon as reasonably practicable thereafter.

      b.     Impairment and Voting: The Prepetition Lender Claim is impaired and the Prepetition Lender is entitled to vote on acceptance or rejection of the Plan.

3.     <u>Class 3: General Unsecured Claims</u>

      a.     Treatment: Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, receive payment in Cash in the full amount of an Allowed General Unsecured Claim, which payment shall occur on the later of (i) thirty (30) days after the Effective Date (ii) thirty days after such Claim is Allowed and (iii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim.

      b.     Impairment and Voting: Holders of General Unsecured Claims are unimpaired and all Holders of General Unsecured Claims are conclusively deemed to have accepted the plan and are not entitled to vote on the Plan.

4.     <u>Class 4: Subordinated Claims</u>

      a.     Treatment: Holders of Subordinated Claims shall not receive or retain any distribution under the Plan on account of such Subordinated Claims.

      b.     Impairment and Voting: Holders of Subordinated Claims are impaired by the Plan and will receive no property under the Plan on account of their Claims. Such Holders are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and will not vote to accept or reject the Plan.

5.    Class 5: Interests

a.    Treatment: Except as otherwise provided for herein, all Interests will be canceled and extinguished as of the Effective Date and of no further force and effect against the Reorganized Debtor. Interest Holders will have no rights against the Debtor, the Reorganized Debtor, their assets, or the Estate, arising from or relating to such Interests or the cancellation thereof.

Any voting, control or management rights held by Interest Holders shall be terminated, as will any prepetition right to receive equity distributions from the Debtor or Reorganized Debtor.

b.    Impairment and Voting: Interest Holders are impaired and will receive no property under the Plan on account of their Interests. Accordingly, such Holders are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and will not vote on the Plan.

C.    **Conclusive Presumption of Acceptance or Rejection**. Pursuant to section 1126 of the Bankruptcy Code, all Classes of Claims and Interests other than the Prepetition Lender are conclusively presumed to accept or reject the Plan without voting or solicitation.  Nonetheless, all parties are encouraged to carefully review the Plan, attached as Exhibit A. All descriptions of the Plan set forth in this Disclosure Statement are subject to the terms and conditions of the Plan.

All classes of Claims and Interests will receive the Combined Hearing Notice setting forth the deadline and procedures for filing objections, the manner in which the Disclosure Statement and the Plan and other pleadings filed in the Chapter 11 Case can be obtained or viewed electronically, and a summary of the treatment of each Class under the Plan.

Copies of the Combined Hearing Notice, this Disclosure Statement, and the Plan may be obtained by may be examined by interested parties on the Bankruptcy Court's electronic docket for the Debtor's Chapter 11 Case, which can be found at http://kywb.uscourts.gov (a PACER login and password are required to access documents on the Court's website and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov) or by contacting counsel for the Prepetition Lender.

D.    **Claims Bar Date**. All Claims incurred prior to the Confirmation Date, including Administrative Claims, shall file a Claim in accordance with the Claim Filing Procedures and Bar Date attached to the Plan as Exhibit A. Any such Claim that is not filed in accordance with the Claim Filing Procedures and Bar Date shall be forever barred.

E.    **Post-Confirmation Administrative Claims Bar Date**. All requests for payment

-14-

of administrative costs and expenses incurred on or after the Confirmation Date through and including the Effective Date pursuant to section 507(a)(1) or 503(b) of the Bankruptcy Code shall be served on the Reorganized Debtor and filed with the Bankruptcy Court no later than 30 days after the Effective Date. Any such Claim that is not served and filed within this time shall be forever barred.

F.    **Implementation of the Plan**.

1.    Plan Funding.

a.    Cash Reserves. Distributions under the Plan may be partially funded from the Reorganized Debtor's cash on hand as of the Effective Date.

b.    Cash Contribution. On the ~~Effective~~Confirmation Date, the Prepetition Lender will make the Cash Contribution in the amount of $~~4,400,000~~5,000,000 into a segregated escrow account ~~in the name of the Reorganized Debtor~~for the benefit of Holders of Allowed Class 3 Claims. The Cash Contribution shall be used solely to pay all Allowed Claims in accordance with the Plan and after payment of all Allowed Claims, any remaining funds in such account shall revert to the Prepetition Lender. The Reorganized Debtor shall be authorized to execute, deliver, and enter into and perform under the Plan without any further corporate or limited liability company action and without further action by the holders of Claims or Interests.

c.    JMB Capital Guarantee. JMB Capital shall guarantee payment of all Allowed Claims which exceed the Cash Contribution. An executed JMB Capital Guarantee will be included in the Plan Supplement.

2.    Distributions. The Reorganized Debtor shall make all distributions in accordance with the terms of the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Holders of Allowed Claims entitled to distributions under the Plan shall provide any information requested by the Reorganized Debtor necessary for making such distribution.

3.    Continued Reorganization Operations. The Reorganized Debtor will continue to operate with the primary purpose of developing the Premises or marketing and selling the Sublease.

4.    **Cancellation of prepetition Interests. Except as provided for herein, all Interests will be canceled and extinguished as of the Effective Date**

-15-

**and of no further force and effect against the Reorganized Debtor.**

5.      Corporate Governance. The Reorganized Debtor will issue New Membership Interests to the Prepetition Lender in consideration for the satisfaction of the Prepetition Lender's Claim and the Prepetition Lender's Cash Contribution under the Plan.  For the period immediately following confirmation of the Plan, the Prepetition Lender proposed that **Vikas Tandon** will serve as the sole New Non-Member Manager of Insight Terminal Solutions, LLC. Mr. Tandon is currently the Chief Investment Officer of JMB Capital Partners Lending, LLC and Ridgedale Partners, LLC, as well as Manager of the Prepetition Lender. Mr. Tandon proposes to draw no compensation for his management of the Reorganized Debtor. The Prepetition Lender will be the sole member of the Reorganized Debtor as of the Effective Date of the Plan.

6.      Section 1145 Exemption. In accordance with section 1145 of the Bankruptcy Code, the issuance of New Membership Interests is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of securities.

7.      Effectuating Documents. On and after the Effective Date, the Prepetition Lender, Reorganized Debtor, and the officers thereof and members of the board thereof, shall be authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, or to otherwise comply with applicable law, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

8.      Effectiveness of Instruments and Agreements. On the Effective Date, all instruments, agreements, and documents issued, entered into, delivered, or filed under the Plan are effective, binding, and enforceable in accordance with their respective terms.

9.      No Corporate Action Required. As of the Effective Date: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by the Plan; and (b) the other matters provided for under, or in furtherance of, the Plan involving corporate action required of the Debtor or Reorganized Debtor, as applicable, are deemed to have occurred, are effective as provided in the Plan, and are deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by the Debtor's or Reorganized Debtor's officers, shareholders,

members, or managers.

10.    <u>Operation Pending Effective Date</u>. Until the Effective Date, the Debtor will continue to operate its business subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

11.    <u>Employee Matters</u>. Upon the Effective Date, all material employee compensation and benefit plans, and employment, severance, retirement, indemnification, and other similar employee-related agreement or arrangements in place as of the Effective Date with the Debtor shall be rejected and all of the Debtor's employees shall be terminated.

## VI.    ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    **Assumption and Rejection of Executory Contracts and Unexpired Leases**.

1.    Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) was assumed or rejected previously by the Debtor; (3) expired or terminated pursuant to its own terms before the Effective Date; (4) is the subject of a motion to assume pending on the Confirmation Date; or (5) is the subject of a motion pending on the Confirmation Date to assume an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

2.    Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, as of the Effective Date, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

3.    All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtor in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer.    Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtor's assumption of such Executory Contract or Unexpired Lease, then such

provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

4.       Notwithstanding anything to the contrary in the Plan, the Prepetition Lender reserves the right to alter, amend, modify or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time before the Confirmation Date, including without limitation the right to remove any Executory Contract or Unexpired Lease therefrom. The Prepetition Lender further reserves the right to remove any Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the Effective Date upon the consent of the applicable non-Debtor counterparty.

B.       **<u>Procedures Related to Rejection of Executory Contracts or Unexpired Leases</u>.** The Prepetition Lender will file the Schedule of Assumed Executory Contracts and Unexpired Leases with the Plan Supplement on or before the date that is fifteen (15) days before the Confirmation Hearing which shall notify all other non-Debtor counterparties not scheduled that all other Executory Contracts and Unexpired Leases shall be rejected pursuant to the Confirmation Order. Each non-Debtor counterparty to an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan shall have until 4:00 p.m. (Eastern time) on the date that is seven (7) calendar days before the Confirmation Hearing to file a written objection to the rejection of its Executory Contract or Unexpired Lease and serve it in a manner to be actually received by each of the following: (i) counsel to the Prepetition Lender: Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020, Attn: Robert M. Hirsh (rhirsh@lowenstein.com) and Phillip Khezri (pkhezri@lowenstein.com) and Frost Brown Todd LLC, 400 W. Market Street, Suite 3200, Louisville, Kentucky 40202, Attn: Edward M. King (tking@fbtlaw.com); and (ii) the United States Trustee, 601 West Broadway, Suite 512, Louisville, KY 40202, Attn: John R. Stonitsch (ustpregion08.lo.ecf@usdoj.gov). Any such objections that cannot be consensually resolved by the Prepetition Lender and the objecting non-Debtor counterparty shall be considered by the Bankruptcy Court at the Confirmation Hearing or such other date requested by the Debtor.

1.       <u>Schedule of Assumed Executory Contracts and Unexpired Leases</u>. Executory Contracts and Unexpired Leases set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date.

2.    <u>Abandonment of Personal Property</u>. Any fixtures, furniture, advertising displays, other office and store equipment or any other personal property left by the Debtor on the premises related to Unexpired Leases rejected pursuant to the Plan shall be deemed abandoned as of the Rejection Date pursuant to section 554 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute authorization by the Bankruptcy Court of such abandonment and, as of the Effective Date, the non-Debtor counterparties to such rejected Unexpired Leases may dispose of any such personal property in their sole and absolute discretion without notice or liability to the Debtor, Reorganized Debtor, or third parties.

3.    <u>Claim Procedures for Rejection Damages Claim Holders</u>. Each non-Debtor counterparty to an Executory Contract or Unexpired Lease not identified on the Schedule of Assumed Executory Contracts and Unexpired Leases must file a proof of claim asserting any Rejection Damages Claim on or before the Rejection Bar Date. **Any Person with a Rejection Damages Claim is required to file a proof of Claim asserting a Rejection Damages Claim and failure to do so on or before the Rejection Bar Date shall result in any Rejection Damages Claim being disallowed in accordance with section 502 of the Bankruptcy Code and forever barred, estopped, and enjoined from assertion and any such Rejection Damages Claim shall not be enforceable against the Reorganized Debtor, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding a proof of Claim to the contrary.**

C.    **<u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>**.

1.    The proposed Cure amount for all Executory Contracts not identified on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be $0.00 unless otherwise indicated on such schedule. The Prepetition Lender shall serve the Schedule of Assumed Executory Contracts and Unexpired Leases on all scheduled non-Debtor counterparties to an Executory Contract or Unexpired Lease. **For the avoidance of doubt, if an Executory Contract between the Debtor and any non-Debtor counterparty is not listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, then the Reorganized Debtor intends to reject such Executory Contract.**

2.    Any counterparty to an Executory Contract or Unexpired Lease that objects to (1) the assumption of such Executory Contract or Unexpired Lease, (2) the proposed Cure amount, (3) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (4) any other matter pertaining to assumption, shall file a written objection

thereto and serve it in a manner to be actually received by each of the following by no later than 4:00 p.m. (Eastern time) on the date that is seven (7) days prior to the Confirmation Hearing: ((i) counsel to the Prepetition Lender: Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020, Attn: Robert M. Hirsh (rhirsh@lowenstein.com) and Phillip Khezri (pkhezri@lowenstein.com) and Frost Brown Todd LLC, 400 W. Market Street, Suite 3200, Louisville, Kentucky 40202, Attn: Edward M. King (tking@fbtlaw.com); and (ii) the United States Trustee, 601 West Broadway, Suite 512, Louisville, KY 40202, Attn: John R. Stonitsch (ustpregion08.lo.ecf@usdoj.gov). Any timely filed responses or objections will be heard by the Bankruptcy Court at the Confirmation Hearing or on such other date agreed to by the parties or ordered by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to any of the foregoing matters related to assumption will be deemed to have assented and will be deemed to have forever released and waived any such objection. Payment of any Cure amount shall be made following the entry of a Final Order or orders resolving any dispute related thereto and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

D.   **Modifications, Amendments, Supplements, Restatements, or Other Agreements**. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor or Reorganized Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.   **Contracts and Leases Entered into After the Petition Date**. Contracts and leases entered into after the Petition Date by the Debtor, and any Executory Contracts and Unexpired Leases assumed by the Debtor, may be performed by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof.

VII.   **ARTICLE VII – EFFECT OF THE PLAN ON CLAIMS, INTERESTS AND LITIGATION CLAIMS**

A.   **Binding Effect**. Except as otherwise provided in section 1141(d)(3) of the

Bankruptcy Code,  and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind every holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under the Plan and whether such Holder has accepted the Plan.

B.    **No Substantive Consolidation for Plan Purposes**. The Plan applies solely to Debtor, and the Debtor's Estate has not been substantively consolidated.

C.    **Books and Records**. The Debtor's directors, officers, and managers, as applicable, shall transfer the Debtor's books and records to the New Non-Member Manager on the Effective Date, or as soon as reasonably practicable thereafter. To the extent any books and records relate to the Debtor and one or more other entities, such books and records shall be turned over to the New Non-Member Manager. The Reorganized Debtor may dispose of any of the Debtor's books and records, subject to the expiration of any statutory period requiring that such records be maintained, without authorization from the Bankruptcy Court.

D.    **Vesting of Assets**. Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estate (including Litigation Claims, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, interests, and encumbrances.  As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Litigation Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

E.    **Discharge**. Except as provided in the Plan or the Confirmation Order, the rights granted under the Plan and the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, discharge, and release of all Claims and Interests.  Except as provided in the Plan or the Confirmation Order, confirmation of the Plan discharges the Reorganized Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code section 501; (b) a Claim based on such debt is Allowed under Bankruptcy Code section 502; or (c) the holder of a Claim based on such debt has accepted the Plan. Without limiting the foregoing, the discharge granted under the Plan is granted to the fullest extent allowed under Bankruptcy Code sections 1141(a), 1141(b), 1141(c), and 1141(d)(1).

F.    **Term of Injunctions or Stays**. Unless otherwise provided in the Plan or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in

existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

G.     **Releases by the Debtor**.  **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Supplement, for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtor, the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtor in each case on behalf of itself and its respective affiliates, successors, assigns, and representatives and any and all other entities who may purport to assert any cause of action derivatively, by or through the foregoing entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the Plan funding, the negotiation, formulation, or preparation of the Disclosure Statement and the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

H.     **Releases by Holders of Claims and Interests**. **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtor and the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, and any claims for breach of any**

fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase of any Interest in the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Plan funding, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

I.    **<u>Injunction</u>**.

    1.    <u>Generally</u>. Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, the Reorganized Debtor, or the Estate, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to the Reorganized Debtor (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Reorganized Debtor, the Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Reorganized Debtor or the Estate (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtor, the Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, the Reorganized Debtor or the Estate (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in

any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against the Reorganized Debtor or the Estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of the Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

2.    By accepting distributions pursuant to the Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Article VII of the Plan.

3.    Limited Scope. Nothing in the Plan: (i) extinguishes, prohibits, or otherwise limits the right of the Estate or Reorganized Debtor to assert and prevail on any Litigation Claim; (ii) enjoins or otherwise precludes any party-in-interest from enforcing the terms of the Plan and the Confirmation Order.

J.    **Exculpation. Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Case; the Disclosure Statement, the Plan, the Schedule of Assumed Executory Contracts and Unexpired Leases, or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; the issuance of New Membership Interests under or in connection with the Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, managers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of New Membership Interests thereunder. This exculpation shall be in addition to, and not in**

-24-

**limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

K.    **Retention, Reservation and Prosecution of Litigation Claims**. Except as otherwise provided in the Plan, all Litigation Claims other than Avoidance Actions are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Litigation Claims other than Avoidance Actions. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Litigation Claims other than Avoidance Actions, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B).   The Reorganized Debtor shall have sole discretion to determine in its business judgment which Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, right, or Litigation Claim, the Reorganized Debtor shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Litigation Claims shall survive confirmation and the commencement or prosecution of Litigation Claims shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

# VIII.    CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE

A.    **Conditions to Effectiveness**. The Effective Date does not occur unless and until:

1.    The Confirmation Date occurs and the Confirmation Order, in a form satisfactory to the Prepetition Lenders, in its sole discretion, has become a Final Order, which shall, among other things, provide that the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to enter into any transactions contemplated thereunder;

2.    No request for revocation of the Confirmation Order under Bankruptcy Code section 1144 is pending;

3.    All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective; and

4.    The Debtor or Reorganized Debtor has the ability to assume the Sublease.

5. Claims against the Debtor do not exceed $4,400,000; and

6. The Prepetition Lender makes the Cash Contribution.

B.    **Waiver of Conditions**. The Prepetition Lender may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

C.    **Effect of Non-Occurrence of the Effective Date**. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; (b) constitute an admission, acknowledgement, offer or undertaking by the Prepetition Lender.

# IX.    ARTICLE IX – MISCELLAENOUS PROVISIONS OF THE PLAN

A.    **Retention of Jurisdiction**.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.    resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assignment, or rejection of Executory Contracts or Unexpired Leases, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtor's amendment, modification, or supplement after the Confirmation Date, pursuant to Article IV of the Plan, of the Schedule of Executory Contracts and Unexpired Leases; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

2.    adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, the Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

3.    ensure that distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

4.    enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

5.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

6.    hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under the Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide,

or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

8.     hear and determine all suits or adversary proceedings to recover assets of the Reorganized Debtor and property of its Estate, wherever located;

9.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

10.     grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, or in the event that the Effective Date does not occur, to consider any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4);

11.     hear any other matter not inconsistent with the Bankruptcy Code;

12.     hear and determine all disputes involving the existence, nature or scope of the Reorganized Debtor's discharge;

13.     issue a final decree and enter an order closing the chapter 11 case; and

14.     enforce all orders previously entered by the Bankruptcy Court.

After the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date. Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

B.     **Effecting Documents; Further Transactions; Timing**. The Prepetition Lender and Reorganized Debtor are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

C.     **Governing Law**. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of Delaware shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of Delaware.

D.  **Exemption from Transfer Taxes**. Under Bankruptcy Code section 1146(a): (a) the issuance, distribution, transfer, and exchange of assets or property of the Estate, including without limitation the New Membership Interests; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

E.  **Post-Effective Date Fees; Final Decree**. Notwithstanding anything to the contrary contained in the Plan, all fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter. The Reorganized Debtor is responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which Reorganized Debtor must seek as soon as feasible after distributions under the Plan have commenced. Notice of application for a final decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

F.  **Method of Payment; Payments, Filings, and Notices Only on Business Days**. Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

G.  **Undeliverable or Unclaimed Distributions**. If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable non-

bankruptcy escheat, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred. Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a final decree closing the Chapter 11 Case.

H.    **Time Bar to Cash Payments**. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Requests for reissuance of any check shall be in writing to the Reorganized Debtor by the Holder of the Allowed Claim to whom such check originally was issued. Any such written claim in respect of such a voided check must be received by the Reorganized Debtor on or before 60 days after the expiration of the 60 day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Reorganized Debtor.

I.    **Revocation, Withdrawal, or Non-Consummation**. The Prepetition Lender reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Prepetition Lender's filing of a notice thereof, and to file subsequent chapter 11 plans. If the Prepetition Lender revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Litigation Claims or Claims by or against the Reorganized Debtor or any other Person or to prejudice in any manner the rights of the Prepetition Lender or any Person in any further proceedings involving the Reorganized Debtor.

J.    **Notices**. After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

If to the Reorganized Debtor:

> Insight Terminal Solutions, LLC
> [Service Address]
> 1999 Avenue of the Stars, Suite 2040
> Los Angeles, CA 90067
> Attn: Vikas Tandon

With a copy (which shall not constitute notice) to:

> Lowenstein Sandler LLP
> 1251 Avenue of the Americas
> New York, NY 10020
> Attn: Robert M. Hirsh, Esq. and Phillip Khezri, Esq.

And

      Frost Brown Todd LLC
      400 W. Market Street
      Suite 3200
      Louisville, KY 40202
      Attn: Edward M. King, Esq.

If to U.S. Trustee:

      Office of the United States Trustee
      601 West Broadway, Suite 512
      Louisville, KY 40202
      Attn: John R. Stonitsch, Esq.

K.     **Entire Agreement**. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

L.     **Severability**. If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Reorganized Debtor's consent, and (c) nonseverable and mutually dependent.

M.     **Exhibits**. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon request to the Prepetition Lender's counsel, by contacting Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020.

N.     **Conflicts**. Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided,

however, that if there is a conflict between the Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

O.  **Pre-Confirmation Amendment**. The Prepetition Lender may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

P.  **Post-Confirmation Amendments**. After the entry of the Confirmation Order, the Prepetition Lender may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided (i) the Prepetition Lender obtains approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under the Plan.  After the Confirmation Date and before the Effective Date of the Plan, the Prepetition Lender may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Prepetition Lender obtains Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; and (iii) the Plan Proponent complies with section 1125 of the Bankruptcy Code with respect to the modified Plan.

## X.  **ARTICLE X – STATUTORY REQUIREMENTS FOR PLAN CONFIRMATION**

The following is a brief summary of the confirmation process. Holders of Claims and Interests are encouraged to review the relevant provisions of the Bankruptcy Code and to consult with their own advisors.

A.  **Confirmation Hearing**.  Section 1128(a) of the Bankruptcy Code provides that the Bankruptcy Court, after notice, may conduct the Confirmation Hearing to consider Confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

B.  **Confirmation Standards**.

Among the requirements for Confirmation are that the Plan (a) is accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class; (b) is feasible; and (c) is in the "best interests" of Holders of Claims and Interests that are Impaired under the Plan.

The following requirements must be satisfied pursuant to section 1129(a) of the Bankruptcy Code before a bankruptcy court may confirm a plan of reorganization.  The Prepetition Lender believes that the Plan fully complies with all the applicable requirements of section 1129 of the Bankruptcy Code set forth below:

1.     The Plan complies with the applicable provisions of the Bankruptcy Code.

2.     The Plan Proponent has complied with the applicable provisions of the Bankruptcy Code.

3.     The Plan has been proposed in good faith and not by any means forbidden by law.

4.     Any payment made or to be made by the Plan Proponent or by a Person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Case, in connection with the Plan and incident to the Chapter 11 Case is subject to the approval of the Bankruptcy Court as reasonable.

5.     The Plan Proponent has disclosed the identity and affiliations of any individual proposed to serve, after Confirmation, as a director, officer, or voting trustee of the Reorganized Debtor, any Affiliate of the Debtor reorganized under the Plan, or any successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy.

6.     The Plan Proponent has disclosed the identity of any insider that will be employed or retained by the Reorganized Debtor and the nature of any compensation for such insider.

7.     With respect to each Holder within an Impaired Class of Claims or Interests, as applicable, each such Holder (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

8.     With respect to each Class of Claims or Interests, such Class (a) has accepted the Plan or (b) is Unimpaired under the Plan (subject to the "cram-down" provisions discussed below).

9.     The Plan provides for treatment of Claims, as applicable, in accordance with the provisions of section 507(a) of the Bankruptcy Code.

10.    If a Class of Claims is Impaired under the Plan, at least one Class of Claims that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider.

11.    Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtor, or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

12. All fees payable under 28 U.S.C. § 1930 have been paid or the Plan provides for the payment of all such fees on the Effective Date.

13. The Plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to Confirmation, for the duration of the period the applicable Debtor has obligated itself to provide such benefits.

C. **No Solicitation of Non-Lender Classes**.

Pursuant to the Bankruptcy Code, only classes of claims against or interests of a debtor that are "impaired" (within the meaning of section 1124 of the Bankruptcy Code) under the terms and provisions of a plan of reorganization or liquidation are entitled to vote to accept or reject a plan. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturity. Classes of claims and interests that are not impaired are not entitled to vote on a plan and, under section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted a plan. Similarly, classes of claims and interests that will receive no property under the Plan on account of such claims or interests are deemed to reject the plan under section 1126(g) of the Bankruptcy Code, and are not entitled to vote on the Plan. Article V.B of this Disclosure Statement provides a summary of the classification and treatment of Claims under the Plan.

Under the Plan, Priority, Administrative and General Unsecured Claim Holders are unimpaired and conclusively presumed to accept the Plan. Interest Holders and Subordinated Claim Holders are impaired, and will receive or retain any property on account of their Interests or Subordinated Claims under the Plan. Interest Holders and Subordinated Claim Holders are accordingly deemed to reject the Plan, and will not vote on the Plan. The Prepetition Lender is impaired and will receive New Membership Interests in the Reorganized Debtor on account of its Claim. The Petition Lender will vote to accept the Plan under section 1129(a)(8) of the Bankruptcy Code.

D. **Feasibility of the Plan**.

Section 1129(a)(11) of the Bankruptcy Code requires that a plan proponent demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Prepetition Lender will provide financial wherewithal demonstrating the ability to make the necessary financial contribution to satisfy the treatment set forth for all Allowed Claims in the Plan. The Prepetition Lender believes that the Plan will successfully repay all Holders of Allowed Claims, except Subordinated Claims, and make a subsequent liquidation or reorganization unnecessary.

E. **Best Interests Test**.

As described above, section 1129(a)(7) of the Bankruptcy Code (often referred to as the "Best Interests Test") requires that each Holder of an Impaired Claim or Interest either (a) accept

the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. Interest Holders and Subordinated Claims would not be entitled to payment in a chapter 7 liquidation of the Debtor. The remaining impaired class, the Prepetition Lender, intends to accept the Plan. Accordingly, the Best Interests Test is satisfied.

## XI.    PLAN RELATED RISK FACTORS

A.    **Generally**. The following provides a summary of important considerations and risk factors associated with the Plan. However, it is not exhaustive. Holders of Claims against, and Interests in, the Debtor should read and carefully consider the factors set forth below. Holders of Claims or Interests should consider carefully the following factors in addition to the other information contained in this Disclosure Statement.

B.    **Certain Bankruptcy Considerations**. The Plan sets forth the means for satisfying the Claims against, and Interests in, the Debtor. Allowed Claims are expected to be paid in full in Cash in accordance with the terms of the Plan. Nevertheless, there are some risks to consummation of the Plan. Despite the risks inherent in the Plan, as described herein, the Prepetition Lender believes that the Plan is in the best interests of Holders of Claims and Interests when compared to all reasonable alternatives. Section 1129 of the Bankruptcy Code requires, among other things, a showing that confirmation of the Plan will not be followed by liquidation or the need for further financial reorganization of the Debtor, and that the value of distributions to dissenting Holders of Allowed Claims and Interests will not be less than the value such Holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. Although the Prepetition Lender believes that the Plan will meet such tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

C.    **Claims Estimations**. There can be no assurance that the Debtor and/or Prepetition Lender's estimated amount of Allowed Claims are correct. The actual Allowed amount of Claims may differ in some respect from the estimates. The estimated amounts are subject to certain risks, uncertainties, and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual Allowed amount of Claims may vary from those estimated by the Prepetition Lender and will prevent the Plan from going effective.

D.    **Bankruptcy-Specific Risk Factors That Could Negatively Impact the Reorganized Debtor's Business**.

1.    The Debtor and Reorganized Debtor are subject to the risks and uncertainties associated with the Chapter 11 Case. For the duration of the Chapter 11 Case, the Reorganized Debtor's operations and its ability to execute its business strategy will be subject to risks and uncertainties associated with bankruptcy. These risks include, but are not limited to:

a.     the Prepetition Lender's ability to develop, prosecute, confirm and consummate the proposed Plan; and

b.     the ability to meet all conditions precedent to the Effective Date of the Plan.

2.     The Prepetition Lender's commitment to fund Allowed Claims is dependent upon the successful confirmation and implementation of a plan of reorganization and preservation of the Sublease.  Failure to obtain this approval in a timely manner could adversely affect the Sublease. If a liquidation or protracted reorganization were to occur, there is a significant risk that the Debtor will eventually run out of cash and be unable to pay its obligations under the Sublease.

**The Prepetition Lender cautions each reader of this Disclosure Statement to carefully consider those factors set forth above and the acknowledgements contained in this "Risk Factors" section of this Disclosure Statement.**

**XII.    ARTICLE XII – ALTERNATIVES TO THE PLAN**

The Prepetition Lender believes that the Plan affords Holders of Claims the greatest realization of the Debtor's assets and, therefore, is in the best interests of Claim Holders.  But if the Plan is not confirmed, the theoretical alternatives include (a) continuation of the pending Chapter 11 Case without any immediately available financing; (b) an alternative plan; (c) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code; or (d) dismissal of the Chapter 11 Case.

A.     **Continuation of the Chapter 11 Case.** Since the Debtor has made few efforts to obtain the necessary regulatory approvals to develop the Premises, continuing the Chapter 11 Case would serve no purpose other than increasing costs to the Estate and reducing recoveries to Claim Holders.

B.     **Alternative Plans of Reorganization**. If the Plan is not confirmed, the Debtor or any party-in-interest could propose a different plan or plans.  Those plans might involve either a reorganization and continuation of the Debtor's business, a sale of the Debtor's assets as a going concern, in whole or in part, or some other form of orderly liquidation of the Debtor's assets, or a combination thereof.

C.     **Liquidation under Chapter 7.**  If no plan is confirmed, the Debtor's Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code.  In a Chapter 7 case, a trustee or trustees would be appointed to liquidate the assets of the Debtor.  It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against or Interests in the Debtor or how that would differ materially from what the Plan provides.  However, the Debtor believes that creditors would lose the materially higher going concern value if the Debtor was forced to liquidate.  In addition, the Debtor believes that in liquidation under chapter 7, before creditors received any distribution, additional administrative expenses involved in the appointment of a

trustee or trustees and attorneys, accountants and other professionals to assist such trustees would cause a substantial diminution in the value of the Estate. The assets available for distribution to creditors would be reduced by such additional expenses and by claims, some of which would be entitled to priority, which would arise by reason of the liquidation and from the rejection of leases and other executory contracts in connection with the cessation of operations and the failure to realize the greater going concern value of the Debtor's assets.

D.    **<u>Dismissal of Chapter 11 Case</u>.**  If no plan is confirmed, the Debtor's Chapter 11 Case may be dismissed.  Upon dismissal, each Holder of a Claim would need to individually pursue their non-bankruptcy right and remedies against the Debtor and its assets.  The Debtor's assets would remain subject to the Prepetition Lender's liens and likely provide no recovery for other Holders of Claims.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

## XIII.  ARTICLE XIII – CONCLUSION

**THE PREPETITION LENDER BELIEVES THAT THE PLAN PROVIDES THE BEST AVAILABLE RECOVERY TO ALL OF THE DEBTOR'S STAKEHOLDERS AND SHOULD BE CONFIRMED.**

Dated: ~~April 27~~June ___, 2020

AUTUMN WIND LENDING, LLC

By:    _____

Name: Vikas Tandon

Title:   Manager, Autumn Wind Lending, LLC

| Summary report: Litera® Change-Pro for Word 10.7.0.7 Document comparison done on 6/15/2020 2:24:50 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ROS-IWODMSCLSTR/DBIWOV2/206300678/5 | |
| **Modified DMS:** iw://ROS-IWODMSCLSTR/DBIWOV2/206300678/6 | |
| **Changes:** | |
| Add | 15 |
| Delete | 11 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 26 |