**EXHIBIT 2**

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| INSIGHT TERMINAL SOLUTIONS, LLC et al.[1] | Case No. 19-32231 |
| Debtors. | (Jointly Administered) |
| | Judge Joan A. Lloyd |

### AUTUMN WIND LENDING, LLC'S CHAPTER 11 PLAN OF REORGANIZATION FOR THE BANKRUPTCY ESTATE OF DEBTOR INSIGHT TERMINAL SOLUTIONS, LLC PURSUANT TO BANKRUPTCY CODE SECTION 1121(c)(2)

**LOWENSTEIN SANDLER LLP**
Robert M. Hirsh (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 262-6700
Fax: (212) 262-7402

**FROST BROWN TODD LLC**
Ronald E. Gold
Edward M. King
400 W. Market Street
Suite 3200
Louisville, KY 40202
Tel: (502) 589-5400
Fax: (502) 581-1087

Dated: ~~April 27~~June 9, 2020

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE OR A LEGALLY BINDING OBLIGATION OF AUTUMN WIND LENDING, LLC, INSIGHT TERMINAL SOLUTIONS, LLC, OR ANY OTHER PARTY IN INTEREST AND, THE PLAN WILL BE SUBJECT TO APPROVAL OF THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THE PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. SUCH A SOLICITATION WILL ONLY BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF SECURITIES AND/OR BANKRUPTCY LAWS.**

---

[1] The Debtors in these chapter 11 cases are Insight Terminal Solutions, LLC (Case No. 19-32231) and Insight Terminal Holdings, LLC (Case No. 19-32232). The Court has ordered the joint administration of these chapter 11 cases. The docket in this Case No. 19-32231 should be consulted for all matters affecting the above listed cases.

# TABLE OF CONTENTS

**Page**

ARTICLE I  DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION .......................................................................1

    A.    Defined Terms ...........................................................................1

    B.    Rules of Construction ................................................................7

ARTICLE II  TREATMENT OF UNCLASSIFIED CLAIMS ...........................8

    A.    Administrative Claims ..............................................................8

    B.    Professional Fee Claims ............................................................8

    C.    Priority Tax Claims....................................................................8

ARTICLE III  CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS...............................................................9

    A.    Classification and Treatment Generally ...................................9

    B.    Classification and Treatment of Classified Claims and Interests ..........................9

ARTICLE IV  TREATMENT OF THE DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................................11

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .........11

    B.    Procedures Related to Rejection of Executory Contracts or Unexpired Leases ........................12

    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases........13

    D.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ........................13

    E.    Contracts and Leases Entered into After the Petition Date .................14

ARTICLE V  DISTRIBUTION OF NEW MEMBERSHIP INTERESTS .................14

    A.    Cancellation of Existing Ownership Interests ......................................14

    B.    Distribution of New Membership Interests ...........................................14

    C.    Authorization and Issuance of New Membership Interests...................14

    D.    Cancellation of Existing Securities and Agreements.............................14

ARTICLE VI  CORPORATE GOVERNANCE AND IMPLEMENTATION OF THE PLAN.......................................................................~~14~~15

    A.    No Substantive Consolidation for Plan Purposes .............................~~14~~15

    B.    Vesting of Assets .....................................................................~~14~~15

    C.    Books and Records ..................................................................15

    D.    New Organizational Documents and Corporate Governance...................15

## TABLE OF CONTENTS

(continued)

Page

| | | |
|---|---|---|
| E. | Plan Funding | ~~15~~16 |
| F. | Discharge | 16 |
| G. | Distributions | 16 |
| H. | Section 1145 Exemption | 16 |
| I. | Effectiveness of Instruments and Agreements | ~~16~~17 |
| J. | No Corporate Action Required | ~~16~~17 |

ARTICLE VII  EFFECT OF THE PLAN
ON CLAIMS, INTERESTS AND CAUSES OF ACTION ........................17

| | | |
|---|---|---|
| A. | Binding Effect | 17 |
| B. | Release and Discharge of Reorganized Debtor | 17 |
| C. | Term of Injunctions or Stays | 17 |
| D. | Injunction Against Interference with Plan | 17 |
| E. | Injunction | ~~17~~18 |
| F. | Exculpation | 18 |
| G. | Injunction Related to Releases and Exculpation | 19 |
| H. | Releases by the Debtor | 19 |
| I. | Releases by Holders of Claims and Interests | ~~19~~20 |
| J. | Waiver of Statutory Limitations on Releases | 20 |
| K. | Retention, Reservation and Prosecution of Litigation Claims | 20 |

ARTICLE VIII  DETERMINATION OF CLAIMS; EFFECTIVE DATE ........................~~20~~21

| | | |
|---|---|---|
| A. | Claims Bar Date | ~~20~~21 |
| B. | Post-Confirmation Administrative Claims Bar Date | 21 |
| C. | Reorganized Debtor Authorized to Amend Schedules | 21 |
| D. | Objections to Claims | 21 |
| E. | Estimation of Claims | 21 |
| F. | Conditions to Effectiveness | ~~21~~22 |
| G. | Waiver of Conditions | 22 |
| H. | Effect of Non-Occurrence of the Effective Date | 22 |
| I. | Notice of Effective Date | 22 |
| J. | Substantial Consummation | 22 |

## TABLE OF CONTENTS
### (continued)

|  |  | Page |
|---|---|---|
| K. | Employee Matters | 22 |
| ARTICLE IX | MISCELLANEOUS PLAN PROVISIONS | 22 |
| A. | Retention of Jurisdiction | 22 |
| B. | Effecting Documents; Further Transactions; Timing | 24 |
| C. | Governing Law | 24 |
| D. | Exemption from Transfer Taxes | 24 |
| E. | Post-Effective Date Fees; Final Decree | 24 |
| F. | Method of Payment; Payments, Filings, and Notices Only on Business Days | ~~24~~25 |
| G. | De Minimis Payments and Distributions | ~~24~~25 |
| H. | Undeliverable or Unclaimed Distributions | 25 |
| I. | Time Bar to Cash Payments | 25 |
| J. | Revocation, Withdrawal, or Non-Consummation | 25 |
| K. | Notices | ~~25~~26 |
| L. | Entire Agreement | 26 |
| M. | Severability | 26 |
| N. | Exhibits | ~~26~~27 |
| O. | Conflicts | ~~26~~27 |
| P. | Pre-Confirmation Amendment | 27 |
| Q. | Post-Confirmation Amendments | 27 |

## INTRODUCTION

Autumn Wind Lending, LLC, (the "<u>Prepetition Lender</u>") proposes the following chapter 11 plan of reorganization (the "<u>Plan</u>") pursuant to chapter 11 of title 11 of the United States Code. Capitalized terms used in the Plan have the meanings ascribed to the terms in Article I.A of the Plan. Please refer to the Disclosure Statement for a discussion of the Debtor's history, as well as a summary and analysis of the Plan and other related matters, including distributions to be made under the Plan.  The Prepetition Lender is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019 AND THIS PLAN, THE PREPETITION LENDER RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN BEFORE ITS EFFECTIVE DATE.**

## ARTICLE I
## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

A.    <u>Defined Terms</u>. The following terms have the meanings specified below, except as expressly provided in other sections of the Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined).  Any capitalized term used in the Plan but not defined here shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

1.    "<u>Administrative Claim</u>" means a Claim for any expense Allowed under Bankruptcy Code sections 503(b), 507(b), or 546(c)(2) and entitled to priority under Bankruptcy Code section 507(a)(2), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; and (d) any Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code sections 330, 331, or 503.

2.    "<u>Allowed</u>" means, with respect to any Claim or Interest, such Claim or Interest or any portion thereof that the Prepetition Lender or Reorganized Debtor has assented to the validity of or that has been (a) expressly allowed under the Plan, (b) that is not Disputed, (c) that is either allowed or determined by a Final Order of a court of competent jurisdiction, or (d) that is agreed to by the Prepetition Lender or Reorganized Debtor and the holder of such Claim or Interest; provided, however, that, notwithstanding anything to the contrary, by treating a Claim as an "Allowed Claim" or an Interest as an "Allowed Interest," the Reorganized Debtor does not waive its rights to contest the amount and validity of such Claim or Interest to the extent it is disputed, contingent or unliquidated, in the manner and venue in which such Claim or equity Interest would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced; and provided, further that the amount of any Allowed Claim or Allowed Interest shall be determined in accordance with the Bankruptcy Code, including sections 502(b), 503(b) and 506 of the Bankruptcy Code.

3.    "<u>Avoidance Actions</u>" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by the Debtor and its recovery, subordination, or other remedies that may be brought by and on behalf of the Debtor and its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code.

4.    "<u>Bankruptcy Code</u>" means Title 11 of the United States Code as of the Petition Date.

5.    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Western District of Kentucky, which has jurisdiction over the Chapter 11 Case.

6.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein.

7.    "<u>Business Day</u>" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)(6)), on which commercial banks are open for business in Louisville, Kentucky.

8.    "<u>Cash</u>" means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, and wire transfers of immediately-available funds.

9.    "<u>Cash Contribution</u>" means the one-time Cash contribution into a segregated account in the name of the Reorganized Debtor on the Effective Date.

10.    "<u>Chapter 11 Case</u>" means the Debtor's case under chapter 11 of the Bankruptcy Code, pending before the Bankruptcy Court under Case No. 19-32231-jal.

11.    "<u>Claim</u>" means a claim against the Debtor or its property as defined in Bankruptcy Code section 101(5), including: (a) any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if the breach gives rise to a right to payment, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

12.    "<u>Claims Bar Date</u>" means the last date to file a proof of claim, as determined by the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 3003.

13.    "<u>Claim Filing Procedures and Bar Date</u>" means those procedures and the Claims Bar Date established pursuant to **<u>Exhibit A</u>** hereto.

-2-

14.    "Claims Objection Deadline" means the last day to file an objection to any Claim under Bankruptcy Code section 502(a), which shall be 180 days after the Effective Date, which may be extended upon request of the Reorganized Debtor.

15.    "Class" means a category consisting of holders of Claims or Interests substantially similar in nature to the Claims or Interests of other holders placed in that category, as designated in Article III of the Plan.

16.    "Collateral" means any property or interest in property of the estate of the Debtor subject to a Lien to secure the payment or performance of a claim, provided the Lien is not subject to avoidance under the Bankruptcy Code or applicable state law.

17.    "Confirmation Date" means the date the Clerk of the Bankruptcy Court enters the Confirmation Order.

18.    "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

19.    "Confirmation Order" means the order(s) confirming the Plan in accordance with the provisions of the Bankruptcy Code.

20.    "Cure" means the payment of Cash by the Reorganized Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure monetary defaults under an Executory Contract or Unexpired Lease of the Debtor and to permit the Reorganized Debtor to assume that contract or lease under section 365(a) of the Bankruptcy Code.

21.    "Cure Schedule" means the schedule of proposed Cure amounts for each Executory Contract and Unexpired Lease proposed to be assumed, as the same may be amended, modified, or supplemented from time to time and which will be included in the Plan Supplement.

22.    "De Minimis Payment" means a distribution that is less than fifty dollars ($50.00).

23.    "Debtor" means Insight Terminal Solutions, LLC.

24.    "Disclosure Statement" means the written statement and any supplemental materials provided by the Prepetition Lender under Bankruptcy Code section 1125.

25.    "Disputed" means, as to any Claim (or portion thereof) or Interest against the Debtor, a Claim or Interest to the extent the allowance of such Claim or Interest is the subject of (i) a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, and which objection, request for estimation or dispute has not been withdrawn, with prejudice, or determined by an order of the Bankruptcy Court, or (ii) a Claim subject to a dispute that is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law.

26.     "District Court" means the United States District Court for the Western District of Kentucky.

27.     "Effective Date" means the date on which this Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which all conditions precedent to the effectiveness of this Plan specified in Article VII, have been satisfied, or, if capable of being waived, waived, which date shall be specified in a notice filed by the Reorganized Debtor or Prepetition Lender, as applicable, with the Bankruptcy Court.

28.     "Estate" means the Debtor's bankruptcy estate created pursuant to section 541 of the Bankruptcy Code.

29.     "Exculpated Parties" means collectively, and, in each case, solely in their capacities as such: (a) the Reorganized Debtor; and (b) the Prepetition Lender; and solely with respect to (b), such entity's successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case solely in their capacity as such.  For the avoidance of doubt, "Exculpated Parties" does not include the Debtor.

30.     "Executory Contract" means any contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

31.     "Final Order" means an order as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of certiorari, or re-argument or rehearing has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or motion for re-argument or rehearing shall have expired.

32.     "General Unsecured Claim" means any Claim against the Debtor existing as of the Petition Date other than a Prepetition Lender Claim, Administrative Claim, Subordinated Claim, Priority Tax Claim, or Other Priority Claim.

33.     "Governmental Unit" means an entity defined in Bankruptcy Code section 101(27).

34.     "Holder" means a Person holding a Claim or Interest.

35.     "Impaired" means impaired within the meaning of section 1124 of the Bankruptcy Code.

-4-

36.    "Interest" means any equity interest in the Debtor represented by any certificated or uncertificated shares or membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest, or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in the Debtor, or right to convert into such an equity interest or acquire any equity interest of the Debtor, which was in existence prior to or on the Effective Date.

37.    "JMB Capital" means JMB Capital Partners Master Fund, LP.

38.    "JMB Capital Guarantee" means the guarantee by JMB Capital, as included in the Plan Supplement, with respect to payment of Allowed Claims which exceed the Cash Contribution.

39.    37. "Lien" means any charge against, security interest in, encumbrance upon, or other interest in property to secure payment of a debt or performance of an obligation.

40.    38. "Litigation Claims" means any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, including any Avoidance Action, and actions against any Person or entity for failure to pay for products or services provided or rendered by the Debtor, all claims, suits or proceedings relating to enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, and all claims or causes of action seeking recovery of the Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's or the Reorganized Debtor's businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

41.    39. "New Member" means Autumn Wind Lending, LLC, which shall be the sole member of the Reorganized Debtor on the Effective Date.

42.    40. "New Membership Interests" means the 100 units of membership interests to be issued by the Reorganized Debtor on the Effective Date.

43.    41. "New Non-Member Manager" means Vikas Tandon, who will serve as the sole manager of the Reorganized Debtor on and after the Effective Date.

44.    42. "New Organizational Documents" means the form of certificates or articles of organization, bylaws, charter or such other applicable formation documents of the Reorganized Debtor, reasonably satisfactory to the Prepetition Lender. The New Organizational Documents shall be approved at a member meeting within 30 days of the Effective Date.

45.   43.  "Other Priority Claim" means any Claim (or portion of a Claim) entitled to priority under section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Claims.

46.   44.  "Person" means an individual, corporation, partnership, limited liability company (including its members), joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

47.   45.  "Petition Date" means July 17, 2019, the date on which the Debtor commenced its Chapter 11 Case.

48.   46.  "Plan" means the plan of reorganization submitted by the Prepetition Lender pursuant to Chapter 11 of the Bankruptcy Code.

49.   47.  "Plan Proponent" means Autumn Wind Lending, LLC.

50.   48.  "Plan Supplement" means the supplement to the Plan, if any, which is incorporated fully into the Plan, that will contain the exhibits and Plan documents necessary and appropriate to implement the terms of the Plan, and which shall be filed no later than fifteen (15) days prior to the Confirmation Hearing or such other date as may be approved by the Bankruptcy Court, including any amendments, modifications, and/or supplements thereto.

51.   49.  "Prepetition Lender" means Autumn Wind Lending, LLC.

52.   50.  "Prepetition Lender Claim" means any Claim arising under the Prepetition Loan and Security Agreement.

53.   51.  "Prepetition Loan and Security Agreement" means that certain Loan and Security Agreement dated as of September 24, 2018 (as amended, restated, supplemented or otherwise modified).

54.   52.  "Priority Tax Claim" means any Claim of a Governmental Unit, as defined in section 101(27) of the Bankruptcy Code, entitled to priority under Bankruptcy Code section 507(a)(8).

55.   53.  "Professional Fee Claim"  means an Administrative Claim for compensation and reimbursement of expenses of a professional incurred before the Effective Date submitted in accordance with Bankruptcy Code sections 328, 330, 331, or 503(b).

56.   54.  "Professional Fee Bar Date" means the last day to file an application for approval of Professional Fee Claims, which is 30 days after the Confirmation Date pursuant to Article VII of the Plan.

57.   55.  "Released Parties" means collectively, and in each case solely in their capacities as such: (a) the Reorganized Debtor; and (b) the Prepetition Lender; and solely with respect to (b), such entities' successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders,  members, partners, managers,  employees,

-6-

subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case solely in their capacity as such. For the avoidance of doubt, "Released Parties" does not include the Debtor.

58. ~~56.~~ "Releasing Parties" means collectively, and, in each case, solely in their capacities as such:  the Debtor and its predecessors, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, advisory board members, restructuring advisors, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund  advisors (and employees thereof), and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case solely in their capacity as such.

59. ~~57.~~ "Reorganized Debtor" means the Debtor, as of the Effective Date.

60. ~~58.~~ "Rejection Bar Date" means the date that is twenty-one (21) days after the Effective Date.

61. ~~59.~~ "Rejection Damages Claim" means any Claim on account of the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code or the repudiation of such contract.

62. ~~60.~~ "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule of certain Executory Contracts and Unexpired Leases to be assumed by the Debtor and/or Reorganized Debtor, as the same may be amended, modified, or supplemented from time to time, and which will be included in the Plan Supplement.

63. ~~61.~~ "Schedules" means, unless otherwise specified, the respective schedules of assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by the Debtor in accordance with section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

64. ~~62.~~ "Subordinated" means a Claim that is thereafter subordinated in a Final Order pursuant to section 510 or any other provision of the Bankruptcy Code or applicable law.

65. ~~63.~~ "Unexpired Lease" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

B.    Rules of Construction.

1.    Generally. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented; (ii) unless otherwise specified, all

references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

2.    <u>Time Periods</u>. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

3.    <u>Miscellaneous Rules</u>. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

## <u>ARTICLE II</u>
## <u>TREATMENT OF UNCLASSIFIED CLAIMS</u>

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

A.    <u>Administrative Claims</u>. Except to the extent that a Holder of an Allowed Administrative Claim and either the Reorganized Debtor and Prepetition Lender agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of such Allowed Administrative Claim, be paid the full unpaid amount of such Allowed Administrative Claim in Cash on, or as soon thereafter as is reasonably practicable, (a) the Effective Date or, if payment is not then due, (b) on the due date of such Allowed Administrative Claim, or (c) within five (5) Business Days from such Administrative Claim being Allowed; *provided*, *however*, that Administrative Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.  Any taxes that arose postpetition shall be paid in the ordinary course of business.

B.    <u>Professional Fee Claims</u>. Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) five Business Days after the Professional Fee Claim is Allowed; and (b) another date on which the Holder of the Professional Fee Claim and the Reorganized Debtor agree.  Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Prepetition Lender and Reorganized Debtor its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

C.      Priority Tax Claims. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Reorganized Debtor and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

A.      Classification and Treatment Generally.  Pursuant to sections 1122 and 1123 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests, which are placed in a particular Class for all purposes under the Plan, including, without limitation, voting, confirmation, and receiving distributions under the Plan, as set forth below.    In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and their treatment is set forth in Article II.

B.      Classification and Treatment of Classified Claims and Interests.    Classified Claims and Interests are divided into numbered classes as follows:

| Class | Treatment | Entitled To Vote |
|---|---|---|
| Class 1 – Other Priority Claims | Unimpaired | No (Deemed to Accept) |
| Class 2 – Prepetition Lender Claim | Impaired | Yes |
| Class 3 – General Unsecured Claims | Unimpaired | No (Deemed to Accept) |
| Class 4 – Subordinated Claims | Impaired | No (Deemed to Reject) |
| Class 5 – Interests | Impaired | No (Deemed to Reject) |

1.      Class 1: Other Priority Claims

(a)      Treatment: Except to the extent that a Holder of an Other Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, each Holder of such Other Priority Claim shall receive the following at the option of the Prepetition Lender:

(i)      Payment of an Allowed Other Priority Claim in full in Cash in the ordinary course of business;

(ii)      Reinstatement of such Other Priority claim; or

(iii)      Such other treatment rendering such Other Priority Claim Unimpaired.

      (b)    Impairment and Voting: Holders of Other Priority Claims are unimpaired and all Holders of Other Priority Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

2.    <u>Class 2: Prepetition Lender Claim</u>

      (a)    Treatment: The Prepetition Lender Claim is Allowed in full. The Prepetition Lender shall receive, in exchange for full and final satisfaction, settlement, release, and discharge of its Prepetition Lender Claim, 100 Units of New Membership Interests in the Reorganized Debtor on the Effective Date, or as soon as reasonably practicable thereafter.

      (b)    Impairment and Voting: The Prepetition Lender Claim is impaired and the Prepetition Lender is entitled to vote on acceptance or rejection of the Plan.

3.    <u>Class 3: General Unsecured Claims</u>

      (a)    Treatment: Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, receive payment in Cash in the full amount of an Allowed General Unsecured Claim, which payment shall occur on the later of: (i) thirty (30) days after the Effective Date (ii) thirty (30) days after such Claim is Allowed and (iii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim.

      (b)    Impairment and Voting: Holders of General Unsecured Claims are unimpaired and all Holders of General Unsecured Claims are conclusively deemed to have accepted the plan and are not entitled to vote on the Plan.

4.    <u>Class 4: Subordinated Claims</u>

      (a)    Treatment: Holders of Subordinated Claims shall not receive or retain any distribution under the Plan on account of such Subordinated Claims.

      (b)    Impairment and Voting: Holders of Subordinated Claims are impaired by the Plan and will receive no property under the Plan on account of their Claims. Such Holders are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and will not vote to accept or reject the Plan.

5.      Class 5: Interests

(a)      Treatment: Except as otherwise provided for herein, all Interests will be canceled and extinguished as of the Effective Date and of no further force and effect against the Reorganized Debtor. Interest Holders will have no rights against the Debtor, the Reorganized Debtor, their assets, or the Estate, arising from or relating to such Interests or the cancellation thereof.

Any voting, control or management rights held by Interest Holders shall be terminated, as will any prepetition right to receive equity distributions from the Debtor or Reorganized Debtor.

(b)      Impairment and Voting: Interest Holders are impaired and will receive no property under the Plan on account of their Interests. Accordingly, such Holders are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and will not vote on the Plan.

## ARTICLE IV
## TREATMENT OF THE DEBTOR'S EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.

1.      Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) was assumed or rejected previously by the Debtor; (3) expired or terminated pursuant to its own terms before the Effective Date; (4) is the subject of a motion to assume pending on the Confirmation Date; or (5) is the subject of a motion pending on the Confirmation Date to assume an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

2.      Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, as of the Effective Date, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

3.      All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtor, and be enforceable by the Reorganized Debtor in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer.  Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable.  To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision)

-11-

restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtor's assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

4. Notwithstanding anything to the contrary in the Plan, the Prepetition Lender reserves the right to alter, amend, modify or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time before the Confirmation Date, including without limitation the right to remove any Executory Contract or Unexpired Lease therefrom. The Prepetition Lender further reserves the right to remove any Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the Effective Date upon the consent of the applicable non-Debtor counterparty.

B. <u>Procedures Related to Rejection of Executory Contracts or Unexpired Leases</u>. The Prepetition Lender will file the Schedule of Assumed Executory Contracts and Unexpired Leases with the Plan Supplement on or before the date that is fifteen (15) days before the Confirmation Hearing which shall notify all other non-Debtor counterparties not scheduled that all other Executory Contracts and Unexpired Leases shall be rejected pursuant to the Confirmation Order. Each non-Debtor counterparty to an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan shall have until 4:00 p.m. (Eastern time) on the date that is seven (7) calendar days before the Confirmation Hearing to file a written objection to the rejection of its Executory Contract or Unexpired Lease and serve it in a manner to be actually received by each of the following: (i) counsel to the Prepetition Lender: Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020, Attn: Robert M. Hirsh (rhirsh@lowenstein.com) and Phillip Khezri (pkhezri@lowenstein.com) <u>and</u> Frost Brown Todd LLC, 400 W. Market Street, Suite 3200, Louisville, Kentucky 40202, Attn: Edward M. King (tking@fbtlaw.com); and (ii) the United States Trustee, 601 West Broadway, Suite 512, Louisville, KY 40202, Attn: John R. Stonitsch (ustpregion08.lo.ecf@usdoj.gov). Any such objections that cannot be consensually resolved by the Prepetition Lender and the objecting non-Debtor counterparty shall be considered by the Bankruptcy Court at the Confirmation Hearing or such other date requested by the Debtor.

1. <u>Schedule of Assumed Executory Contracts and Unexpired Leases</u>. Executory Contracts and Unexpired Leases set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date.

2. <u>Abandonment of Personal Property</u>. Any fixtures, furniture, advertising displays, other office and store equipment or any other personal property left by the Debtor on the premises related to Unexpired Leases rejected pursuant to the Plan shall be deemed abandoned as of the Rejection Date pursuant to section 554 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute authorization by the Bankruptcy Court of such abandonment and, as of the Effective Date, the non-Debtor counterparties to such rejected

Unexpired Leases may dispose of any such personal property in their sole and absolute discretion without notice or liability to the Debtor, Reorganized Debtor, or third parties.

        3.        <u>Claim Procedures for Rejection Damages Claim Holders</u>. Each non-Debtor counterparty to an Executory Contract or Unexpired Lease not identified on the Schedule of Assumed Executory Contracts and Unexpired Leases must file a proof of claim asserting any Rejection Damages Claim on or before the Rejection Bar Date. **Any Person with a Rejection Damages Claim is required to file a proof of Claim asserting a Rejection Damages Claim and failure to do so on or before the Rejection Bar Date shall result in any Rejection Damages Claim being disallowed in accordance with section 502 of the Bankruptcy Code and forever barred, estopped, and enjoined from assertion and any such Rejection Damages Claim shall not be enforceable against the Reorganized Debtor, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding a proof of Claim to the contrary.**

        C.        <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>.

        1.        The proposed Cure amount for all Executory Contracts not identified on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be $0.00 unless otherwise indicated on such schedule. The Prepetition Lender shall serve the Schedule of Assumed Executory Contracts and Unexpired Leases on all scheduled non-Debtor counterparties to an Executory Contract or Unexpired Lease. **For the avoidance of doubt, if an Executory Contract between the Debtor and any non-Debtor counterparty is not listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, then the Reorganized Debtor intends to reject such Executory Contract.**

        2.        Any counterparty to an Executory Contract or Unexpired Lease that objects to (1) the assumption of such Executory Contract or Unexpired Lease, (2) the proposed Cure amount, (3) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (4) any other matter pertaining to assumption, shall file a written objection thereto and serve it in a manner to be actually received by each of the following by no later than 4:00 p.m. (Eastern time) on the date that is seven (7) days prior to the Confirmation Hearing: ((i) counsel to the Prepetition Lender: Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020, Attn: Robert M. Hirsh (rhirsh@lowenstein.com) and Phillip Khezri (pkhezri@lowenstein.com) <u>and</u> Frost Brown Todd LLC, 400 W. Market Street, Suite 3200, Louisville, Kentucky 40202, Attn: Edward M. King (tking@fbtlaw.com); and (ii) the United States Trustee, 601 West Broadway, Suite 512, Louisville, KY 40202, Attn: John R. Stonitsch (ustpregion08.lo.ecf@usdoj.gov). Any timely filed responses or objections will be heard by the Bankruptcy Court at the Confirmation Hearing or on such other date agreed to by the parties or ordered by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to any of the foregoing matters related to assumption will be deemed to have assented and will be deemed to have forever released and waived any such objection. Payment of any Cure amount shall be made following the entry of a Final Order or orders resolving any dispute related thereto and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

D.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor or Reorganized Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.    Contracts and Leases Entered into After the Petition Date. Contracts and leases entered into after the Petition Date by the Debtor, and any Executory Contracts and Unexpired Leases assumed by the Debtor, may be performed by the Reorganized Debtor in the ordinary course of business and in accordance with the terms thereof.

## ARTICLE V
## DISTRIBUTION OF NEW MEMBERSHIP INTERESTS

A.    Cancellation of Existing Ownership Interests. On the Effective Date, all existing Interests in the Debtor shall be cancelled and rendered null and void.

B.    Distribution of New Membership Interests. On the Effective Date, the Reorganized Debtor will issue the Prepetition Lender the New Membership Interests in the Reorganized Debtor.  The New Membership Interests will provide the Prepetition Lender with full ownership of the Reorganized Debtor, and thereby transfer the complete and undivided legal authority to manage the business affairs of the Reorganized Debtor and the complete and undivided legal authority to receive equity distributions from the Reorganized Debtor.

C.    Authorization and Issuance of New Membership Interests. The Reorganized Debtor is authorized to issue or cause to be issued and shall issue the New Membership Interests, in accordance with the terms of the Plan without the need for any further corporate, limited liability company, or member action. On the Effective Date, the Reorganized Debtor shall distribute the New Membership Interests pursuant to the Plan. All of the New Membership Interests shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable.

D.    Cancellation of Existing Securities and Agreements. Except for the purpose of evidencing a right to payment under the Plan and except as otherwise set forth in the Plan, including with respect to executory contracts or unexpired leases that shall be assumed by the Reorganized Debtor, on the Effective Date, all agreements, instruments, and other documents evidencing any Claim or Interest, including the Prepetition Loan and Security Agreement, and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the underlying obligations of the Debtor shall be deemed fully satisfied, released, and discharged.

## ARTICLE VI
## CORPORATE GOVERNANCE AND IMPLEMENTATION OF THE PLAN

A. <u>No Substantive Consolidation for Plan Purposes</u>. The Plan applies solely to Debtor, and the Debtor's Estate has not been substantively consolidated.

B. <u>Vesting of Assets</u>. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estate (including Litigation Claims, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtor may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Litigation Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

C. <u>Books and Records</u>. The Debtor's directors, officers, and managers, as applicable, shall transfer the Debtor's books and records to the New Non-Member Manager on the Effective Date, or as soon as reasonably practicable thereafter.  To the extent any books and records relate to the Debtor and one or more other entities, such books and records shall be turned over to the New Non-Member Manager. The Reorganized Debtor may dispose of any of the Debtor's books and records, subject to the expiration of any statutory period requiring that such records be maintained, without authorization from the Bankruptcy Court.

D. <u>New Organizational Documents and Corporate Governance</u>.

1. <u>Certificate of Formation</u>. The Certificate of Formation and/or Operating Agreement of the Debtor shall be amended and restated in New Governing Documents. The precise form of such document(s) as amended and restated shall be determined by the recipient of the New Membership Interests at an initial membership meeting to be held for the Reorganized Debtor within thirty (30) days of the Effective Date. The amended and restated Certificate of Formation shall contain a provision prohibiting the issuance of nonvoting equity securities.

2. <u>New Management Structure</u>.  The Holder of New Membership Interests shall draft governing documents for the Reorganized Debtor's new management structure at the initial membership meeting. No insiders, managers, officers, or directors of the Debtor will be appointed as officers, managers or directors of the Reorganized Debtor.

3. <u>Resignation of Directors and Officers.</u> Upon the Effective Date, the Debtor's members, managers and officers shall be deemed to have resigned and shall be replaced by the new member and the new non-member manager, respectively.

4. <u>New Member and Manager for the Reorganized Debtor.</u>  For the period immediately following confirmation of the Plan, the Prepetition Lender proposed that **Vikas Tandon** will serve as the sole New Non-Member Manager of Insight Terminal Solutions, LLC. Mr. Tandon is currently the Chief Investment Officer of JMB Capital Partners Lending, LLC and Ridgedale Partners, LLC, as well as Manager of the Prepetition Lender. Mr. Tandon proposes to

-15-

draw no compensation for his management of the Reorganized Debtor. The Prepetition Lender will be the sole member of the Reorganized Debtor as of the Effective Date of the Plan.

    E.    <u>Plan Funding</u>.

    1.    <u>Cash Reserves.</u> Distributions under the Plan may be partially funded from the Reorganized Debtor's cash on hand as of the Effective Date**.**

    2.    <u>Cash Contribution</u>. On the ~~Effective~~Confirmation Date, the Prepetition Lender will make the Cash Contribution in the amount of $~~4,400,000~~5,000,000 into a segregated escrow account ~~in the name of the Reorganized Debtor~~for the benefit of Holders of Allowed Class 3 Claims.    The Cash Contribution shall be used solely to pay all Allowed Claims in accordance with the Plan and after payment of all Allowed Claims, any remaining funds in such account shall revert to the Prepetition Lender. The Reorganized Debtor shall be authorized to execute, deliver, and enter into and perform under the Plan without any further corporate or limited liability company action and without further action by the holders of Claims or Interests.

    3.    JMB Capital Guarantee.    JMB Capital shall guarantee payment of all Allowed Claims which exceed the Cash Contribution. An executed JMB Capital Guarantee will be included in the Plan Supplement.

    F.    <u>Discharge</u>. Except as provided in this Plan or the Confirmation Order, the rights granted under this Plan and the treatment of Claims and Interests under this Plan shall be in full and final satisfaction, discharge, and release of all Claims and Interests.  Except as provided in this Plan or the Confirmation Order, confirmation of this Plan discharges the Reorganized Debtor from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code section 501; (b) a Claim based on such debt is Allowed under Bankruptcy Code section 502; or (c) the holder of a Claim based on such debt has accepted this Plan. Without limiting the foregoing, the discharge granted under this Plan is granted to the fullest extent allowed under Bankruptcy Code sections 1141(a), 1141(b), 1141(c), and 1141(d)(1).

    G.    <u>Distributions</u>. The Reorganized Debtor shall make all distributions in accordance with the terms of the Plan.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Holders of Allowed Claims entitled to distributions under the Plan shall provide any information requested by the Reorganized Debtor necessary for making such distribution.

    H.    <u>Section 1145 Exemption</u>. In accordance with section 1145 of the Bankruptcy Code, the issuance under the Plan of the New Membership Interests is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

I.      Effectiveness of Instruments and Agreements. On the Effective Date, all instruments, agreements, and documents issued, entered into, delivered, or filed under the Plan are effective, binding, and enforceable in accordance with their respective terms.

J.      No Corporate Action Required. As of the Effective Date: (a) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by the Plan; and (b) the other matters provided for under, or in furtherance of, the Plan involving corporate action required of the Debtor or Reorganized Debtor, as applicable, are deemed to have occurred, are effective as provided in the Plan, and are deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by the Debtor's or Reorganized Debtor's officers, shareholders, members, or managers.

## ARTICLE VII
## EFFECT OF THE PLAN
## ON CLAIMS, INTERESTS AND CAUSES OF ACTION

A.      Binding Effect. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code,  and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of this Plan shall bind every holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under this Plan and whether such Holder has accepted this Plan.

B.      Release and Discharge of Reorganized Debtor. Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each Holder (as well as any representatives, trustees, or agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Reorganized Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or Interest in the Reorganized Debtor.

C.      Term of Injunctions or Stays. Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

D.      Injunction Against Interference with Plan. Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; provided, that nothing herein or in the Confirmation Order shall preclude, limit, restrict or prohibit any party in interest from seeking to enforce the terms of the Plan, the Confirmation

-17-

Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

       E.    <u>Injunction</u>.

       1.    Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, the Reorganized Debtor, or the Estate, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to the Reorganized Debtor (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Reorganized Debtor, the Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Reorganized Debtor or the Estate (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtor, the Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, the Reorganized Debtor or the Estate (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against the Reorganized Debtor or the Estate from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

       2.    By accepting distributions pursuant to this Plan, each holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by this Plan, including the injunctions set forth in this Article.

       F.    **Exculpation.  Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Case; the Disclosure Statement, the Plan, the Schedule of Assumed Executory Contracts and Unexpired Leases, or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of New Membership**

-18-

Interests under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, managers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan, including the issuance of New Membership Interests thereunder. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

G. <u>Injunction Related to Releases and Exculpation</u>. **The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, losses, or liabilities released pursuant to this Plan, including, the claims, obligations, suits, judgments, damages, demands, debts, rights and liabilities released or exculpated in this Plan.**

H. **<u>Releases by the Debtor.</u>  As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Supplement, for good and valuable consideration, the adequacy of which is hereby confirmed,  including,  the  service  of  the Released Parties to facilitate the reorganization  of  the Debtor, the implementation of the Plan, and except as otherwise provided in this Plan or in the Confirmation Order, the Released Parties are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Debtor in each case on behalf of itself and its respective affiliates, successors, assigns, and representatives and any and all other entities who may purport to assert any cause of action derivatively, by or through the foregoing entities, from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between the Debtor and any Released Party, the Plan funding, the negotiation, formulation, or preparation of the Disclosure Statement and this Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to this Plan, or any other act or omission, transaction, agreement, event, or other**

occurrence, and in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan.

I.       **Releases by Holders of Claims and Interests**. As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtor and the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties, are deemed forever released and discharged, to the maximum extent permitted by law and unless barred by law, by the Releasing Parties from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action, losses, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, and any claims for breach of any fiduciary duty (or any similar duty), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates (to the extent such affiliates can be bound) would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase of any Interest in the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Plan funding, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, or any other act or omission, transaction, agreement, event, or other occurrence, and in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

J.       **Waiver of Statutory Limitations on Releases**. Each Releasing Party in each of the releases contained in the Plan expressly acknowledges that although ordinarily a general release may not extend to claims which the releasing party does not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each releasing party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code section 1542. The releases contained in the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

K.       Retention, Reservation and Prosecution of Litigation Claims. Except as otherwise provided in the Plan, all Litigation Claims other than Avoidance Actions are retained and reserved for the Reorganized Debtor, which is designated as the Estate's representative under

Bankruptcy Code § 1123(b)(3)(B) for purposes of the Litigation Claims other than Avoidance Actions. The Reorganized Debtor shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Litigation Claims other than Avoidance Actions, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). The Reorganized Debtor shall have sole discretion to determine in its business judgment which Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, right, or Litigation Claim, the Reorganized Debtor shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Litigation Claims shall survive confirmation and the commencement or prosecution of Litigation Claims shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

## ARTICLE VIII
## DETERMINATION OF CLAIMS; EFFECTIVE DATE

A.      <u>Claims Bar Date.</u> All Claims incurred prior to the Confirmation Date, including Administrative Claims, shall file a Claim in accordance with the Claim Filing Procedures and Bar Date attached hereto as **Exhibit A**. Any such Claim that is not filed in accordance with the Claim Filing Procedures and Bar Date shall be forever barred.

B.      <u>Post-Confirmation Administrative Claims Bar Date</u>. All requests for payment of administrative costs and expenses incurred on or after the Confirmation Date through and including the Effective Date pursuant to section 507(a)(1) or 503(b) of the Bankruptcy Code shall be served on the Reorganized Debtor and filed with the Bankruptcy Court no later than 30 days after the Effective Date. Any such Claim that is not served and filed within this time shall be forever barred.

C.      <u>Reorganized Debtor Authorized to Amend Schedules</u>. Upon the Effective Date, the Reorganized Debtor may amend its Schedules.

D.      <u>Objections to Claims</u>. The Reorganized Debtor and/or any other party in interest may object to the allowance of any Claim. Objections must be filed no later than the Claims Objection Deadline. The Reorganized Debtor will make no distribution on account of any claim that is not Allowed unless or until the claim becomes an Allowed Claim.

E.      <u>Estimation of Claims</u>**.** The Reorganized Debtor may, at any time, request that the Bankruptcy Court (or the District Court, if applicable) estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan, including any Claim for taxes, to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim, and the Bankruptcy Court (or the District Court, if applicable) will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. If the Bankruptcy Court (or the District Court, if applicable) estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or the District Court, if applicable). The foregoing objection, estimation, and resolution

-21-

procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court (or the District Court, if applicable) and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court (or the District Court, if applicable).

F.    Conditions to Effectiveness. The Effective Date does not occur unless and until:

1.    The Confirmation Date occurs and the Confirmation Order, in a form satisfactory to the Prepetition Lenders, in its sole discretion, has become a Final Order, which shall, among other things, provide that the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to enter into any transactions contemplated thereunder;

2.    No request for revocation of the Confirmation Order under Bankruptcy Code section 1144 is pending;

3.    All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective; and

4.    The Debtor or Reorganized Debtor has the ability to assume the Sublease;.

5. Claims against the Debtor do not exceed $4,400,000; and

6. The Prepetition Lender makes the Cash Contribution.

G.    Waiver of Conditions. The Prepetition Lender may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

H.    Effect of Non-Occurrence of the Effective Date. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; (b) constitute an admission, acknowledgement, offer or undertaking by the Prepetition Lender.

I.    Notice of Effective Date. Not later than three (3) Business Days following the Effective Date, the Reorganized Debtor shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court and serve such notice on all parties entitled to notice of the Plan.

J.    Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

K.    Employee Matters. Upon the Effective Date, all material employee compensation and benefit plans, and employment, severance, retirement, indemnification, and other similar employee-related agreement or arrangements in place as of the Effective Date with the Debtor shall be rejected and all of the Debtor's employees shall be terminated.

## ARTICLE IX
## MISCELLANEOUS PLAN PROVISIONS

A.    <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain non-exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.    resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) the Reorganized Debtor's amendment, modification, or supplement after the Confirmation Date, pursuant to <u>Article IV</u> of the Plan, of the Schedule of Executory Contracts and Unexpired Leases; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

2.    adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

3.    ensure that distributions to Holders of Allowed Claims are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

4.    enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

5.    issue and implement orders in aid of execution, implementation, or consummation of the Plan;

6.    consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

7.    hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(2) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and

disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

9.    hear and determine all suits or adversary proceedings to recover assets of the Reorganized Debtor and property of its Estate, wherever located;

10.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

11.    grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, or in the event that the Effective Date does not occur, to consider any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4);

12.    hear any other matter not inconsistent with the Bankruptcy Code;

13.    hear and determine all disputes involving the existence, nature or scope of the Reorganized Debtor's discharge;

14.    issue a final decree and enter an order closing the chapter 11 case; and

15.    enforce all orders previously entered by the Bankruptcy Court.

After the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date.  Nothing contained herein shall be construed to increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the Bankruptcy Court.

B.    Effecting Documents; Further Transactions; Timing. The Prepetition Lender and Reorganized Debtor are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan.  All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

C.    Governing Law. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

D.    Exemption from Transfer Taxes. Under Bankruptcy Code section 1146(a): (a) the issuance, distribution, transfer, and exchange of assets or property of the Estate, including without limitation the New Membership Interests; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate

transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

E.    Post-Effective Date Fees; Final Decree. Notwithstanding anything to the contrary contained in the Plan, all fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter.  The Reorganized Debtor is responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which Reorganized Debtor will seek as soon as feasible after distributions under the Plan have commenced.  Notice of application for a final decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

F.    Method of Payment; Payments, Filings, and Notices Only on Business Days. Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank.  Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

G.    De Minimis Payments and Distributions. Notwithstanding any other provision of this Plan, De Minimis Payments need not be made on account of any Allowed Claim. De Minimis Payments that will not be distributed shall be treated as Undeliverable Distributions as provided in section H below.

H.    Undeliverable or Unclaimed Distributions. If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheat, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.  Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a final decree closing the Chapter 11 Case.

I.    Time Bar to Cash Payments. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof.  Requests for reissuance of any check shall be in writing to the Reorganized Debtor by the Holder of the Allowed Claim to whom such check originally was issued.  Any

such written claim in respect of such a voided check must be received by the Reorganized Debtor on or before 60 days after the expiration of the 60 day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtor free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtor, the Estate, or the Reorganized Debtor.

J.      <u>Revocation, Withdrawal, or Non-Consummation</u>. The Prepetition Lender reserves the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Prepetition Lender's filing of a notice thereof, and to file subsequent chapter 11 plans. If the Prepetition Lender revokes or withdraws the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Litigation Claims or Claims by or against the Reorganized Debtor or any other Person or to prejudice in any manner the rights of the Prepetition Lender or any Person in any further proceedings involving the Reorganized Debtor.

K.      <u>Notices</u>. After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

<u>If to the Reorganized Debtor</u>:

> Insight Terminal Solutions, LLC
> **[Service Address]**
> Attn: Vikas Tandon

With a copy (which shall not constitute notice) to:

> Lowenstein Sandler LLP
> 1251 Avenue of the Americas
> New York, NY 10020
> Attn: Robert M. Hirsh, Esq. and Phillip Khezri, Esq.

<u>And</u>

> Frost Brown Todd LLC
> 400 W. Market Street
> Suite 3200
> Louisville, KY 40202
> Attn: Edward M. King, Esq.

<u>If to U.S. Trustee</u>:

> Office of the United States Trustee
> 601 West Broadway, Suite 512
> Louisville, KY 40202
> Attn: John R. Stonitsch, Esq.

-26-

L.      Entire Agreement. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

M.      Severability. If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtor's consent, and (c) nonseverable and mutually dependent.

N.      Exhibits. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon request to the Prepetition Lender's counsel, by contacting Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020.

O.      Conflicts. Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however, that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

P.      Pre-Confirmation Amendment. The Prepetition Lender may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

Q.      Post-Confirmation Amendments. After the entry of the Confirmation Order, the Prepetition Lender may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided (i) the Prepetition Lender obtains approval of the Bankruptcy Court for such modification, after notice and a hearing, and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under the Plan.  After the Confirmation Date and before the Effective Date of the Plan, the Prepetition Lender may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Prepetition Lender obtains Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the

Bankruptcy Code and the Bankruptcy Rules and a hearing; and (iii) the Plan Proponent complies
with section 1125 of the Bankruptcy Code with respect to the modified Plan.

[*SIGNATURE ON FOLLOWING PAGE*]

Dated: April 27, 2020

AUTUMN WIND LENDING, LLC

By: _____

Name: Vikas Tandon

Title:   Manager, Autumn Wind Lending, LLC

# **EXHIBIT A**

## **Claim Filing Procedures and Bar Date**

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

|  |  |
|---|---|
| In re:<br><br>INSIGHT TERMINAL SOLUTIONS, LLC et al.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-32231<br><br>(Jointly Administered)<br><br>Judge Joan A. Lloyd |

### CLAIM FILING PROCEDURES AND BAR DATE PURSUANT TO AUTUMN WIND LENDING, LLC'S CHAPTER 11 PLAN OF REORGANIZATION FOR THE BANKRUPTCY ESTATE OF DEBTOR INSIGHT TERMINAL SOLUTIONS, LLC PURSUANT TO BANKRUPTCY CODE SECTION 1121(c)(2)

1.    Except as otherwise provided herein, all Persons[2] and entities including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts, including, without limitation, Governmental Units, that assert a Claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtor which arose before the Confirmation Date, including Administrative Claims, shall submit a written proof of such Claim (each a "Proof of Claim") so that it is actually received by the Clerk of the Bankruptcy Court on or before 4:00 p.m., prevailing Eastern Time, thirty-five (35) days from the Confirmation Date (the "Claims Bar Date").[3]

2.    Any person or entity that holds a Rejection Damages Claim is required to file a proof of claim by the Rejection Bar Date, as established under the Plan.  The Reorganized Debtor or the

---

1 The Debtors in these chapter 11 cases are Insight Terminal Solutions, LLC (Case No. 19-32231) and Insight Terminal Holdings, LLC (Case No. 19-32232).  The Court has ordered the joint administration of these chapter 11 cases. The docket in this Case No. 19-32231 should be consulted for all matters affecting the above listed cases.

2 Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

3 Such date shall be fixed in the Notice of Claims Bar Date.

Prepetition Lender will provide notice of the Rejection Bar Date in the notice of the Effective Date, which shall be served on all non-Debtor parties to rejected Executory Contracts and Unexpired Leases.

3.   If the Reorganized Debtor amends or supplements the Debtor's Schedules, the Reorganized Debtors shall provide notice of any amendment or supplement to the Holders of Claims affected thereby. Any claimant holding a Claim affected by the amendment or supplement to the Schedules that does not agree with such amendment's or supplement's treatment of such claimant's Claim must submit a Proof of Claim on or before the later of (a) the Claims Bar Date, and (b) 4:00 p.m., prevailing Eastern Time, on the date that is 28 days after the date on which the Reorganized Debtor serves the amendment to the Schedules (any such date, a "Supplemental Bar Date"). In such instances, the Reorganized Debtor shall provide such parties with notice, in a form substantially similar to the Notice of Claims Bar Date (as defined herein), that clearly sets forth the Supplemental Bar Date by which such parties must submit a Proof of Claim.

4.   In accordance with Bankruptcy Rule 3003(c)(2) and the Plan, any Holder of a Claim that is not excepted from the requirements of the Claim Filing Procedures and Bar Date and fails to timely submit a Proof of Claim in the appropriate form shall be forever barred, estopped, and enjoined from (a) asserting such Claim against the Debtor in the Chapter 11 Case, and (b) participating in any distribution under the Plan.

5.   As appropriate, the Prepetition Lender or Reorganized Debtor shall mail one or more proof of claim form (Official Bankruptcy Form B 410) to each Holder of a Claim listed in the Schedules and any parties that filed a notice of appearance in the Chapter 11 Case.

6. The following procedures for the submission of Proofs of Claim asserting Claims against the Debtor in this Chapter 11 Case shall apply:

    a. Each Proof of Claim must:

        i. be written in English;

        ii. be legible;

        iii. include a Claim amount denominated in United States dollars;

        iv. conform substantially with Official Form 410;

        v. contain an original signature of the claimant or by an authorized agent or legal representative of the claimant; and

        vi. include supporting documentation unless voluminous, in which case a summary must be attached or an explanation provided as to why documentation is not available.

    b. In addition to the requirements set forth in (a) above, any Proof of Claim asserting a claim pursuant to section 503(b)(9) of the Bankruptcy Code must also:

        i. include the value of the goods delivered to and received by the Debtors in the 20 days prior to the Petition Date;

        ii. attach any documentation identifying the particular invoices for which the 503(b)(9) Claim is being asserted;

        iii. attach documentation of any reclamation demand made to any Debtor under section 546(c) of the Bankruptcy Code (if applicable); and

        iv. set forth whether any portion of the 503(b)(9) Claim was satisfied by payments made by the Debtors pursuant to any order of the Court authorizing the Debtors to pay prepetition Claims.

    c.   Each Proof of Claim, including supporting documentation, must be submitted so that the Clerk of the Bankruptcy Court actually receives the Proof of Claim on or before the Claims Bar Date by first-class U.S. Mail, overnight mail, other hand-delivery system, or-in person, which Proof of Claim must include an original signature, at the following address: U. S. Bankruptcy Court, 601 West Broadway, Suite 450, Louisville, KY  40202.

7.   The following persons or entities need not submit a Proof of Claim in these chapter 11 cases on or prior to the Claims Bar Date:

    a.   The Prepetition Lender;

    b.   any person or entity that has already submitted a Proof of Claim against the Debtor with the Clerk of the Bankruptcy Court in a form substantially similar to Official Bankruptcy Form No. 410;

    c.   any person or entity whose Claim is listed on the Schedules filed by the Debtors, provided that (i) the Claim is not scheduled as "disputed," "contingent," or "unliquidated," **and is not a Holder of a Claim listed in Paragraph 8 herein**, (ii) the claimant agrees with the amount, nature, and priority of the Claim as set forth in the Schedules, and (iii) the claimant does not dispute that the Claim is an obligation of the Debtor against which the Claim is listed on the Schedules;

    d.   any Holder of a Claim previously allowed by order of the Bankrutpcy Court;

    e.   any Holder of a Claim that has already been paid in full;

    f.   any Person holding a Claim solely against Insight Terminal Holdings, LLC; and

    g.   any holder of a Claim arising on or after the Confirmation Date.

8.  Notwithstanding anything in Paragraph 7 above, the following Holders of Claims included in the Schedules **MUST** file a Proof of Claim on or before the Claims Bar Date or such Claim listed in the Schedules shall be disallowed and expunged without further order of the Bankruptcy Court:

    a.  Halas Energy LLC;

    b.  Morgan, Lewis & Bockius LLP;

    c.  Oasis Aviation LLC; and

    d.  QuickBooks Payroll Services.

9.  Nothing herein shall prejudice the right of the Reorganized Debtor, on behalf of the Debtor, or any other party in interest to dispute or assert offsets or defenses to any Claim reflected in the Schedules.

10. The notice substantially in the form annexed hereto as Exhibit A-1 (the "Notice of Claims Bar Date") is approved and shall be deemed adequate and sufficient if served by first-class mail by the Prepetition Lender at least five (5) days after the Confirmation Date, on:

    a.  the United States Trustee for Region 8;

    b.  any Person that has requested notice of the proceedings in the Chapter 11 Case pursuant to Bankruptcy Rule 2002;

    c.  any Person that has submitted a Proof of Claim against the Debtor;

    d.  all creditors listed in the Debtor's Schedules for which the Debtor has an addresses;

    e.  all parties to Executory Contracts and Unexpired Leases;

    f.  all parties to litigation with the Debtor and their counsel (if known);

    g.  the United States Attorney's Office for the Western District of Kentucky;

-6-

    h.   the Internal Revenue Service; and

    i.   the office of the Kentucky Attorney General.

11. Pursuant to Bankruptcy Rules 2002(f) and 2002(l), the Prepetition Lender shall publish a form of the Notice of Bar Date, in a substantially similar form, on one occasion in The Courier Journal and San Francisco Bee, or similar publications, within ten (10) business days from the Confirmation Date, which publication is hereby approved and shall be deemed good, adequate, and sufficient publication notice of the Claims Bar Date.

12. Any Person who desires to rely on the Schedules will have the responsibility for determining that such Person's Claim is accurately listed in the Schedules.

13. Notice of the Claims Bar Date as provided herein shall be deemed good and sufficient notice as to all known and unknown parties.

14. The Debtor, Reorganized Debtor, and Prepetition Lender are authorized to take all reasonable actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

15. The Bankruptcy Court shall retain jurisdiction with respect to all matters relating to the interpretation these procedures.

| Summary report: Litera® Change-Pro for Word 10.7.0.7 Document comparison done on 6/15/2020 2:27:31 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ROS-IWODMSCLSTR/DBIWOV2/206297153/6 | |
| **Modified DMS:** iw://ROS-IWODMSCLSTR/DBIWOV2/206297153/7 | |
| **Changes:** | |
| Add | 57 |
| Delete | 53 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 110 |