**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **INSIGHT TERMINAL SOLUTIONS, LLC, *et al*.[1]** | )    **CASE NO. 19-32231** |
| | ) |
| **Debtors** | )    **Jointly Administered** |
| | )    **Chapter 11 Cases** |
| _____ | ) |

**FIRST AMENDED DISCLOSURE STATEMENT FOR DEBTORS' CHAPTER 11 PLAN**
**OF REORGANIZATION PURSUANT TO BANKRTUPCY CODE SECTION 1121(a)**

**DISCLAIMER**

This disclosure statement ("**Disclosure Statement**") relates to the Debtors' Chapter 11 Plan of Reorganization (as may be amended or supplemented, the "**Plan**"). The Plan proposes to reorganize Insight Terminal Solutions, LLC ("**ITS**") and Insight Terminal Holdings, LLC ("**ITH**").

This Disclosure Statement is explanatory and contains a summary of the Plan and other relevant information concerning ITS and ITH (collectively, the "**Debtors**"). The information contained in this Disclosure Statement is included herein for purposes of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to determine how to vote on the Plan.

All Claim and Interest Holders[2] are advised to read this Disclosure Statement and the Plan before voting to accept or reject the Plan. The statements contained in this Disclosure Statement are made only as of the date hereof, and there can be no assurance that the statements contained herein will be correct at any time after the date hereof. Except as otherwise provided in the Plan or in accordance with applicable law, ITS is under no duty to update or supplement this Disclosure Statement.

As to contested matters, adversary proceedings, and other actions or threatened actions, this Disclosure Statement shall not constitute or be construed as an admission of any fact or liability, stipulation or waiver, but rather as a statement made in settlement negotiations in accordance with Rule 408 of the Federal Rules of Evidence and any

---

[1] The Debtors in these Chapter 11 cases are Insight Terminal Solutions, LLC (Case No. 19-32231) and Insight Terminal Holdings, LLC (Case No. 19-32232) (collectively, the "Debtors"), and the Court has entered an order in this case directing for the procedural consolidation and joint administration of the Chapter 11 cases. The docket in this Case No. 19-32231 should be consulted for all matters affecting the above listed cases.

[2] Capitalized terms not otherwise defined herein shall take the meaning ascribed to them in the Plan.

1

analogous state or foreign laws or rules. **This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding nor shall it be construed to be conclusive advice on the tax, securities, or other legal effects of the Plan as to Holders of Claims against, or equity interests in, the Debtors.**

**This Disclosure Statement has been prepared in accordance with Section 1125 of the United States Bankruptcy Code and Rule 3016(b) of the Federal Rules of Bankruptcy Procedure and not necessarily in accordance with federal or state securities laws or other non-bankruptcy law.**

## PART I.  PRELIMINARY STATEMENT

The Debtors are seeking approval of the Plan, a copy of which is attached hereto as **Exhibit A**. This Disclosure Statement is submitted by the Debtors in connection with the solicitation of acceptances of the Plan. All capitalized terms used in this Disclosure Statement and not otherwise defined have the meanings given to them in the Plan.

The confirmation of a plan, which is the vehicle for satisfying the rights of holders of claims against and equity interests in a debtor, is the overriding purpose of a Chapter 11 case. Although referred to as a plan of reorganization or liquidation, a plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of assets. In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors and stakeholders.

In regard to these Chapter 11 cases, the Plan provides for the restructuring of the Interests in and for the recapitalization of the Debtors that will enable the Reorganized Debtors to: **(i)** fulfill their ongoing business obligations; **(ii)** pay Priority Claims and General Unsecured Claims in full to the extent that such are Allowed Claims; **(iii)** assume the Sublease under terms and conditions that are acceptable to ITS and the sublandlord; and **(iv)** to emerge from Chapter 11.

**THE DEBTORS BELIEVE THAT THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS, AND ALL CREDITORS ENTITLED TO VOTE ARE URGED TO VOTE IN FAVOR OF THE PLAN.**

## PART II.  BACKGROUND AND SUMMARY

ITS is working to develop a brownfield, multi-commodity dry bulk export terminal (the "Terminal") at the West Gateway property in Oakland, California (the "Project"). The Project area (the "Project Site") encompasses approximately nineteen (19) acres of property that is adjacent to the Port of Oakland, and provides berth and channel depth of approximately fifty (50) feet along with rail access from Union Pacific and BNSF main lines.  Once ITS obtains Project financing, ITS will move forward with constructing a state-of-the-art Terminal at the Project Site.  The commercial activity at the Terminal will eventually bring hundreds of jobs to the city of Oakland, in addition to generating significant revenues for the city.

### A.       Debtors' Prepetition Interests

One hundred percent (100%) of the membership interests in ITH are owned by Sharon Siegel ("Sharon").  As discussed below, AWL has been issued warrants by ITH.  Further, Bay Bridge Exports, LLC ("Bay Bridge") has the right to convert a portion of an amount owed to Bay Bridge by John Siegel, Jr. ("John Siegel") into one-half (1/2) of the membership interests in ITH owned by Sharon.

ITH is the sole member of ITS.

### B.       The Sublease

On September, 24, 2018, ITS entered into that certain Army Base Gateway Redevelopment Project Sub-Ground Lease for West Gateway with OBOT (the "Sublease"). Under the Sublease, OBOT (as the sublessor under the West Gateway Master Development Agreement) subleases the Project Site to ITS (as the subtenant under the West Gateway Master Development Agreement).  The Sublease is ITS's sole material asset.

During the weeks prior to the Petition Date, OBOT communicated certain claims to ITS for alleged unsatisfied obligations owed by ITS to OBOT under the Sublease.  ITS disputed OBOT's claims and noted defenses to the claims.  Despite discussions between the parties concerning their differences, a resolution was not reached.  Consequently, on July 8, 2019, OBOT sent a Notice of Unmatured Event of Default Letter to ITS (the "Sublease Default Notice").  In the Sublease Default Notice, OBOT alleged that ITS defaulted under the Sublease due to its alleged failure to pay certain Additional Rent allegedly owed to OBOT; failure to maintain the leased Project Site; and failure to pay city transfer taxes.  One of OBOT's remedies available under the Sublease was to terminate the Sublease if ITS failed to cure the alleged monetary default within ten (10) days after the Sublease Default Notice.

Due to the inability to settle or resolve the Sublease Default Notice claims, ITS commenced these Chapter 11 Cases, in part, in order to preserve and protect the Sublease.  The Plan is contingent on the ability of ITS to assume the Sublease.

### C.       Prepetition Borrowing

On September 24, 2018, ITS (as borrower) and ITH (as guarantor) entered into a Loan and Security Agreement (collectively, with all documents related thereto, the "AWL Documents") with Autumn Wind Lending, LLC (the "AWL").  Under the AWL Documents, AWL extended a term loan facility to ITS in a principal amount up to $6,800,000.00 (the "Initial Term Loan"). The Initial Term Loan was evidenced pursuant to that certain Promissory Note dated September 24, 2018 in the amount of $6,800,000.00.  The original maturity date of the Initial Term Loan was December 31, 2019.  Most of the Initial Term Loan was paid to OBOT pursuant to the requirements of the Sublease.

As part of the Initial Term Loan, Debtors granted AWL a first priority lien upon and security interest in Debtors' tangible and intangible property and proceeds thereof.  However, the

preceding first priority lien is unperfected as to the Sublease due to AWL's failure to prepare and file a leasehold mortgage for the Sublease.[3]  So, AWL has no perfected lien or interest in the Sublease.  AWL's sole perfected security interest rests with a pledge of the membership interests of ITH.

In connection with the Initial Term Loan, ITS also executed and delivered that certain Unsecured Promissory Note dated September 24, 2018 in the principal amount of $3,400,000.00 (the "Initial Unsecured Note").  The original maturity date of the Initial Unsecured Note was December 31, 2019.  Also, ITH entered into that certain Warrant (the "Initial Warrant") with AWL that, upon exercising by AWL, provided for the issuance of Class B Units to AWL equivalent to an aggregate of ten percent (10%) of the economic interests in ITH.

On December 19, 2018, the Debtors and AWL agreed to that certain First Amendment to Loan and Security Agreement (the "First Amendment").  Pursuant to the First Amendment, AWL agreed to make an additional term loan to ITS in the amount of $300,000.00 (the "Additional Term Loan" and, together with the Initial Term Loan, the "Term Loan").  The Term Loan was evidenced by that certain Amended and Restated Promissory Note dated December 19, 2018 and executed by ITS in favor of AWL in the amount of $7,100,000.00 (the "A&R Term Note").  In connection with the extension of the Additional Term Loan, ITS executed and delivered that certain Amended and Restated Unsecured Promissory Note dated December 19, 2018 by which the Initial Unsecured Note was increased to $3,550,000.

On February 22, 2019, AWL and Debtors entered into that certain Waiver and Amendment Agreement (the "Waiver and Amendment") related to a dispute regarding allegations of default by AWL against Debtors.  Debtors disputed the allegations and contend that the Waiver and Amendment was inappropriately obtained.  As a result of the Waiver and Amendment, among other things, the maturity date of the Term Loan was accelerated to June 30 2019, and AWL and ITH entered into that certain Warrant (the "Additional Warrant", and together with the Initial Warrant, the "Warrants") with AWL that, upon exercising by AWL, provided for the issuance of Class B Units to AWL equivalent to an aggregate of five percent (5%) of the economic interests in ITH.  The Warrants are disputed under the Plan and will not be an Allowed Interest.

On July 1, 2019, the Term Loan matured, and the Debtors failed to repay the Term Loan, which resulted in a monetary default on the Term Loan by the Debtors.

## PART III.  THE CHAPTER 11 CASE

### A.      Chapter 11 Filing

On July 17, 2019 (the "Petition Date"), the Debtors filed with the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court"), their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* as

---

[3] Autumn Wind purports to take a security interest in the Sublease under Article 9 of the Uniform Commercial Code ("UCC") by the filing of certain UCC financing statements in Delaware.  However, liens on real estate leases such as the Sublease cannot be perfected under Article 9 and, instead, must be created and perfected by the filing of a leasehold mortgage in the filing office where the real property is located.  *See generally* UCC § 9-109.

amended (the "Bankruptcy Code"), which commenced these Chapter 11 Cases. Throughout these Chapter 11 Cases, the Debtors have operated their business and managed their property as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no committee of unsecured creditors or other committee has been appointed or designated. On July 29, 2019, Debtors filed a motion to jointly and procedurally consolidate these Chapter 11 Cases, which was granted by the Bankruptcy Court on July 31, 2019.

**B.**      **Employment of Middleton Reutlinger as counsel for the Debtors**

On August 16, 2019, the Debtors filed their Application to Employ the law firm of Middleton Reutlinger ("MR") as Attorney for the Debtors [Docket No. 58], which the Court initially approved by Order dated October 10, 2019 [Docket No. 109]. The Debtors subsequently filed a motion to amend and set aside the Order approving the application to employ MR (the "Motion to Amend") on October 11, 2019 [Docket No. 112] to address issues raised by the United States Trustee's office relating to MR's employment. Middleton Reutlinger's employment was ultimately approved by the Court pursuant to and in accordance with an Order granting the Motion to Amend entered by the Court on October 18, 2019 [Docket No. 114].

**C.**      **Motion to Dismiss**

AWL filed a motion seeking to dismiss the Chapter 11 Case on July 25, 2019 [Docket No. 13], which the Debtors opposed. After a contested evidentiary hearing, the Bankruptcy Court entered a Memorandum and Order on September 23, 2019 denying the motion to dismiss [Docket No. 98].

**D.**      **Debtors-in-Possession Financing** –

The Debtors have obtained post-petition financing through a series of motions and orders that have been filed and entered by the Court in accordance with Section 364 of the Bankruptcy Code. These motions and orders are outlined and summarized below:

> **i.**    Emergency Motion of Debtors to Borrow $75,000.00 [Docket No. 28] filed on July 29, 2019:
>
>> **a.**    Interim Order entered on August 1, 2019 [Docket no. 46] authorizing the Debtor to borrow up to $100,000 from Cecelia Financial Management, LLC ("Cecelia");
>>
>> **b.**    Debtors' Motion for Entry of Amended Interim Bridge DIP Order [Docket no. 48] filed on August 2, 2019; and
>>
>> **c.**    Amended Interim Order entered on August 6, 2019 [Docket No. 53].

      **ii.**    Motion of Debtors to borrow up to $1,000,000 from Bay Bridge [Docket No. 73] filed on August 28, 2019:

            **a.**    On August 29, 2019, the Bankruptcy Court instructed the parties to file a revised Order by September 12, 2019;

            **b.**    Interim Order entered on September 5, 2019 [Docket No. 83] authorizing the Debtors to borrow up to $211,500 from Bay Bridge;

            **c.**    Order entered on September 25, 2019 [Docket No. 100] denying Debtors' motion to borrow up to $1,000,000; and

            **d.**    Agreed Order entered on September 30, 2019 [Docket No. 102] increasing the borrowing threshold from Bay Bridge from $211,500 to $238,700; and

            **e.**    Agreed Order entered on October 4, 2019 [Docket No. 108] increasing the borrowing threshold from Bay Bridge from $238,700 to $280,900.

      **iii.**    Emergency Motion of Debtors to increase the borrowing threshold from $280,900 to $1,125,000 [Docket No. 125] filed on December 3, 2019:

            **a.**    Interim Order entered on December 11, 2019 [Docket No. 139] increasing the borrowing threshold from Bay Bridge from $280,900 to $706,040; and

            **b.**    Order entered on January 31, 2020 [Docket No. 167] increasing the borrowing threshold from Bay Bridge from $706,040 to $1,125,000.

      **iv.**    Motion of Debtors for Entry of Agreed Order [Docket No. 173] filed on February 14, 2020, allowing the Debtors to borrow an additional $440,000 by increasing the borrowing threshold from Bay Bridge from $1,125,000 to $1,345,000 and from Cecelia from $100,000 to $320,000.  On February 19, 2020, the Court entered an Interim Agreed Order [Docket No. 175] approving the increased borrowing.

      **E.**        **The Deadline for the Assumption or Rejection of the Sublease**

      Section 365(d)(4)(A) of the Bankruptcy Code provides in relevant part that an unexpired lease of nonresidential real property under which the debtor is the lessee (including the Sublease) shall be deemed rejected if the trustee does not assume or reject the unexpired lease by the earlier of the date that is one hundred twenty (120) days after the date of the order for relief; or the date of the entry of an order confirming a plan.  However, Section 365(d)(4)(A) of the Bankruptcy Code further provides in relevant part that the court may extend the period determined under Section 365(d)(4)(A) (the "Lease Deadline") prior to the expiration of the one hundred twenty

(120) day period, for ninety (90) days on the motion of the debtor or lessor for cause.  In addition, Section 365(d)(4)(B) provides in relevant part that if the court grants an initial extension of the Lease Deadline, the court may grant a subsequent extension only upon prior written consent of the lessor in each instance.

In order to preserve their rights and the value of the Sublease, the Debtors have obtained multiple extensions of the Lease Deadline through a series of filings, which are summarized below:

> **i.**   Motion of Debtors to enter Agreed Order [Docket No. 119] filed on November 13, 2019 extending the time to assume or reject the Sublease to February 12, 2020.  The Court entered an Order granting the Motion on December 17, 2019 [Docket No. 151].
>
> **ii.**   Motion of Debtors [Docket No. 170] filed on February 11, 2020, to extend the time to assume or reject the Sublease to April 13, 2020.  OBOT consented to the extension [Docket No. 169] on February 10, 2020, and the Court entered an Order granting the Motion on February 12, 2020 [Docket No. 171].
>
> **iii.**   Motion of Debtors [Docket No. 190] filed on April 13, 2020, to extend the time to assume or reject the Sublease to June 15, 2020.  OBOT consented to the extension [Docket No. 189] on April 13, 2020, and the Court entered an Order granting the Motion on April 14, 2020 [Docket No. 191].
>
> **iv.**   OBOT consented to the further extension [Docket No. 201] of the time to assume or reject the Sublease to August 15, 2020.

## F.  Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptance Thereof

On November 13, 2019, the Debtors filed their (First) Motion for Entry of Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptance Thereof (the "First Exclusivity Motion") [Docket No. 118].  On November 14, 2019, AWL filed its objection to the Exclusivity Motion [Docket No. 120].  On January 22, 2020, the Court conducted an evidentiary hearing on the First Exclusivity Motion and Autumn Wind's objection thereto, and took the matter under submission.  On March 25, 2020, the Court entered an Order Granting the First Exclusivity Motion [Docket. No. 182].

On March 19, 2020, Debtors filed a Second Motion to Extend the Filing Exclusivity Period and the Soliciting Exclusivity Period [Docket No. 179].  On April 23, 2020, the Bankruptcy Court entered an order denying the Second Motion [Docket No. 194], which allowed AWL to file its own competing plan of reorganization.  (*See infra* at Part XI B).

## G.  The Debtors' Original Disclosure Statement and the Court's Disclosure Statement Hearing

On May 26, 2020, the Debtors' filed a Disclosure Statement [Docket No. 216] (the "Original Disclosure Statement") for their Chapter 11 Plan of Reorganization [Docket No. 217] (the "Original Plan") that was filed concurrently therewith.   On June 9, 2020, the Court conducted a hearing on the Original Disclosure Statement, at which time the Honorable Joan A. Lloyd on behalf of the Court directed the Debtors to amend their Disclosure Statement and Plan to reflect certain material amendments discussed during the hearing. (*See* Docket No. 236.) The Debtors prepared and filed this Disclosure Statement in response to Judge Lloyd's order to the Debtors.  This Disclosure Statement replaces and supersedes the Original Disclosure Statement, and the Plan replaces and supersedes and replaces the Original Plan.

## PART IV - DESCRIPTION OF THE PLAN

### A.        Treatment of Unclassified Claims Under the Plan

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims are not classified and are not entitled to vote on the Plan. The Plan provides for the treatment of such Claims as follows:

      **i.**    **Administrative Claims**. Except to the extent that a Holder of an Allowed Administrative Claim and the Reorganized Debtors agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of such Allowed Administrative Claim, be paid the full unpaid amount of such Allowed Administrative Claim in Cash on, or as soon thereafter as is reasonably practicable, **(a)** the Effective Date or, if payment is not then due, **(b)** on the due date of such Allowed Administrative Claim, or **(c)** within five (5) Business Days from such Administrative Claim being Allowed; *provided*, *however*, that Administrative Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due. Any taxes that arose post-petition shall be paid in the ordinary course of business.

      **ii.**    **Professional Fee Claims**. Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) five (5) Business Days after the Professional Fee Claim is Allowed; and (b) another date on which the Holder of the Professional Fee Claim and the Reorganized Debtors agree. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on the Reorganized Debtors its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

      **iii.**    **Priority Tax Claims**. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax

Claim, each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive the treatment set forth in Section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Reorganized Debtors and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

iv.  **DIP Financing Claims**. On the Effective Date, each DIP Lender shall be paid Cash in an amount equal to its DIP Financing Claim.

B.  **Classification and Treatment of Classified Claims and Interests**. The Plan provides that classified Claims and Interests are divided into numbered Classes as follows:

| Class | Treatment | Entitled To Vote |
|---|---|---|
| Class 1 – Priority Claims | Unimpaired | No (Deemed to Accept) |
| Class 2 – Secured Claims | Unimpaired | No (Deemed to Accept) |
| Class 3 – AWL General Unsecured Claim(s) | Unimpaired | No (Deemed to Accept) |
| Class 4 – General Unsecured Claims | Unimpaired | No (Deemed to Accept) |
| Class 5 – Interests | Unimpaired | No (Deemed to Accept) |

i.  **Class 1: Priority Claims**

a.  **Treatment**: Except to the extent that a Holder of a Priority Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, each Holder of such Priority Claim shall be paid in full.

b.  **Impairment**: Holders of Priority Claims are unimpaired, and all Holders of Priority Claims are conclusively deemed to have accepted the Plan.

ii.  **Class 2: Secured Claims.**

a.  **Treatment**:  Except to the extent that a Holder of a Secured Claim agrees to less favorable treatment, each Holder of an Allowed Secured Claim shall, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, receive payment in Cash in the full amount of an Allowed Secured Claim, which payment shall occur on the later of (i) thirty (30) days after the Effective Date, (ii) thirty (30) days after such Claim is Allowed, and (iii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Secured Claim.

**b.      Impairment**: Holders of Secured Claims are unimpaired, and all Holders of Secured Claims are conclusively deemed to have accepted the Plan.

### iii.     Class 3: AWL General Unsecured Claim(s)

**a.      Treatment**: Except to the extent that AWL agrees to less favorable treatment, AWL, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim(s), shall receive payment in Cash in the full amount of any AWL General Unsecured Claim, which payment shall occur on the later of (i) thirty (30) days after the Effective Date, (ii) thirty (30) days after such Claim is Allowed, and (iii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed AWL General Unsecured Claim.

**b.      Impairment**: AWL as a Holder of the AWL General Unsecured Claim(s) is unimpaired, and is conclusively deemed to have accepted the Plan.

### iv.     Class 4: General Unsecured Claims

**a.      Treatment**: Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall, in exchange for full and final satisfaction, settlement, release, and discharge of such Claim, receive payment in Cash in the full amount of an Allowed General Unsecured Claim, which payment shall occur on the later of (i) thirty (30) days after the Effective Date, (ii) thirty (30) days after such Claim is Allowed, and (iii) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim.

Cecelia has agreed that ITS shall assume the Allowed Cecelia Unsecured Claim and payment due thereon shall be deferred until after the Effective Date and after all the distributions under the Plan have been made or the Reorganized Debtors have reserved sufficient funds for any distributions not yet made. For avoidance of doubt, such treatment does not apply to Cecelia's DIP Financing Claim.  The Allowed Cecelia Unsecured Claim shall be subordinate in right of payment to any financing provided to the Reorganized Debtors on the Effective Date. Cecelia shall also subordinate the Allowed Cecelia Unsecured Claim in right of payment to the extent necessary or required for the Reorganized Debtors to obtain future financing.

**b.** **Impairment**: Holders of General Unsecured Claims are unimpaired, and all Holders of General Unsecured Claims are conclusively deemed to have accepted the Plan.

**v.** **Class 5 : Interests**

**a.** **Treatment**: Except as otherwise provided for in the Plan (*see* subsection iv. b, *infra*), Holders of Allowed Interests shall retain those Allowed Interests.  For avoidance of doubt, Sharon and ITH shall retain their Membership Interests, and Bay Bridge shall retain all of its rights arising under or in connection with the Convertible Note.

**b.** **Impairment**: Interest Holders are unimpaired.  The Holders are conclusively presumed to have accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

AWL's Interests are limited to the Warrants and are Disputed.  The Debtors will object to and seek the disallowance of the Warrants pursuant to sections 105 and 502(a), and other applicable provisions of the Bankruptcy Code, because they are unenforceable against Debtors due to the failure of a condition precedent to the exercise of the Warrants.  The Debtors further reserve the right to seek to reject the Warrants in accordance with section 365 of the Bankruptcy Code.

**C.** **Conclusive Presumption of Acceptance or Rejection, and Voting**. Pursuant to Section 1126 of the Bankruptcy Code, all Classes of Claims and Interests are conclusively presumed to accept the Plan without voting or solicitation. Nonetheless, the Debtors will send ballots to and solicit votes from Class 3 and Class 4 Holders of Claims in favor of the Plan in the event the Court later determines that such Classes are impaired and are entitled to vote. Therefore, all parties are encouraged to carefully review the Plan, attached as Exhibit A, and complete and submit a ballot for the Plan to the Debtors. All descriptions of the Plan set forth in this Disclosure Statement are subject to the terms and conditions of the Plan.

**D.** **Claims Bar Date**. Holders of Claims incurred prior to the Confirmation Date shall file a proof of claim prior to the Claims Bar Date, as determined by the Bankruptcy Court under Federal Rule of Bankruptcy Procedure 3003 and in accordance with any Claim procedures approved by the Court and properly served to Holders of Claims. A Holder of a Claim that fails to file a proof of claim prior to the Claims Bar Date and in accordance with any Claim procedures approved by the Court shall have its Claim disallowed and forever barred.

**E.** **Post-Confirmation Administrative Claims Bar Date**.  All requests for payment of administrative costs and expenses incurred on or after the Confirmation Date through and including the Effective Date pursuant to Section 507(a)(1) or 503(b) of the Bankruptcy Code shall be served on the Reorganized Debtors and filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date.  Any such Claim that is not served and filed within this time shall be forever barred.

**F.**     **Implementation of the Plan**

    **i.**     **Plan Funding**.  On July 1, 2016, at the request of the Utah Counties of Carbon, Sevier, Emery, and Sanpete (the "Four Counties"), the State of Utah passed S.B. 246 and on April 1, 2019, the State of Utah passed S.B. 248, which together set aside funding of approximately Fifty-Three Million Dollars ($53,000,000.00) to finance the acquisition and construction of the Project (the "Utah Funding").  The Utah Funding remains available to assist ITS in constructing the Terminal.

        On the Effective Date, at the request of the Four Counties, the State of Utah through its Utah Permanent Community Impact Fund Board ("CIB") will have agreed to contribute funds (the "Utah Funds") to the Reorganized Debtors in an amount sufficient to fund the Plan. The Utah Funds shall be used solely to pay all Allowed Claims in accordance with the Plan and after payment of all Allowed Claims, may be retained by the Reorganized Debtors as working capital to further the Project. The Reorganized Debtors shall be authorized to execute, deliver, and enter into and perform under the Plan without any further corporate or limited liability company action and without further action by the Holders of Claims.

        Information concerning the timing and process for the Four Counties to obtain the Utah Funds is contained in the following documents: (a) certain letters from the Commissioners of the Four Counties (the "Utah Letters"); (b) the Affidavit of Jae Potter (the "Potter Affidavit"); (c) Affidavit of Garth "Tooter" Ogden (the "Ogden Affidavit"); and (d) Affidavit of Casey Hopes (the "Hopes Affidavit"), current Chairman of the Carbon County Commission. (The Potter Affidavit, the Ogden Affidavit, and the Hopes Affidavit are collectively referred to herein as the "Affidavits").  The Utah Letters and Affidavits explain, in relevant part, that (x) the Four Counties intend to file an application (the "Application") to access the Utah Funds for consideration by the CIB; the Application is expected to be reviewed at the August 2020 CIB meeting; and access by the Four Counties to the Utah Funds should occur in September or October 2020.  The Utah Letters and the Affidavits are attached hereto and incorporated herein by reference as Exhibits A-D

    **ii.**     **Distributions**.  The Reorganized Debtors shall make all distributions in accordance with the terms of the Plan.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Holders of Allowed Claims entitled to distributions under the Plan shall provide any information requested by the Reorganized Debtors necessary for making such distribution.

    **iii.**     **ITS Reorganization**.  On the Effective Date, all Allowed Interests in the Debtors shall be retained by the Holders of such Interests.  For avoidance of doubt, Sharon and ITH shall retain their Membership Interests, and Bay Bridge shall retain all of

its rights arising under or in connection with the Convertible Note. The Interests of Sharon and Bay Bridge in ITH and the Interests of ITH in ITS are deemed Allowed. As discussed above, the Interests of AWL in ITH are Disputed. The Interest Holders will enter into new operating agreements for each of the Reorganized Debtors. John Siegel will continue serving as the Manager of each of the Reorganized Debtors.

iv.    **Effectuating Documents**. On and after the Effective Date, the Reorganized Debtors shall be authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, or to otherwise comply with applicable law, in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

v.    **Effectiveness of Instruments and Agreements**. On the Effective Date, all instruments, agreements, and documents issued, entered into, delivered, or filed under the Plan are effective, binding, and enforceable in accordance with their respective terms.

vi.    **Cancellation of Existing Loan Agreements**. On the Effective Date, all agreements, instruments, and other documents evidencing any Claim (other than the Cecelia Unsecured Claim) including the Prepetition Loan and Security Agreement, and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the underlying obligations of the Debtors shall be deemed fully satisfied, released, and discharged.

vii.    **No Corporate Action Required**. As of the Effective Date: **(a)** the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements related to or contemplated by the Plan; and **(b)** the other matters provided for under, or in furtherance of, the Plan involving corporate action required of the Debtors or the Reorganized Debtors, as applicable, are deemed to have occurred, are effective as provided in the Plan, and are deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by Reorganized Debtors, or Reorganized Debtors' officers, shareholders, members, or managers.

viii.    **Operation Pending Effective Date**. Until the Effective Date, the Debtors will continue to operate subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

ix.    **Employee Matters**. Upon the Effective Date, the Reorganized Debtors intend to continue all material employee compensation and benefit plans, and employment, severance, retirement, indemnification, and other similar employee-related agreement or arrangements in place as of the Effective Date and to offer

employment to the existing employees, although no person shall be guaranteed employment.

## PART V. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    **Assumption and Rejection of Executory Contracts and Unexpired Leases**.

   i.   Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed rejected pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: **(a)** is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; **(b)** was assumed or rejected previously by the Debtor; **(c)** expired or terminated pursuant to its own terms before the Effective Date; **(d)** is the subject of a motion to assume pending on the Confirmation Date; or **(e)** is the subject of a motion pending on the Confirmation Date to assume an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

   ii.  Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, as of the Effective Date, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

   iii. All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtors, and be enforceable by the Reorganized Debtors in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts or conditions such assumption, assignment or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

   iv.  Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify or supplement the Schedule of Assumed Executory

Contracts and Unexpired Leases at any time before the Confirmation Date, including without limitation the right to remove any Executory Contract or Unexpired Lease therefrom. The Debtors further reserve the right to remove any Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the Effective Date upon the consent of the applicable non-Debtor counterparty.

**B.** **Procedures Related to Rejection of Executory Contracts or Unexpired Leases.**

The Debtors will file the Schedule of Assumed Executory Contracts and Unexpired Leases with the Plan Supplement on or before the date that is fourteen (14) days before the Confirmation Hearing, which shall notify all other non-Debtor counterparties not scheduled that all other Executory Contracts and Unexpired Leases shall be rejected pursuant to the Confirmation Order. Each non-Debtor counterparty to an Executory Contract or Unexpired Lease to be rejected pursuant to the Plan shall have until 4:00 p.m. (Eastern time) on the date that is seven (7) days before the Confirmation Hearing to file a written objection to the rejection of its Executory Contract or Unexpired Lease and serve it in a manner to be actually received by each of the following: **(i)** counsel to the Debtors: Middleton Reutlinger, P.S.C., 401 S. Fourth Street, Suite 2600, Louisville, KY 40202, Attn: Andrew Stosberg (astosberg@middletonlaw.com) and Thomas Ice, Jr. (tice@middletonlaw.com); and **(ii)** the United States Trustee, 601 West Broadway, Suite 512, Louisville, KY 40202, Attn: John R. Stonitsch (ustpregion08.lo.ecf@usdoj.gov). Any such objections that cannot be consensually resolved by the Debtors and the objecting non-Debtor counterparty shall be considered by the Bankruptcy Court at the Confirmation Hearing or such other date requested by the Debtors.

    **i.** **Schedule of Assumed Executory Contracts and Unexpired Leases**. Executory Contracts and Unexpired Leases set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed assumed as of the Effective Date.

    **ii.** **Abandonment of Personal Property**. Any fixtures, furniture, advertising displays, other office and store equipment or any other personal property left by the Debtors on the premises related to Unexpired Leases rejected pursuant to the Plan shall be deemed abandoned as of the Rejection Date pursuant to Section 554 of the Bankruptcy Code. Entry of the Confirmation Order shall constitute authorization by the Bankruptcy Court of such abandonment and, as of the Effective Date, the non-Debtor counterparties to such rejected Unexpired Leases may dispose of any such personal property in their sole and absolute discretion without notice or liability to the Debtors, the Reorganized Debtors, or third parties.

    **iii.** **Claim Procedures for Rejection Damages Claim Holders**. Each non-Debtor counterparty to an Executory Contract or Unexpired Lease not identified on the Schedule of Assumed Executory Contracts and Unexpired Leases must file a proof of claim asserting any Rejection Damages Claim on or before the Rejection Bar Date. **Any Person with a Rejection Damages Claim is required to file a**

**proof of Claim asserting a Rejection Damages Claim and failure to do so on or before the Rejection Bar Date shall result in any Rejection Damages Claim being disallowed in accordance with Section 502 of the Bankruptcy Code and forever barred, estopped, and enjoined from assertion and any such Rejection Damages Claim shall not be enforceable against the Reorganized Debtors, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding a proof of Claim to the contrary.**

C.       <u>**Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**</u>.

    **i.**       The proposed Cure amount for all Executory Contracts not identified on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be $0.00 unless otherwise indicated on such schedule. The Debtors shall serve the Schedule of Assumed Executory Contracts and Unexpired Leases on all scheduled non-Debtor counterparties to an Executory Contract or Unexpired Lease. **For the avoidance of doubt, if an Executory Contract between a Debtor and any non-Debtor counterparty is not listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, then the Reorganized Debtors intends to reject such Executory Contract**.

    **ii.**       Any counterparty to an Executory Contract or Unexpired Lease that objects to **(a)** the assumption of such Executory Contract or Unexpired Lease, **(b)** the proposed Cure amount, **(c)** the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or **(d)** any other matter pertaining to assumption, shall file a written objection thereto and serve it in a manner to be actually received by each of the following by no later than 4:00 p.m. (Eastern time) on the date that is seven (7) days prior to the Confirmation Hearing: **(i)** counsel to the Debtors: Middleton Reutlinger, P.S.C., 401 S. Fourth Street, Suite 2600, Louisville, KY 40202, Attn: Andrew Stosberg (astosberg@middletonlaw.com) and Thomas Ice, Jr. (tice@middletonlaw.com); and **(ii)** the United States Trustee, 601 West Broadway, Suite 512, Louisville, KY 40202, Attn: John R. Stonitsch (ustpregion08.lo.ecf@usdoj.gov). Any timely filed responses or objections will be heard by the Bankruptcy Court at the Confirmation Hearing or on such other date agreed to by the parties or ordered by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to any of the foregoing matters related to assumption will be deemed to have assented and will be deemed to have forever released and waived any such objection. Payment of any Cure amount shall be made following the entry of a Final Order or orders resolving any dispute related thereto and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

### D. Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors or the Reorganized Debtors during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### E. Contracts and Leases Entered into After the Petition Date.

Contracts and leases entered into after the Petition Date by the Debtors, and any Executory Contracts and Unexpired Leases assumed by the Debtor, may be performed by the Reorganized Debtors in the ordinary course of business and in accordance with the terms thereof.

## PART VI.  EFFECT OF THE PLAN ON CLAIMS, INTERESTS AND LITIGATION CLAIMS

**A.  Binding Effect**. Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind every Holder of a Claim against or Interest in any Debtor and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is impaired under the Plan and whether such Holder has accepted the Plan.

**B.  No Substantive Consolidation for Plan Purposes**. The Debtors' Estates will not be substantively consolidated under this Plan.

**C.  Books and Records**. The Reorganized Debtors shall retain the Debtors' books and records. The Reorganized Debtors may dispose of any of the Debtors' books and records, subject to the expiration of any statutory period requiring that such records be maintained, without authorization from the Bankruptcy Court.

**D.  Amended Organizational Documents and Corporate Governance**. The Debtors' certificates or articles of organization, operating agreements and other applicable formation documents shall be amended and restated in the Amended Organizational Documents. On the Effective Date, the Amended Organization Documents shall be deemed authorized and approved in all respects.

**E.**        **Member and Manager for the Reorganized Debtors**. On the Effective Date, John Siegel will be the sole Manager of ITS and ITH.  John Siegel previously served in this role for the Debtors.

**F.**        **Vesting of Assets**. Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates (including Litigation Claims, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall vest in the Reorganized Debtors, free and clear of all Claims, Liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtors may operate its business and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Litigation Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

**G.**        **Discharge**. Except as provided in the Plan or the Confirmation Order, the rights granted under the Plan and the treatment of Claims and Interests under the Plan shall be in full and final satisfaction, discharge, and release of all Claims and Interests. Except as provided in the Plan or the Confirmation Order, confirmation of the Plan discharges the Reorganized Debtors from all Claims or other debts that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), whether or not: **(i)** a proof of claim based on such debt is filed or deemed filed under Bankruptcy Code Section 501; **(ii)** a Claim based on such debt is Allowed under Bankruptcy Code Section 502; or **(iii)** the holder of a Claim based on such debt has accepted the Plan. Without limiting the foregoing, the discharge granted under the Plan is granted to the fullest extent allowed under Bankruptcy Code Sections 1141(a), 1141(b), 1141(c), and 1141(d)(1).

**H.**        **Term of Injunctions or Stays**. Unless otherwise provided in the Plan or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**I.**        **Releases by the Debtors**. **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce this Plan and the Plan Supplement, for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Plan, and except as otherwise provided in this Plan or in the Confirmation Order, the Debtors, the Reorganized Debtors, and any person seeking to exercise the rights of the Debtors' Estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to unconditionally forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities in connection with or related to the Debtors, the Reorganization Cases, or the Plan (other than the rights of the Debtors and the Reorganized Debtors to enforce the Plan and the contracts, instruments, indentures, and other agreements or documents delivered or assumed thereunder), whether liquidated**

16

or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Estates, the Chapter 11 Cases, or the Plan, and that may be asserted by or on behalf of the Debtors, the Estates or the Reorganized Debtors against the Released Parties.

       **J.**        **Releases by Holders of Claims and Interests**. **As of and subject to the occurrence of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Supplement, for good and valuable consideration, the adequacy of which is hereby confirmed, including, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, (i) each holder of a Claim that votes in favor of the Plan (or is deemed to accept the Plan), and (ii) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim or Interest that does not vote to accept the Plan or is deemed to reject the Plan, as applicable, shall be deemed to unconditionally, forever release, waive and discharge each of the Released Parties, from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever in connection with or related to the Debtors, the Estates, the Chapter 11 Cases, or the Plan whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Reorganized Debtors, the Chapter 11 Cases or the Plan.**

      **K.**        **Injunction**.

          **i.**      **Generally. Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims or Interests are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, the Reorganized Debtors, or the Estates, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to the Reorganized Debtors or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Reorganized Debtors, the Estates or their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, the Reorganized Debtors or the Estates or any property of any**

such transferee or successor; (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Reorganized Debtors, the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, the Reorganized Debtors or the Estates or any property of any such transferee or successor; (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, that nothing contained herein shall preclude such Persons who have held, hold, or may hold Claims against the Reorganized Debtors or the Estates from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of the Plan, the Confirmation Order, or any other agreement or instrument entered into or effectuated in connection with the consummation of the Plan.

ii. By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim will be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in Article VII of the Plan.

iii. <u>Limited Scope</u>. Nothing in the Plan: (i) extinguishes, prohibits, or otherwise limits the right of the Estates or Reorganized Debtors to assert and prevail on any Litigation Claim; (ii) enjoins or otherwise precludes any party-in-interest from enforcing the terms of the Plan and the Confirmation Order.

L. <u>Exculpation</u>. Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, cause of action, loss, remedy, or liability for any claim (including, but not limited to, any claim for breach of any fiduciary duty or any similar duty) in connection with or arising out of the administration of the Chapter 11 Case; the Disclosure Statement, the Plan, the Schedule of Assumed Executory Contracts and Unexpired Leases, or any agreement, transaction, or document related to any of the foregoing, or the solicitation of votes for, or confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing; except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties and each of their respective affiliates, agents, directors, officers, managers, employees, advisors, and attorneys have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

**rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

**M.** **Retention, Reservation and Prosecution of Litigation Claims**. Except as otherwise provided in the Plan, all Litigation Claims are retained and reserved for the Reorganized Debtors, which is designated as the Estates' representative under Bankruptcy Code §1123(b)(3)(B) for purposes of the Litigation Claims. The Reorganized Debtors shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Litigation Claims, and does so in its capacity as a representative of the Estates in accordance with Bankruptcy Code § 1123(b)(3)(B). The Reorganized Debtors shall have sole discretion to determine in its business judgment which Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, right, or Litigation Claim, the Reorganized Debtors shall be entitled to the extensions provided under Section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Litigation Claims shall survive confirmation and the commencement or prosecution of Litigation Claims shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

## PART VII.  CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE

**A.** **Conditions to Effectiveness**. The Effective Date does not occur unless and until:

**i.** The Confirmation Date occurs and the Confirmation Order, in a form satisfactory to the Debtors, in their sole discretion, has become a Final Order, which shall, among other things, provide that the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to enter into any transactions contemplated thereunder;

**ii.** No request for revocation of the Confirmation Order under Bankruptcy Code Section 1144 is pending;

**iii.** All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective;

**iv.** ITS or the Reorganized Debtors have the ability to assume the Sublease;

**v.** Claims against the Debtors do not exceed Twenty Million Dollars ($20,000,000); and

**vi.** The State of Utah contributes the Utah Funds.

**B.** **Waiver of Conditions**. The Debtors may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

**C.**         **Effect of Non-Occurrence of the Effective Date**. If the Effective Date does not occur on or before 120 days of the Confirmation Order becoming a Final Order, the Plan shall be null and void and nothing contained in the Plan shall: **(i)** constitute a waiver or release of any Claims against the Debtors; or **(ii)** constitute an admission, acknowledgement, offer or undertaking by the Debtors.

## PART VIII. MISCELLAENOUS PROVISIONS OF THE PLAN

**A.**         **Retention of Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain nonexclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

    **i.**    to hear and determine pending motions for **(a)** the assumption or rejection or **(b)** the assumption and assignment of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure required to be paid;

    **ii.**    to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Case or the Plan, proceedings to adjudicate the allowance of Disputed Claims and Interests, and all controversies and issues arising from or relating to any of the foregoing;

    **iii.**    to ensure that distributions to holders of Allowed Claims and Interests are accomplished as provided in the Plan;

    **iv.**    to allow, disallow, determine, liquidate, classify, reclassify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance, priority or classification of Claims or Interests;

    **v.**    to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

    **vi.**    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

    **vii.**    to modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument release or other agreements or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order; or

remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

viii.    to hear and determine all applications for compensation and reimbursement of Professional Claims under the Plan or under Sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

ix.    to determine requests for the payment of Claims entitled to priority under Section 507(a) of the Bankruptcy Code, including compensation of and reimbursement of expenses of parties entitled thereto;

x.    to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

xi.    to issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

xii.    to enter a final decree closing the Chapter 11 Case;

xiii.    to enforce all orders previously entered by the Bankruptcy Court; and

xiv.    unless otherwise specifically provided herein or in a prior order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims, Interests and Litigation Claims. Notwithstanding the foregoing, the Debtors and any party may agree in writing that the jurisdiction of the Bankruptcy Court shall not be exclusive, but concurrent with other courts of competent jurisdiction.

B.    **Governing Law**. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of Delaware shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of Delaware.

C.    **Exemption from Transfer Taxes**. Under Bankruptcy Code Section 1146(a): **(i)** the issuance, distribution, transfer, and exchange of assets or property of the Estates; **(ii)** the execution, assignment, modification, or recording of any lease or sublease; and **(iii)** the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection

of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**D.**       **Post-Effective Date Fees; Final Decree**. Notwithstanding anything to the contrary contained in the Plan, all fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter. The Reorganized Debtors is responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which Reorganized Debtors must seek as soon as feasible after distributions under the Plan have commenced. Notice of application for a final decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice

**E.**       **Undeliverable or Unclaimed Distributions**. If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtors are notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such undelivered distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the later of **(i)** the Effective Date and **(ii)** the date of the initial attempted distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheat, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred. Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a final decree closing the Chapter 11 Case.

**F.**       **Time Bar to Cash Payments**. Checks issued by the Reorganized Debtors in respect of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. Requests for reissuance of any check shall be in writing to the Reorganized Debtors by the Holder of the Allowed Claim to whom such check originally was issued. Any such written claim in respect of such a voided check must be received by the Reorganized Debtors on or before sixty (60) days after the expiration of the sixty (60) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtors, the Estates, or the Reorganized Debtors.

**G.**       **Revocation, Withdrawal, or Non-Consummation**.    The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtors' filing of a notice thereof, and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Litigation

Claims or Claims by or against the Reorganized Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Reorganized Debtors.

**H.**      **Notices**.   After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

If to the Reorganized Debtors:

> Insight Terminal Solutions, LLC
> 6100 Dutchmans Lane, 9th floor,
> Louisville, Kentucky 40205
> Attention:  Manager

With a copy (which shall not constitute notice) to:

> Middleton Reutlinger, P.S.C.
> 401 S. Fourth Street, Suite 2600
> Louisville, Kentucky 40202
> Attention:  Andrew Stosberg, Esq., and Thomas Ice, Jr., Esq.

If to U.S. Trustee

> Office of the United States Trustee
> 601 West Broadway, Suite 512
> Louisville, KY 40202
> Attn: John R. Stonitsch, Esq.

**I.**      **Entire Agreement**. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**J.**      **Severability**.  If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is **(i)** valid and enforceable pursuant to its terms; **(ii)** integral to the Plan and may not be deleted or modified without the Reorganized Debtors' consent; and **(iii)** nonseverable and mutually dependent.

**K.**        **Exhibits**. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon request to the Debtors' counsel, by contacting Middleton Reutlinger, P.S.C., 401 S. Fourth Street, Suite 2600, Louisville, Kentucky 40202.

**L.**        **Pre-Confirmation Amendment**. The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in Section 1125.

**M.**        **Post-Confirmation Amendments**. After the entry of the Confirmation Order, the Debtors may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided **(i)** the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and **(ii)** such modification shall not materially and adversely affect the interests, rights, or treatment, of any Class under the Plan. After the Confirmation Date and before the Effective Date of the Plan, the Debtors may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims, provided: **(x)** the modified Plan meets applicable Bankruptcy Code requirements; **(y)** the Debtors obtain Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; and **(z)** the Debtors comply with Section 1125 of the Bankruptcy Code with respect to the modified Plan.

## PART IX.  STATUTORY REQUIREMENTS FOR PLAN CONFIRMATION

The following is a brief summary of the confirmation process. Holders of Claims and Interests are encouraged to review the relevant provisions of the Bankruptcy Code and to consult with their own advisors:

**A.**        **Confirmation Hearing**. Section 1128(a) of the Bankruptcy Code provides that the Bankruptcy Court, after notice, may conduct the Confirmation Hearing to consider Confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

**B.**        **Confirmation Standards**

Among the requirements for Confirmation are that the Plan **(i)** is accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class; **(ii)** is feasible; and **(iii)** is in the "best interests" of Holders of Claims and Interests that are Impaired under the Plan.

The following requirements must be satisfied pursuant to Section 1129(a) of the Bankruptcy Code before a bankruptcy court may confirm a plan of reorganization. The Debtors

believe that the Plan fully complies with all the applicable requirements of Section 1129 of the Bankruptcy Code set forth below:

    **i.**    The Plan complies with the applicable provisions of the Bankruptcy Code.

    **ii.**    The Debtors have complied with the applicable provisions of the Bankruptcy Code.

    **iii.**    The Plan has been proposed in good faith and not by any means forbidden by law.

    **iv.**    Any payment made or to be made by the Debtors or by a Person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Case, in connection with the Plan, and incident to the Chapter 11 Case is subject to the approval of the Bankruptcy Court as reasonable.

    **v.**    The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after Confirmation, as a director, officer, or voting trustee of the Reorganized Debtors, any Affiliate of the Debtor reorganized under the Plan, or any successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy.

    **vi.**    The Debtors have disclosed the identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of any compensation for such insider.

    **vii.**    With respect to each Holder within an Impaired Class of Claims or Interests, as applicable, each such Holder **(a)** has accepted the Plan or **(b)** will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

    **viii.**    With respect to each Class of Claims or Interests, such Class **(a)** has accepted the Plan or **(b)** is Unimpaired under the Plan (subject to the "cram-down" provisions discussed below).

    **ix.**    The Plan provides for treatment of Claims, as applicable, in accordance with the provisions of Section 507(a) of the Bankruptcy Code.

    **x.**    If a Class of Claims is Impaired under the Plan, at least one (1) Class of Claims that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider.

    **xi.**    Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors, or any successor to

the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

xii.     All fees payable under 28 U.S.C. § 1930 have been paid or the Plan provides for the payment of all such fees on the Effective Date.

xiii.    The Plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to Confirmation, for the duration of the period the applicable Debtor has obligated itself to provide such benefits.

## C.      Solicitation

Pursuant to the Bankruptcy Code, only classes of claims against or interests of a debtor that are "impaired" (within the meaning of Section 1124 of the Bankruptcy Code) under the terms and provisions of a plan of reorganization or liquidation are entitled to vote to accept or reject a plan. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturity.  Classes of claims and interests that are not impaired are not entitled to vote on a plan and, under Section 1126(f) of the Bankruptcy Code, and are conclusively presumed to have accepted a plan. Similarly, classes of claims and interests that will receive no property under the Plan on account of such claims or interests are deemed to reject the plan under Section 1126(g) of the Bankruptcy Code, and are not entitled to vote on the Plan.  Finally impaired classes of claims or interests that will receive a distribution of property or cash under the Plan on account of such claims or interests are entitled to vote, and will receive a solicitation packet with ballot instruction for voting.

PART IV.B of this Disclosure Statement provides a summary of the classification and treatment of Claims under the Plan.

## D.      Feasibility of the Plan.

Section 1129(a)(11) of the Bankruptcy Code requires that a plan proponent demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtors will provide financial wherewithal demonstrating the ability to make the necessary financial contribution to satisfy the treatment set forth for all Allowed Claims in the Plan. The Debtors believe that the Plan will successfully repay all Holders of Allowed Claims, and make a subsequent liquidation or reorganization unnecessary.

## PART X.  PLAN RELATED RISK FACTORS

A.        Generally. The following provides a summary of important considerations and risk factors associated with the Plan. However, it is not exhaustive. Holders of Claims against, and Interests in, the Debtors should read and carefully consider the factors set forth below.

Holders of Claims or Interests should consider carefully the following factors in addition to the other information contained in this Disclosure Statement.

**B.        Certain Bankruptcy Considerations**. The Debtors cannot ensure that the Bankruptcy Court will confirm the Plan. The Bankruptcy Court could still decline to confirm the Plan if it finds any of the statutory requirements for Confirmation have not been met. (See Part XI B, *supra*). Although the Debtors believe that the Plan will meet all applicable tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

**C.        Claims Estimations**. There can be no assurance that the Debtors' estimated amounts of Allowed Claims are correct. The actual amounts of Allowed Claims may differ in some respect from the estimates. The estimated amounts are subject to certain risks, uncertainties, and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual amount of an Allowed of Claims may vary from those estimated by the Debtors and could prevent the Plan from becoming effective.

**D.        Conditions Precedent**.    Debtors may be unable to satisfy the conditions precedent to approval of the Plan.

**E.        Parties in Interest May Object to Debtors' Classification of Claims.**    Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code, and as augmented or clarified by controlling precedent, but parties may object to such a classification.

## PART XI.  ALTERNATIVES TO THE PLAN

**A.        Chapter 7 Liquidation**.    Notwithstanding acceptance of the Plan by the requisite number of creditors of any Class, the Bankruptcy Court must still independently determine that the Plan provides each member of each impaired Class of Claims and Equity Interests a recovery that has a value at least equal to the value of the distribution that each such Claim or Interest holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.  If no plan is confirmed, the Debtors' Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code. In a Chapter 7 case, a trustee or trustees would be appointed to liquidate the assets of the Estates.  It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against or Interests in the Debtors.

**B.        AWL Plan of Reorganization**.    On April 27, 2020, AWL filed a Disclosure Statement [Docket No. 196] (the "Original AWL Disclosure Statement") and Plan of Reorganization [Docket No. 195] (the "AWL Plan") with the Bankruptcy Court.  On June 15, 2020, AWL filed an amended Disclosure Statement [Docket No. 245], which replaced and superseded the Original AWL Disclosure Statement  The AWL Plan could be confirmed by the Court instead of the Plan proposed by the Debtors.

**C.**        **Alternative Plans**.    In addition to AWL, another party-in-interest in these Chapter 11 Cases may propose a plan.

## PART XII.  RECOMMENDATION AND CONCLUSION

It is the position of the Debtors that the Plan is substantially preferable to a liquidation under Chapter 7 of the Bankruptcy Code. Conversion of the Chapter 11 Cases to cases under Chapter 7 would result in: **(i)** substantial delays in the distribution of any proceeds (if any) available under such alternative; **(ii)** increased uncertainty as to whether payments would be made to unsecured creditors; and **(iii)** substantially increased administrative costs.

It is the belief of the Debtors that the Plan fairly and equitably provides for the treatment of all Claims against the Debtors.

(SIGNATURE PAGE TO FOLLOW)

IN WITNESS WHEREOF, the Debtors have submitted this Disclosure Statement this 19th day of June 2020.

INSIGHT TERMINAL SOLUTIONS, LLC

By: /s/John J. Siegel, Jr.
        John J. Siegel, Jr.
        Manager

INSIGHT TERMINAL HOLDINGS, LLC

By: /s/John J. Siegel, Jr.
        John J. Siegel, Jr.
        Manager

/s/Andrew D. Stosberg
Andrew D. Stosberg
Thomas W. Ice, Jr.
Middleton Reutlinger, P.S.C.
401 S. Fourth Street, Suite 2600
Louisville, Kentucky 40202
Telephone:  (502) 584-1135
Email:  astosberg@middletonlaw.com
Email:  tice@middletonlaw.com
ATTORNEYS FOR DEBTORS