# EXHIBIT 1

| JONES DAY | HUNTON & WILLIAMS LLP |
|---|---|
| North Point | Riverfront Plaza, East Tower |
| 901 Lakeside Avenue | 951 East Byrd Street |
| Cleveland, Ohio 44114 | Richmond, Virginia 23219 |
| Telephone: (216) 586-3939 | Telephone: (804) 788-8200 |
| Facsimile: (216) 579-0212 | Facsimile: (804) 788-8218 |
| David G. Heiman (admitted *pro hac vice*) | Tyler P. Brown (VSB No. 28072) |
| Carl E. Black (admitted *pro hac vice*) | J.R. Smith (VSB No. 41913) |
| Thomas A. Wilson (admitted *pro hac vice*) | Henry P. (Toby) Long, III (VSB No. 75134) |
|  | Justin F. Paget (VSB No. 77949) |

*Attorneys for Debtors and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Alpha Natural Resources, Inc., et al., | Case No. 15-33896 (KRH) |
| Debtors. | (Jointly Administered) |

## NOTICE OF FILING OF SETTLEMENT
## AGREEMENT WITH ENVIRONMENTAL GROUPS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. <u>Bankruptcy Filing</u>. On August 3, 2015, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") each filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Bankruptcy Court</u>").

2. <u>Plan and Disclosure Statement</u>. On May 25, 2016, the Debtors filed the *Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession* (as it may be modified, supplemented or amended, the "<u>Plan</u>"), the solicitation version of which is attached as <u>Exhibit A</u> to the *Notice of Filing of Solicitation Versions of (A) Second Amended Joint Plan of Reorganization and (B) Related Second Amended Disclosure Statement* (Docket No. 2594).

3. <u>The Environmental Groups Settlement</u>. The Debtors have entered into a settlement with Sierra Club, West Virginia Highlands Conservancy and Ohio Valley Environmental Coalition (collectively, the "<u>Environmental Groups</u>") that resolves the Environmental Groups' objections to confirmation of the Plan (the "<u>Environmental Groups Settlement</u>"). The Environmental Groups Settlement provides that it is incorporated into the Plan and shall be subject to approval by the Bankruptcy Court in connection with confirmation therof.

NAI-1501386307v1



    4.  Attached hereto as <u>Annex I</u> is a copy of the Environmental Groups Settlement.

    5.  The Debtors intend to seek approval of the Environmental Groups Settlement, in accordance with its terms, at the hearing on confirmation of the Plan.

Dated: June 30, 2016
   Richmond, Virginia

Respectfully submitted,

/s/  Henry P. (Toby) Long, III
Tyler P. Brown (VSB No. 28072)
J.R. Smith (VSB No. 41913)
Henry P. (Toby) Long, III (VSB No. 75134)
Justin F. Paget (VSB No. 77949)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia  23219
Telephone:  (804) 788-8200
Facsimile:  (804) 788-8218

David G. Heiman (admitted *pro hac vice*)
Carl E. Black (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

# **ANNEX I**

EXECUTION VERSION

# SETTLEMENT AGREEMENT WITH ENVIRONMENTAL GROUPS

**THIS AGREEMENT** (as it may be amended or modified from time to time, this "Settlement Agreement") is made and entered into as of June 24, 2016, by and among: (a) Alpha Natural Resources, Inc. ("ANR"), on behalf of itself and its debtor-affiliates, including, without limitation, the Signatory Debtors (collectively with ANR, the "Debtors" or, when used in reference to such Debtors on or after the Effective Date (as defined herein), the "Reorganized Debtors"); and (b) Contura Energy, Inc. (the "Purchaser"); and (c) Sierra Club, West Virginia Highlands Conservancy and Ohio Valley Environmental Coalition (collectively, the "Groups" and collectively with the Debtors and the Purchaser, the "Parties").

**WHEREAS**, on August 3, 2015 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"), which cases are being jointly administered under case number 15-33896 (KRH) (collectively, the "Chapter 11 Cases");

**WHEREAS**, on May 25, 2016, the Debtors filed the *Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession* in the Chapter 11 Cases (as it may be modified, supplemented or amended, the "Plan"), the solicitation version of which is attached as Exhibit A to the *Notice of Filing of Solicitation Versions of (A) Second Amended Joint Plan of Reorganization and (B) Related Second Amended Disclosure Statement* (Docket No. 2594);

**WHEREAS**, on March 20, 2012, the Groups filed Civil Action No. 3:12-cv-0785 (the "West Virginia Action") in the United States District Court for the Southern District of West Virginia (the "West Virginia Court") alleging violations by Debtors Elk Run Coal Company and Alex Energy, Inc. (together, the "Signatory Debtors") of West Virginia's narrative water quality standards for biological stream protections as incorporated into Debtors' West Virginia National Pollution Discharge Elimination System ("WV/NPDES") Permit Nos. WV1003968, WV1013441, WV1015362, WV1012401, and WV1019601 (collectively, but excluding WV1019601, the "West Virginia Permits");

**WHEREAS**, on February 2, 2015, the Groups and the Signatory Debtors entered into a Consent Decree resolving the West Virginia Action as to the West Virginia Permits and dismissing with prejudice the Groups' claims as to WV/NPDES Permit No. WV1019601;

**WHEREAS**, the Consent Decree required the Debtors to bring outfalls associated with the West Virginia Permits into compliance by August 1, 2019, by either (i) employing efforts to achieve a Genus Level Index of Most Probable Stream Status ("GLIMPSS") score of (a) 53 in the months of March through May and (b) 55 in the months of June through October in a receiving stream for an outfall or (ii) constructing and operating a system designed to achieve a conductivity measurement at or below 300 uS/cm at or immediately downstream of an outfall;

**WHEREAS**, the Consent Decree requires the Debtors to comply with the following milestones by the following deadlines (the "Compliance Schedule"):

| MILESTONE | DEADLINE |
|---|---|
| Complete Design Basis background development, including flow measurement and water quality analysis | February 1, 2016 |
| Complete evaluation of compliance alternatives and select Proposed Treatment Strategy | May 1, 2016 |
| Complete pilot testing, if required by the Proposed Treatment Strategy, and begin preliminary engineering | August 1, 2016 |
| Complete preliminary engineering of Proposed Treatment Strategy | May 1, 2017 |
| Complete detailed engineering of Proposed Treatment Strategy | October 1, 2017 |
| Begin construction of Proposed Treatment Strategy | February 1, 2018 |
| Final Compliance Date | August 1, 2019 |

**WHEREAS**, pursuant to the Consent Decree, the Consent Decree, including the attached appendices, may be modified only by a subsequent written agreement signed by all parties thereto.  Where the modification constitutes a material change to the Consent Decree, the modification shall only be effective upon approval by the West Virginia Court.

**WHEREAS**, the Groups assert, and the Debtors agree, that the Debtors' obligations under the Consent Decree are ongoing, are not subject to discharge, will continue in full force and effect after the confirmation and effectiveness of the Plan, and the West Virginia Court retains and will retain jurisdiction to oversee implementation of the Consent Decree;

**WHEREAS**, nothing in this Settlement Agreement modifies any of the requirements of the separate Consolidated Litigation Consent Decree resolving Civil Action Nos. 2:12-cv-3412; 2:13-cv-6870; 5:12-cv-1464; and 2:13-cv-20571, and the Parties agree that the Debtors' obligations under that Consolidated Litigation Consent Decree are ongoing, are not subject to discharge, will continue in full force and effect after the confirmation and effectiveness of the Plan, and the West Virginia Court retains and will retain jurisdiction to oversee implementation of that Consolidated Litigation Consent Decree;

**WHEREAS**, the Debtors are in general compliance with, and are continuing to perform their ongoing obligations in accordance with, the Consent Decree;

**WHEREAS**, the Debtors entered into a transaction (the "Sale Transaction") pursuant to that certain Asset Purchase Agreement with the Purchaser and attached as Exhibit I.A.250 to the Plan providing for (a) the sale of certain of the Debtors' assets to the Purchaser, (b) the assumption of certain of the Debtors' liabilities by the Purchaser;

**WHEREAS**, a non-profit entity called "Appalachian Headwaters" has been formed to further environmental reclamation practices in the Appalachia region;

Case 15-33896-KRH   Doc 2887   Filed 06/30/16   Entered 06/30/16 21:23:46   Desc Main Document   Page 6 of 14

**WHEREAS**, Debtor Rostraver Energy Company ("Rostraver") owns those certain coal reserves located in the Freeport Seam of Coal (sometimes referred to as the Upper Freeport Coal Seam) and limited Pittsburg 8 Seam (mostly mined) located in Westmoreland and Fayette Counties, Pennsylvania (together with all associated rights, the "Rostraver Reserve"), and approximately 2,400 acres of surface property overlying the Rostraver Reserve in Westmoreland County, Pennsylvania (the "Rostraver Land");

**WHEREAS**, Debtor Paynter Branch Mining, Inc. ("Paynter Branch") currently holds mining permit number S-4001-06 (the "Paynter Branch Permit"), which permit relates to an approximately 507-acre surface mine in the State of West Virginia where mining has not commenced;

**WHEREAS**, the Parties desire to enter into this Settlement Agreement to resolve the Groups' objections to the Plan and to provide for the modification of the Plan and of the Consent Decree;

**WHEREAS**, the terms of this Settlement Agreement are incorporated into the Plan, and the Parties intend that this Settlement Agreement shall be subject to approval by the Bankruptcy Court in connection with confirmation of the Plan;

**NOW THEREFORE**, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the Parties hereto agree as follows:

1. **Modification of the Consent Decree.**

    (a) On the Effective Date (as such term is defined in the Plan), the Groups and the Signatory Debtors will jointly file a motion (the "Modification Motion") requesting that the West Virginia Court enter a modification to the Consent Decree substantially in the form attached hereto as Exhibit A (the "Amended Consent Decree") to extend all deadlines in the Compliance Schedule by three years.

    (b) The Groups and the Debtors or the Reorganized Debtors, as applicable, agree to cooperate and work in good faith with each other and to take all actions reasonably necessary to obtain the West Virginia Court's entry of the Amended Consent Decree as promptly as practicable.

2. **Modification of Plan.**  The Debtors shall modify the Plan to incorporate the terms of this Settlement Agreement as fully set forth herein and the order confirming the Plan shall contain a provision expressly approving the Settlement Agreement.

3. **Withdrawal of Plan Objections.**  Within two business days of the date that the final Party executes this Settlement Agreement, the Groups shall withdraw any objection they have filed to confirmation of the Plan and approval of the Sale Transaction.  The Groups shall terminate the discovery process and shall not oppose confirmation of the Plan or approval of the Sale Transaction in proceedings before the Bankruptcy Court.

4. **Payments to Appalachian Headwaters.**  The Debtors and the Reorganized Debtors, as applicable, will make a total of $5.5 million in payments on behalf of the Signatory

Debtors to Appalachian Headwaters pursuant to the following schedule:

 (a) $1.3 million upon the later of (i) two business days after the Effective Date or (ii) the filing of the Modification Motion, which amount the Groups and Appalachian Headwaters shall have no obligation to refund, so long as they have cooperated and worked in good faith to obtain the Amended Consent Decree pursuant to Section 1(b) hereof, whether or not the West Virginia Court approves the Modification Motion and enters the Amended Consent Decree;

 (b) $1.0 million upon the West Virginia Court's entry of the Modified Consent Order <u>provided</u>, <u>however</u>, that the foregoing amount shall be paid into escrow for the benefit of Appalachian Headwaters upon the filing of the Modification Motion; and

 (c) $1.6 million on each of March 31, 2017 and March 31, 2018, conditioned upon the West Virginia Court having entered the Modified Consent Order.

 5. **Purchaser's Guarantee.**  The Purchaser agrees to guarantee the Reorganized Debtors' obligations to make the payments provided for in Section 4(c) hereof but otherwise shall have no obligations under this Settlement Agreement.

 6. **Donation of the Rostraver Reserve.**  The Reorganized Debtors shall cause Rostraver to donate the Rostraver Reserve to a non-profit to be designated by the Groups for the purpose of restricting any future mining of the coal seams associated with the Rostraver Reserve. The Groups shall designate the recipient of the Rostraver Reserve within one year following the Effective Date, and the Reorganized Debtors shall consummate the donation of the Rostraver Reserve to the Groups' designee within 60 days of such designation.  In the event that the Groups do not designate a non-profit to receive the Rostraver Reserve within one year following the Effective Date, the Reorganized Debtors and the Groups shall meet and confer to determine a mutually agreeable disposition of the Rostraver Reserve.

 7. **Sale of Rostraver Land.**  Within 45 days of the Effective Date, the Reorganized Debtors will begin the process of marketing the Rostraver Land and shall proceed as expeditiously as practicable with the sale of the Rostraver Land.  The Reorganized Debtors shall donate the proceeds from the sale of the Rostraver Land up to $2 million to Appalachian Headwaters, which amount shall be in addition to the amounts provided for pursuant to Section 3 hereof.  Any proceeds of the sale of the Rostraver Land in excess of $2 million shall be retained by the Reorganized Debtors.

 8. **Surrender of Paynter Branch Permit.**  Upon the Effective Date, Paynter Branch shall surrender the Paynter Branch Permit in accordance with applicable law.

 9. **Appalachian Headwaters' Use of Funds.**

 (a) Appalachian Headwaters shall use the funds paid to it pursuant to the Settlement Agreement for the following purposes:

  (i) To design the Pilot Projects (as defined below);

NAI-1501306373v7 -4-

(ii) To pay for those portions of the Pilot Projects relating to innovative reclamation techniques that the Reorganized Debtors otherwise would not undertake; and

(iii) To manage projects, seek additional funds for water and land reclamation and for environmental education.

(b) Appalachian Headwaters will, with the funds provided pursuant to this Settlement Agreement, give first priority to performing work at sites currently subject to mining permits held by, or mined land otherwise owned by, the Reorganized Debtors to the extent practicable (as reasonably determined by Appalachian Headwaters). The Parties anticipate that a significant majority of the funds to be used for the Pilot Projects shall be spent at Reorganized Debtor sites.

10. **Reclamation Pilot Projects.**

(a) The Reorganized Debtors, together with Appalachian Headwaters, shall use their reasonable best efforts to identify locations upon permits held by the Reorganized Debtors for the Groups and/or the Reorganized Debtors to test new or innovative reclamation and/or stream mitigation techniques developed by Appalachian Headwaters (collectively, the "Pilot Projects").

(i) The Debtors shall meet with Appalachian Headwaters within 30 days of the submission by Appalachian Headwaters of a list of potential Pilot Projects to discuss which Pilot Projects can be completed and to select appropriate locations for such Pilot Projects.

(ii) The Debtors understand that the ability to place a conservation easement upon the completion of a Pilot Project is an essential element of selecting a location for a Pilot Project. The Groups understand that the Reorganized Debtors may not have authority to commit to placing such conservation easements on leased properties and are unable to expend funds to purchase those rights. Appalachian Headwaters and the Debtors, on behalf of the Reorganized Debtors, will work together in selecting locations where the Reorganized Debtors already have the authority to place conservation easements and, if necessary, to work with third-party property owners to secure such rights; provided that, nothing herein shall require the Reorganized Debtors to expend money in placing these conservation easements other than typical filing fees, recording fees, administrative fees, and taxes. Unless waived by Appalachian Headwaters in its sole discretion, conservation easements shall be placed on land after the Pilot Projects are complete.

(b) The Reorganized Debtors, together with Appalachian Headwaters, will target a minimum of 250 acres of cumulative reclamation through the Pilot Projects and will work together to develop a budget for in-kind contributions and plan for each Pilot Project. The Parties anticipate that priority will be given to sites where there are only reclamation activities left to complete.

(c) The Reorganized Debtors will spend up to $375,000 per year in 2017, 2018 and 2019 through in-kind contributions, including costs associated with operator, equipment time, maintenance and fuel, to complete the Pilot Projects.

11. **Long-Term Reclamation Collaboration**

(a) The Reorganized Debtors and their affiliates and Appalachian Headwaters will negotiate an agreement-in-principle (the "Agreement-in -Principle") to explore further opportunities to cooperate on reclamation of additional properties held by the Reorganized Debtors.

(b) The Agreement-in-Principle shall set forth the terms and conditions by which the Reorganized Debtors and Appalachian Headwaters shall attempt to expand the innovative techniques that are proven by the Pilot Projects to be successful to additional sites and cost-sharing issues related to additional costs associated with these techniques.

(c) Assuming that appropriate sites can be identified, the Debtors agree that the Reorganized Debtors will provide at their cost machinery, maintenance and labor for future Appalachian Headwaters projects that take place on the Reorganized Debtors' property.

(d) Appalachian Headwaters and the Debtors will use commercially reasonable efforts to negotiate and enter into a definitive agreement regarding the scope of future collaboration on reclamation projects within 9 months of the Effective Date.

(e) The Parties shall not be responsible or liable for the effects of any actions or omissions of Appalachian Headwaters.

12. **Default**. Upon the occurrence of a default under this Settlement Agreement that continues for at least 30 days, any non-defaulting Party may pursue all available remedies under applicable law.

13. **Conditions to Effectiveness**.

(a) The following shall be conditions to the effectiveness of this Settlement Agreement:

    (i) This Settlement Agreement shall have been approved by the Bankruptcy Court;

    (ii) The Plan, as it may be amended consistent with the terms of this Settlement Agreement, shall be confirmed; and

(iii) The Effective Date shall have occurred.

(b) The rights of all Parties hereto shall be reserved in the event that any of the conditions to effectiveness set forth in subsection (a) hereof does not occur. In such event, nothing contained herein or in any draft hereof shall constitute an admission of liability or lack thereof by any of the Parties hereto, or shall be admissible as evidence in any court of law or other legal proceeding for any purpose, other than for the purposes of obtaining approval of or enforcing the Agreement.

14. **Covenants, Cooperation and Good Faith Efforts.** The Groups and the Debtors or the Reorganized Debtors, as applicable, agree to cooperate and work in good faith with each other to effectuate the provisions of this Settlement Agreement.

15. **Third Party Beneficiaries.** The Parties acknowledge and agree that nothing in this Settlement Agreement is intended to benefit or create any right or cause of action in, or on behalf of, any person other than the Parties hereto and Appalachian Headwaters (and their affiliated persons, entities, successors, and assigns who are intended to be beneficiaries of the releases and settlements set forth herein).

16. **Successors and Assigns.** The provisions of this Settlement Agreement shall be binding on the Parties and their successors and assigns, including any trustee appointed under the Bankruptcy Code and shall inure to the benefit of the Parties and their successors and assigns.

17. **Entire Agreement.** This Settlement Agreement, together with all documents and other agreements referenced herein, constitutes the entire agreement and understanding among the Parties with respect to the subject matter hereof, and there are no representations, understandings, or agreements relative hereto which are not fully expressed herein or therein.

18. **Governing Law.** This Settlement Agreement shall be governed by and construed under the laws of the State of West Virginia without regard for the conflicts of laws provisions thereof.

19. **Authority and Validity**. Each Party otherwise represents, warrants and acknowledges, as of the Effective Date and, in the case of the Debtors, subject to approval by the Bankruptcy Court, that: (a) it has all the requisite authority (i) to execute and deliver this Settlement Agreement and the other documents and instruments contemplated hereby, to which it is contemplated to be a party, (ii) to perform its obligations under this Settlement Agreement and the other documents and instruments contemplated hereby to which it is contemplated to be a party and (iii) to consummate the transactions contemplated herein and therein; (b) such Party's execution and delivery of, and performance under, this Settlement Agreement and the other documents and instruments contemplated hereby to which it is contemplated to be a party and the consummation of the transactions contemplated herein and therein have been duly authorized by all necessary action, and no other action or proceeding is necessary to authorize and approve this Settlement Agreement or the other documents and instruments contemplated hereby to which it is contemplated to be a party or any of the transactions contemplated herein or therein; (c) this Settlement Agreement has been duly executed and delivered by such Party and constitutes a legal, valid and binding agreement by it, enforceable against it in accordance with

the terms of this Settlement Agreement; and (d) the execution, delivery and performance by such Party (when such performance is due) of this Settlement Agreement does not and shall not (i) violate any provision of law, rule or regulation applicable to it or (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it is a party.

20. **No Reliance.** Each Party represents and warrants that in entering into this Settlement Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Settlement Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

21. **Modification or Amendment.** This Settlement Agreement may be modified or amended only by written agreement executed by each of the Parties.

22. **Further Assurances.** From and after the Effective Date, each of the Parties agrees to use their respective commercially reasonable efforts to execute or cause to be executed and deliver or cause to be delivered all such agreements, instruments and documents and take or cause to be taken all such further actions as may reasonably be necessary from time to time to carry out the intent and purpose of this Settlement Agreement and to consummate the transactions contemplated hereby and thereby.

23. **Construction.** This Settlement Agreement has been drafted through a cooperative effort of all Parties, and none of the Parties shall be considered the drafter of this Settlement Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Settlement Agreement were negotiated at arms'-length, and this Settlement Agreement was prepared and executed without fraud, duress, undue influence or coercion of any kind exerted by any of the Parties upon the other. In the event of any inconsistency between the terms of this Settlement Agreement and the Plan, the terms of this Settlement Agreement shall govern.

24. **Headings.** Titles and headings in this Settlement Agreement are inserted for convenience of reference only and are not intended to affect the interpretation or construction of the Settlement Agreement.

25. **Execution in Counterpart.** This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Settlement Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces and will be binding upon such party.

26. **Severability.** If any provision of this Settlement Agreement is determined to be prohibited or unenforceable, then such provision shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the date set forth above.

ALPHA NATURAL RESOURCES, INC., on behalf of itself and its debtor-affiliates

SIERRA CLUB

By: Mark M. Manno
Its: Executive Vice President – General Counsel & Chief Procurement Officer

By:
Its:

CONTURA ENERGY, INC.

WEST VIRGINIA HIGHLANDS CONSERVANCY

By:
Its:

By:
Its:

OHIO VALLEY ENVIRONMENTAL COALITION

By:
Its:

-9-

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the date set forth above.

ALPHA NATURAL RESOURCES, INC., on behalf of itself and its debtor-affiliates

By: _____
Its: _____

SIERRA CLUB

By: _____
Its: _____

CONTURA ENERGY, INC.

By: *John DeGrook*
Its: *President and Secretary*

WEST VIRGINIA HIGHLANDS CONSERVANCY

By: _____
Its: _____

OHIO VALLEY ENVIRONMENTAL COALITION

By: _____
Its: _____

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the date set forth above.

| | |
|---|---|
| ALPHA NATURAL RESOURCES, INC., on behalf of itself and its debtor-affiliates | SIERRA CLUB |

_____    _____

By:
Its:

By: Peter M. Morgan
Its: Staff Attorney

CONTURA ENERGY, INC.          WEST VIRGINIA HIGHLANDS CONSERVANCY

_____    _____

By:
Its:

By: J. Michael Becher (W.Va. Bar No. 10588)
    J. Michael Becher
Its: Counsel/ proxy

OHIO VALLEY ENVIRONMENTAL COALITION

_____

By: J. Michael Becher (W.Va. Bar No. 10588)
    J. Michael Becher
Its: Counsel/ proxy