UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| INSIGHT TERMINAL ) | CHAPTER 11 |
| SOLUTIONS, LLC, ET AL. ) | (Jointly Administered) |
| ) | |
| Debtor. ) | CASE NO. 19-32231-JAL |
| ) | |

**MOTION TO SET ASIDE ORDER GRANTING MOTION BY THE REORGANIZED DEBTOR FOR A RULE 2004 EXAMINATION OF THE SIERRA CLUB**

Comes now, the Sierra Club ("Sierra Club"),[1] by and through undersigned counsel and files its *Motion to Set Aside Order Granting Motion by the Reorganized Debtor for a Rule 2004 Examination of the Sierra Club*, respectfully stating as follows:

1. On July 17, 2019 (the "Petition Date"), Insight Terminal Solutions, LLC ("Debtor") filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. Sierra Club is not listed in Debtor's petition and schedules in any capacity. Debtor did not schedule any claims against Sierra Club or City of Oakland as assets of the estate. Debtor never amended its schedules or otherwise added these alleged claims as assets of the estate. *See*, Petition [Doc. 1].

3. On April 27, 2020, Autumn Wind Lending, LLC ("AWL" or "Prepetition Lender"), Debtor's prepetition secured lender, filed its Chapter 11 Plan of Reorganization (the "Plan") which was confirmed by this Court on November 30, 2020 [Doc. 379] to include the AWL Plan Supplement [Doc. 265] (the "Confirmed Plan").

---

[1] Debtors' Motion refers to both "Sierra Club" and its "Utah Chapter." There is only a single Sierra Club corporate entity, incorporated in California, which includes the Utah Chapter.

4. Subsequently, AWL filed its Amended Disclosure Statement in support of the Plan which was approved by the Court [Doc. 245]. In its Disclosure Statement, AWL provided the means for implementation of the Plan as follows:

> 1. <u>Plan Funding</u>.
>
>    a. <u>Cash Reserves.</u> Distributions under the Plan may be partially funded from the Reorganized Debtor's cash on hand as of the Effective Date.
>
>    b. <u>Cash Contribution</u>. On the Confirmation Date, the Prepetition Lender will make the Cash Contribution in the amount of $5,000,000 into a segregated escrow account for the benefit of Holders of Allowed Class 3 Claims. The Cash Contribution shall be used solely to pay all Allowed Claims in accordance with the Plan and after payment of all Allowed Claims, any remaining funds in such account shall revert to the Prepetition Lender. The Reorganized Debtor shall be authorized to execute, deliver, and enter into and perform under the Plan without any further corporate or limited liability company action and without further action by the holders of Claims or Interests.
>
>    c. <u>JMB Capital Guarantee</u>. JMB Capital shall guarantee payment of all Allowed Claims which exceed the Cash Contribution. An executed JMB Capital Guarantee will be included in the Plan Supplement.

*See*, Disclosure Statement at Article V(F).

5. Pursuant to the Confirmed Plan, AWL became the sole member of Debtor, and all prior equity, directors, and officers were removed from the reorganized debtor (the "<u>Reorganized Debtor</u>"). AWL exchanged its claim for equity in the plan it drafted.

6. In its Plan Supplement, AWL provided its liquidation analysis of Debtor's assets. In its liquidation analysis, AWL values the Debtor's assets as ranging from $0.00 to $10 million with all proceeds from a liquidation going to AWL. It also states that the values attributed to the liquidation analysis are based upon "Debtor's schedules and statement of financial affairs and publicly available information from the Debtor's Chapter 11 Case." It

further explains that "Debtor's sole potential asset of substantial value is the Sublease." *See,* Plan Supplement, Exhibit "D." There's no mention of claims against others measuring in the "**billions**" as now asserted by the Reorganized Debtor.

7. Despite payments under the terms of the Confirmed Plan being complete on all allowed claims, the case remains open while the claim of Cecilia Financial, an entity wholly owned by Debtor's former principal, is resolved. The Prepetition Lender – AWL – is now the only equity member of the Reorganized Debtor. Under the terms of the Confirmed Plan, AWL received equity in exchange for its prepetition secured debt and has no further entitlement to any distributions. The case remains open effectively for the resolution of the Cecilia Financial claim. There are no outside creditors that remain.

8. On May 20, 2024, Reorganized Debtor filed its Post-Confirmation Report for the period ending March 31, 2024 ("1st Quarter Report"). In its 1st Quarter Report, Debtor reports that 100% of the allowed administrative and allowed general unsecured claims have been paid under the terms of the Confirmed Plan. It further reports that there are no unpaid allowed claims. [Doc. 491].

9. Now, nearly four years after confirmation, the Reorganized Debtor seeks to utilize the Rule 2004 process in a thinly disguised scheme to apply pressure to the City of Oakland vis a vis the Sierra Club. It also filed adversary proceeding 24-03007 (the "Oakland AP") against the City of Oakland on March 11, 2024 (the "City of Oakland Complaint"). The Reorganized Debtor sought this Rule 2004 deposition of the Sierra Club regarding its communications with the City of Oakland with no prior notice to the Sierra Club, and the Court granted the request prior to the Sierra Club appearing or being heard, necessitating this motion.

10. In its draft Complaint against the Sierra Club, the Reorganized Debtor alleges fraud claims, aiding and abetting, and conspiracy claims without particularity, which are barred by applicable statutes of limitation, and which have no bearing on the bankruptcy estate or the implementation and execution of the Confirmed Plan (the "Draft Complaint"). In short, the Reorganized Debtor's proposed filing against the Sierra Club piggybacks on the same meritless California law business tort allegations that it makes against the City, and now alleges a civil conspiracy between the Sierra Club and the City that "caused" its alleged "billions" in damages. The project at issue is the subject of the already pending California state court litigation. *OBOT v. City of Oakland*, Alameda County, California Superior Court Case No. RG18930929; First District California Court of Appeal Case No. A169585 (the "State Court Case").

11. The Draft Complaint suffers from the same defects as the City of Oakland Complaint. Of the 120 paragraphs in the Draft Complaint, 67 are identical or nearly identical to the City of Oakland Complaint. There is currently a pending motion to dismiss the Oakland AP filed by the City of Oakland for lack of subject matter jurisdiction and for failure to state a claim. (24-03007, Dkt. #25; Dkt. #28 (scheduling City's motion to dismiss for hearing on July 11, 2024)). When the Oakland AP is dismissed, any claims against Sierra Club would likewise fail. In particular, this Court likewise lacks jurisdiction over the wholly unrelated issues that ITS is trying to bring before this Court by way of these new, unsupported, conspiracy allegations.

12. It's important to note that AWL's own allegations in the underlying Chapter 11 proceedings support a finding that Debtor was solely responsible for its fate, contrary to

4

the Reorganized Debtor's new assertions in the City of Oakland Complaint and Draft Complaint.

    a. "Debtors have, upon information and belief, failed to maintain and secure the property or even to commence development of the project." *AWL Motion to Dismiss* [Doc. 13], p. 4.

    b. "[T]he Debtors have, upon information and belief, also failed to honor their payment obligations to the Landlord and the City of Oakland." *Id*.

    c. "The Debtors' mismanagement and complete lack of attention to the property have upon information and belief, resulted in theft, vandalism, and a state of disrepair." *Id*.

    d. "[T]hey were commenced as a stalling tactic to allow Siegel to continue his efforts to only benefit himself and retain the Sublease in what is essentially a two-party dispute involving ***quintessential state law issues***." *Id*. At 5. Emphasis Added.

    e. "[P]rior to the Petition Date, the Debtors acted improperly by, among other things, (i) ITS shirking numerous responsibilities to maintain and secure the property…." *Id*. At 19.

    f. The "Oakland Overburden" can and should be separate and apart from the plan process…. [a] resolution [is not] necessary for a successful conclusion to the chapter 11 process." *Objection of AWL to Exclusivity* [Doc. 120] at p. 4.

    g. "[T]he Debtors ignore the obvious fact that resolution of the "Oakland Overburden" is unnecessary and unrelated to the plan process, as demonstrated by the Lender Plan. *Id*. At p. 9.

  h. "[T]he Prepetition Lender's plan…is the only feasible plan and will pay all Allowed Claims, except Subordinated Claims, in full with no risk." *AWL's Omnibus Reply* [Doc. 230] at ¶2.

13. The Reorganized Debtor has substantially consummated he Confirmed Plan and the Prepetition Lender now holds all of the equity interests in Debtor. There is nothing left to do in this Court to execute or implement the Confirmed Plan other than insider claim resolution. The discovery granted by the Court ex parte is in no way related to the Confirmed Plan, and serves no bankruptcy-related purpose, at all and the order should be vacated for that reason alone.

14. To the extent the Reorganized Debtor filed this Rule 2004 motion to avoid the rules pertaining to discovery in the pending Adversary Proceeding against the City of Oakland, which contains glaring jurisdictional and merits problems with that action, it is both an inappropriate use of Rule 2004 and the very same concerns regarding jurisdiction apply here, and the order should be set aside.

## Argument and Citation of Authority

Although Rule 2004 examinations are frequently fishing expeditions of a Debtor or party, a debtor is not given unfettered access to non-parties. "While the scope of a Rule 2004 examination is very broad, it is not limitless. The examination should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party seeking discovery." *In re Michalski*, 449 B.R. 273, 282 (Bankr. N.D. Ohio 2011), quoting *In re Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989). "Obviously, the breadth of the language employed in the Rules is so all encompassing as semantically to include and encourage harassment on every human subject. Nevertheless, abuse of propriety and the

judicial process certainly was never contemplated." *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983). The Reorganized Debtor has not alleged a single cognizable claim against Sierra Club that would warrant the extraordinary relief of invoking this Court's jurisdiction for a post-confirmation Rule 2004 exam of a nonparty. Nor has it alleged anything that would impact the implementation or execution of the Confirmed Plan.

"Rule 2004 examinations cannot be used for the purpose of abuse or harassment and the examination cannot go beyond the bounds of what is, or may be, relevant to the inquiry." *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000). The Reorganized Debtor filed the Oakland AP which has its pending motion to dismiss on grounds that will be echoed by Sierra Club should the Draft Complaint be filed against it. The Rule 2004 process is being used to harass not only the prospective deponent here but also the City of Oakland as a state court litigant in the State Court Case.

And significantly, "When considering whether to allow post-confirmation Rule 2004 discovery, bankruptcy courts should take into consideration their limited 'related-to' post-confirmation jurisdiction: if the matter being investigated under Rule 2004 is one that lies outside the bankruptcy court's jurisdiction, then no cause exists for Rule 2004 discovery." *In re Defoor Centre, LLC*, 634 B.R. 630, 632 (Bankr. M. D. Fla.,2021). Here, the Draft Complaint alleges claims for (1) tortious interference with a prospective economic advantage, (2) aiding and abetting tortious interference with contract, (3) aiding and abetting tortious interference with prospective economic advantage, (4) inducing breach of contract, and (5) civil conspiracy. All of these claims piggyback on the allegations against the City of Oakland (the alleged business torts of which the Sierra Club is alleged to have "aided and abetted" and "conspired" to cause). This Court lacks jurisdiction over these proposed state law claims (and

any related discovery) as much as it lacks jurisdiction over the state law tort claims brought directly against the City, for all the reasons explained by the City of Oakland in its recent Motion to Dismiss the parallel action against the City (24-03007, Dkt. #25).

In addition, all of the claims proposed as the basis for this Rule 2004 order are barred by the applicable California statutes of limitations or subject to other defenses, including under the First Amendment. Reorganized Debtor had two years to bring its claims as alleged in the Draft Complaint. Its allegations against the Sierra Club almost exclusively date back to 2018. It cannot utilize post-confirmation jurisdiction to pursue solely state law claims barred by the passage of time. To the extent the Debtors have attempted to identify more recent actions, those consist *only* of a few public statements protected under the First Amendment. *See* Draft Complaint at paragraphs 48 to 62 (offering only quoted public statements by Sierra Club representatives as evidence of "[c]ontinued [w]rongful [c]onduct").*Campbell v. PMI Food Equipment Group, Inc*, 590 F.3d 776, 790 (6th Cir. 2007) (noting that courts apply *Noerr-Pennington* doctrine protecting the right to petition to common law claims of tortious interference); *Video Intern. Production, Inc. v. Warner-Amex Cable Communications, Inc.*, 858 F.2d 1075, 1082-83 (5th Cir. 1988) (*Noerr-Pennington* doctrine protects defendant who petitioned city to adopt zoning interpretation from tortious interference claim even though "officials may have perverted the zoning regulations" for city's own economic reasons); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614-15 (8th Cir. 1980) (*Noerr-Pennington* doctrine applies to landowners' secret meetings with city officials to petition for enactment of city ordinance to rezone plaintiff's property). There are no facts alleged here that could remotely support a claim of aiding and abetting torts that are time-barred or otherwise cannot survive a motion to dismiss, for all the reasons explained by Oakland in its filing.

"Once the debtor's plan has been confirmed, the bankruptcy court's jurisdiction is narrowed. At that point, bankruptcy court jurisdiction 'ceases to exist, other than for matters pertaining to the implementation or execution of the plan.'" *In re Daisytek, Inc.*, 323 B.R. 180, 185 (N. D. Tex., 2005). Here, there can be no dispute that the requested 2004 discovery has nothing to do with the implementation or execution of the Confirmed Plan. The plan is silent as to any potential recovery on claims against third parties benefitting the bankruptcy estate. Furthermore, the district court in *In re Daisytek*, on remand directed the bankruptcy court to first determine whether the use of Rule 2004 post-confirmation is based upon potential claims otherwise barred or prohibited by state law. *Id*. Here, it is clear based upon the Draft Complaint and the City of Oakland's pending motion to dismiss the Oakland AP that any potential claims regarding interference with the ITS business operations in Oakland, arising starting prior to 2018, are barred by state law and cannot form the foundation for a post-confirmation Rule 2004 exam. "The examination, though, must be limited to issues which the court, at the time, still has the power to entertain. That is, it is restricted to the administration of the case post-confirmation." *In re Cinderella Clothing Industries, Inc*., 93 B.R. 373, 377 (Bankr. E. D. Pa.,1988). The plan has been substantially consummated, the creditors have been paid or otherwise received equity as provided in the Confirmed Plan other than insider owned Cecelia Financial. The Reorganized Debtor is not seeking this Court's assistance in implementing or executing its plan. The new contract created by the Confirmed Plan is no longer executory, it is complete.

  Although Sierra Club submits there are no cognizable claims, the Reorganized Debtor has already prepared the Draft Complaint. "A Rule 2004 examination is meant to provide the Debtor with the preliminary information need to file a complaint. Here, the Debtor already

9

has that information. To allow the Debtor to use Rule 2004 when it already has the preliminary information needed to file its potential causes of action would give the Debtor an undue strategic advantage in what amounts to private litigation." *In re Defoor Centre, LLC*, 634 B.R. 630, 632 (Bankr. M. D. Fla., 2021). At a minimum, the Court should find Rule 2004 inapplicable and impose standard litigation discovery restrictions on the Reorganized Debtor.[2]

In addition, this Rule 2004 Order appears to have been sought to avoid the rules pertaining to discovery in the Adversary Proceeding against the City, which is not an appropriate or permissible use of Rule 2004. A majority of courts "have prohibited a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is pending." *In re 2435 Plainfield Ave., Inc*. 223 B.R. at 455-56 (citing *In re Valley Forge Plaza Assoc.*, 109 B.R. at 674 (stating that "once an adversary proceeding or a particular contested matter is under way, discovery sought in furtherance of litigation is subject to the F. R. Civ. P. rather than the broader bounds of R2004") (collecting cases) (other citations omitted)); *see also In re Summit Glob. Logistics*, No. 08-11566 (DHS), 2008 Bankr. LEXIS 5137, at *8-9 (Bankr. D.N.J. Apr. 9, 2008). Rule 2004 is not intended to permit a bypass of existing adversary proceedings. *E.g. In re GYPC, Inc.*, No. 17-31030, 2020 Bankr. LEXIS 1848, at *11-12 (Bankr. S.D. Ohio June 24, 2020) (collecting cases). And, in this context, given the concerns that this Court lacks jurisdiction at all over the state law torts ITS is attempting to bring to this Court, permitting the use of Rule 2004 in advance of resolution of the jurisdictional challenge (scheduled for hearing on July 11, 2024) is all the more inappropriate.

---

[2] To be clear, the claims in the Draft Complaint are baseless, and Sierra Club reserves all defenses against any subsequently filed complaint, including opposition to any improper discovery and pursuit of appropriate sanctions should they be warranted.

In the event the Court is inclined to allow Rule 2004 discovery of Sierra Club, the requests on Exhibit "A" are unduly burdensome, overly broad, and not likely to lead to discovery of admissible evidence.[3] The requests are unlimited as to time and scope and extremely far reaching. In addition, all of the requests are for documents and communications with "City Officials." The very same city officials currently in litigation with Debtor and are Reorganized Debtor's business partners in California (apparently funded by the Reorganized Debtor, see 24-03007, Dkt. #25)  and, as discussed above, the currently pending City of Oakland AP. This is simply an end run around standard discovery practice, subject to the rules that apply to those proceedings.

Wherefore, Sierra Club respectfully request that the Court enter an order setting aside the Rule 2004 Order in its entirety. In the alternative, Sierra Club requests that the Rule 2004 Order be set aside until an adjudication of the City of Oakland's motion to dismiss.

Respectfully submitted,

/s/ Charity S. Bird
CHARITY S. BIRD
**Kaplan Johnson Abate & Bird, LLP**
710 West Main Street
Fourth Floor
Louisville KY 40202
Telephone: 502-540-8285
Facsimile: 502-540-8282
E-mail: cbird@kaplanjohnsonlaw.com
*Counsel for Sierra Club*

---

[3] Public records also reveal that counsel for the Reorganized Debtor has submitted a request to the City of Oakland pursuant to California's Public Records Act for the same communications sought here, to which the City is already responding, further undermining the "need" for this use of Rule 2004.  *See* City of Oakland Public Records Request No. 24-1364, available at: https://oaklandca.nextrequest.com/requests/24-1364.

**CERTIFICATE OF SERVICE**

It is hereby certified that on May 24, 2024, a true and correct copy of the foregoing was (a) mailed electronically through the U.S. Bankruptcy Court's ECF system at the electronic addresses as set forth in the ECF system to the U.S. Trustee and all other persons receiving electronic notifications in this case, and (b) mailed, first-class, postage prepaid, to those persons, if any, identified in the Court's Notice of Electronic Filing who do not receive electronic notice but are entitled to be served.

*/s/ Charity S. Bird*
CHARITY S. BIRD
