**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

|  |  |
|---|---|
| In re:<br><br>INSIGHT TERMINAL SOLUTIONS, LLC, *et al*.,<br><br>Debtors. | Chapter 11<br><br>Case No. 19-32231-jal<br><br>(Jointly Administered)<br><br>Judge Joan A. Lloyd |

**DEFENDANT CITY OF OAKLAND'S PRELIMINARY OPPOSITION TO MOTION BY DEBTOR AND PLAINTIFF INSIGHT TERMINAL SOLUTIONS FOR RULE 2004 EXAMINATION OF DEFENDANT CITY OF OAKLAND**

The City of Oakland ("Defendant" or "the City"), by counsel, respectfully submits this Preliminary Opposition to Debtor Insight Terminal Solution ("ITS")'s Motion for a Rule 2004 Examination of Defendant City of Oakland [Doc. No. 508]. The City is Defendant, and ITS is Plaintiff in the currently pending Adversary Proceeding No. 24-03007-jal. This Motion was filed notwithstanding that pending Adversary Proceeding in which Defendant City of Oakland's Motion to Dismiss for lack of jurisdiction and failure to state a claim is currently pending [Adv. Doc. No. 25], and is set for preliminary hearing this Thursday, July 11, 2024 [Adv. Doc. No. 30]. The City, as Defendant in the pending Adversary Proceeding, now respectfully provides the following preliminary response[1] and opposition.

/ / /

/ / /

---

[1] This Motion was filed late in the day on July 3, 2024 (immediately prior to the federal holiday). The City moved swiftly to provide this preliminary response on July 5, 2024 to ensure the Court is alerted that this Motion is opposed, and that the Court lacks jurisdiction (among other flaws), and the Court should not grant this Motion in the usual course of proper Rule 2004 Motions, which this is not.

- 1 -

4857-9888-6862.4

**INTRODUCTION**

1.          Debtor and Plaintiff ITS's Motion is a brazen attempt to obtain improper discovery of Defendant the City, by invoking Rule 2004 of the Federal Rules of Bankruptcy Procedure, notwithstanding the governing law that Rule 2004 should not be used in light of the currently pending Adversary Proceeding that ITS has filed against the City [Adv. Proc. No. 24-03007-jal]. This Motion should be summarily denied on that basis alone.

2.          The Court confirmed ITS's chapter 11 plan of reorganization ("Plan") [Doc. No. 245] in 2020 [Doc. No. 378].  The City was never a creditor.  No claim against the City was ever named by ITS pre-confirmation (or its now-controlling entity, pre-petition lender Autumn Wind Lending ("AWL")), was ever listed on ITS's schedules, or was ever addressed in the Plan. Notwithstanding plain facial jurisdictional and merits defects, three and a half years after plan confirmation on March 3, 2024, ITS attempted to sue the City in this Court for two California business torts by way of the pending Adversary Proceeding, belatedly claiming that actions of the City caused its bankruptcy.  [Adv. Doc. No. 1].  The City promptly moved to dismiss for lack of jurisdiction and for failure to state a claim on May 1, 2024.  [Adv. Doc. No. 25].  That Motion is pending and set for preliminary hearing to discuss scheduling of the Reply and merits hearing next week, on July 11, 2024 [Adv. Doc. 30].

3.          On July 3, 2024, ITS filed this Rule 2004 Motion against the Defendant City on this main case bankruptcy docket, not the Adversary Proceeding docket.  [Doc. No. 508].

4.          By way of this Rule 2004 Motion, ITS now seeks this Court's authorization of wide-ranging document and deposition discovery into the Defendant City's finances, including a proposed transaction related to a sports stadium complex known as the Oakland-Alameda County Coliseum Complex (the "Coliseum"). These transactions have *nothing* to do with the ITS

- 2 -

bankruptcy case, the Plan, the Estate, or any land or contract at issue in the pending Adversary Proceeding.    Thus, the thinnest reed upon which ITS balances this request is the Adversary Proceeding itself, and its claimed entitlement to a "not less than $1 billion" dollars in damages for the California tort claims now asserted against the Defendant City in this Court [Adv. Doc. No. 1 at 1].

5.    Thus, ITS now claims that *because of this Adversary Proceeding*, the City is a "contingent debtor" to ITS, and therefore the City must open its books on any and all financial transactions.  [Doc. No. 508 at 1].[2]  This is specious.  Even if this Court had Rule 2004 authority to grant discovery during an Adversary Proceeding (which it does not), this Court lacks jurisdiction to grant this frivolous request for many other reasons.

6.    First, as set forth in Defendant City's pending Motion to Dismiss ITS's Adversary Proceeding [Adv. Doc. No. 25], this Court lacks jurisdiction over any post-confirmation attempt by ITS to bring California tort claims against a California city in this Court. *See, e.g.*, *In re Tew*, No. 20-51078, 2023 WL 7981684, at *5-6 (Bankr. E.D. Ky. Nov. 16, 2023).  Correspondingly, this Court lacks jurisdiction to grant any discovery in that proceeding.

7.    As fully explained in that pending Motion to Dismiss, ITS is seeking to involve this Court in resolving two claims under California tort law against the City that were never mentioned prior to Plan confirmation, and have nothing to do with the Plan or Estate.  [Adv. Proc. No. 25]. This Court's post-confirmation jurisdiction is rightfully limited in scope; ITS does not come close to justifying the use of this Court's resources for these claims.  And therefore, there is likewise no

---

[2] The claim now that the City is a "contingent debtor" to ITS is remarkable, in light of ITS's failure to identify any claim against the City in any of its pre-confirmation bankruptcy filings [*see, e.g.*, Doc. Nos. 63, 105-1, 217, 247.]

4857-9888-6862.4

legal basis to involve this Court in authorizing ITS's politically-motivated fishing expedition into the City's finances.

8.      As also set forth in Defendant City's pending Motion to Dismiss, the ITS claims against the City also lack all merit, for multiple reasons:  they are based on City actions dating back to 2014, and are plainly either time-barred or otherwise contrary to California law, including blackletter law that bars suing a city in California directly in tort, which ITS did here.  [Adv. Proc. No. 25 at 19-25].   The real purpose of this Adversary Proceeding is to circumvent the California courts' jurisdiction in a pending lawsuit between ITS's business partner and the City, in which the primary lease with the City has been contested since 2018, including the California court's recent rejection of a billion-dollar lost profit claim as entirely speculative.  ITS is forum-shopping and seeking another bite at that apple that its partner already lost in the California courts.  ITS thus brings meritless claims to this Court that will *never* entitle it to any discovery, let alone the discovery it now seeks by way of this Rule 2004 Motion.

9.      Next, the substance of the discovery ITS seeks here into the City's finances and a recent proposed sports stadium complex deal has nothing to do with the ITS's Plan confirmed in 2020, or the claims now pending in the Adversary Proceeding.  Even under the most generous interpretation of the discovery rules that would pertain to the Adversary Proceeding, even if there were any basis for surviving the pending Motion to Dismiss on jurisdictional *and* merits grounds (which there is not), ITS could never obtain this irrelevant discovery.

10.     Because there is no substantive relevance at all, ITS stretches to try to find good cause elsewhere.  ITS justifies this discovery request as investigation of "avoidable post-petition financial transactions under **Section 549(a)**." [Doc. No. 508 at 7, ¶21] (Emphasis added).  But that section plainly involves unauthorized post-petition transactions involving the "*property of the*

*estate.*" 11 U.S.C. §549(a).  The Coliseum is not *Debtor ITS's property*.  This negotiation involves City-owned property that is not and was never "property of the estate." 11 U.S.C. §549(a).  The invocation of Section 549 is wildly inappropriate.

11.     Finally, this Motion is riddled with accusations against the City and its elected officials that are both inaccurate and reveal, on their face, the political motivation for this Motion. It is improper and abusive for ITS and its counsel to move this Court for discovery that is barred by blackletter law in an attempt to use this Court and its jurisdiction as leverage in whatever political fight they wish to wage in California.

12.     For all these reasons, this Motion is contrary to blackletter law regarding Rule 2004 and is frivolous, and should be *summarily denied*.  The City will be prepared to discuss the reasons this Motion should be denied at the July 11, 2024 preliminary hearing on its Motion to Dismiss in the Adversary Proceeding.  The City respectfully submits that the Motion should be considered and denied at that hearing.

### RELEVANT BACKGROUND

**A.     The ITS Bankruptcy.**

13.     ITS filed a voluntary chapter 11 petition in this Court on July 17, 2019 (the "Petition Date"), commencing this Case No. 19-32231 (the "ITS Bankruptcy") [Doc. No. 1].

14.     ITS did not list the City as a notice party in its petition. [Doc. No. 1.] Nor did ITS schedule the City as a creditor. [Doc. No. 63 at 13-18 of 31.]  Nor did either the original nor amended Schedule A/B disclose any cause of action held against the City as of the Petition Date. [*Id.* at 8-12 of 31; *see also* Doc. No. 105-1 at 1-5.]

15.     Pre-petition lender AWL and ITS filed competing plans of reorganization.  [Doc. Nos. 217 and 245.]  Neither plan or any supporting documents identified any claim against the City. [*Id.*]

16.     On November 3, 2020, the Court entered its order confirming AWL's Plan [Doc. No. 379.]  On November 5, 2020, AWL filed its notice confirming that the Effective Date of the Plan occurred on the same date.  [Doc. No. 381.]

**B.     The 2024 ITS Adversary Proceeding Against the City.**

17.     More than three years after its Plan was confirmed, on March 3, 2024, Plaintiff Debtor ITS filed its adversary complaint against Defendant City of Oakland, California [Adv. Doc. No. 24-03007-jal].  ITS, which is now owned and operated by AWL out of Los Angeles, California [*see* Dkt. No. 480], attempted to bring two California tort claims against a California city that have no connection to Kentucky, the ITS Plan, the ITS Estate, or this Court.

18.     In the Adversary Proceeding, ITS now contends that the City of Oakland engaged in conduct, going back to 2014, that interfered with its existing and prospective business contracts related to a piece of land called the West Gateway.

19.     The West Gateway is land within the former Oakland Army Base that is owned by the City and was leased to ITS's business partner Oakland Bulk and Oversized Terminal ("<u>OBOT</u>").

20.      OBOT and the City have been in litigation in California regarding the rights to this land, in both federal and state courts, since 2016. *OBOT v. City of Oakland*, Alameda County Superior Court Case No. RG18930929; First District Court of Appeal Case No. A16958.  That case is currently pending on appeal.  First District Court of Appeal Case No. A16958.  ITS's rights to this land (via a sublease from OBOT) are *entirely* tied up in the claims pending in California court.

To be clear: if OBOT loses the California state court litigation now on appeal, OBOT will not have any lease to this land, and ITS will have no sublease either.

21.    In the underlying state court litigation, OBOT challenges the City's 2018 termination of the lease for this land.  OBOT claimed the present-day value of a projected nearly one billion dollars in lost future profits damages as a result of losing *the ITS sublease*.  The state court rejected those damages entirely as speculative and unsupported.  [*See* Adv. Doc. No. 25-1, Statement of Decision of Damages attached as Exh. B].  ITS waited until after the OBOT lost all of its own billion-dollar lost profit claim in California state court to bring this lawsuit here.  Again, at no point in time prior to or even after Plan confirmation in 2020, until the filing of this Adversary Proceeding in 2024, did ITS ever claim that it possessed "billion dollar" tort claims against the Defendant City.

**C.    The City's Pending Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6).**

22.    On May 1, 2024, Defendant the City filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) to the Complaint [Adv. Doc. No. 25] (the "Motion to Dismiss").

23.    The City's well-supported Motion demonstrates that this Court lacks post-confirmation subject matter jurisdiction over these California tort claims against the City which do not arise under the Code, or arise in, and are not related to this bankruptcy.  [Adv. Doc. No. 25-1 at 12-19; *see* 28 U.S.C. §1334(b); s*ee, e.g.*, *In re Tew*, No. 20-51078, 2023 WL 7981684, at *5-6 (Bankr. E.D. Ky. Nov. 16, 2023)].  This Court's post-confirmation jurisdiction, under governing law, does not extend to any dispute that ITS wishes to bring to this Court, let alone this dispute under California law, brought here in forum-shopping to avoid dismissal (and sanctions) in the California courts.

4857-9888-6862.4

24.     In the alternative, the City also moved to dismiss on several merits grounds that appear on the face of ITS's allegations as well.  First and foremost, there is no common law tort liability for cities in California, which cannot be sued directly, as ITS has attempted here [Adv. Doc. No. 25 at 20].  When ITS's business partner (represented by the same counsel as ITS here) brought similar tort claims in state court, *they were dismissed on these grounds in 2019*. [*Id*.]

25.     Next, even if the torts could be stated, any claim going back to City actions, from 2014 to 2018 that ITS now claims (years later) to have caused its bankruptcy is plainly time-barred. [Adv. Doc. No. 25 at 21-22].  In addition, ITS also claims that it has been injured by the City's actions in 2024 following the California trial court's ruling (essentially, by not moving the project forward pending appeal); ITS ignores the plainly applicable doctrine in California imposing a stay pending appeal, and seeks to use this Court to circumvent any litigation regarding such a stay which properly belongs in California courts.  [Adv. Doc. No. 25 at 22-24].

26.     On May 22, 2024, ITS missed the opposition deadline imposed by the Local Rules, for which this Court then granted relief.  [Adv. Doc. No. 40.] Accordingly, ITS will file its opposition on this coming Tuesday, July 9, 2024. This Court and the parties will discuss further scheduling of the City's Reply and a hearing on the City's motion at a preliminary conference this Thursday, July 11, 2024.

**D.     The Rule 2004 Motion for Discovery into the City's Finances.**

27.     At approximately 3 p.m. on July 3, 2024, ITS filed this Motion for Rule 2004 Examination of Defendant the City, not on the Adversary Proceeding docket, but on this main case bankruptcy docket. [Doc. No. 508].   This Motion seeks both document and deposition discovery of Defendant the City (including a deposition *in Kentucky*), notwithstanding the pending Adversary Proceeding, and notwithstanding the City's pending Motion to Dismiss.

- 8 -

28.     Specifically, this Motion seeks discovery into what ITS claims are "questionable" "financial transactions and dealings" by the City, including a proposed sale of the Oakland Coliseum sports stadium complex. [Doc. No. 508 at 4.]  None of the transactions identified by ITS, and certainly not the Coliseum negotiations, have anything to do with the West Gateway land or contracts or are remotely related to ITS or this bankruptcy.

29.     Remarkably, ITS *admits* that it is seeking to use this Court's jurisdiction for political purposes:  it justifies this request as wanting this Court to provide a "*healthy check and balance*" and that will "*deter*" the City from "*proceeding from future improper dealings and transactions*."  [Doc. No. 508 at 7, ¶22] (Emphasis added.)

30.     ITS also justifies this Motion by claiming to seek information into "post-petition transactions" under Section 549(a) of the Bankruptcy Code [Doc. No. 508 at 7, ¶21], when ITS and its counsel are very well-aware that the Coliseum is not Debtor (ITS)'s property and could never be "property of the estate."  11 U.S.C. §549(a).

31.     ITS demands that the City pay for and send a representative to Louisville, Kentucky for this deposition (ignoring that ITS is represented in this Court by counsel based in the San Francisco Bay Area [see Adv. Doc. No. 25]).  [Doc. No. 508 at 8.][3]

## ARGUMENT

**A.     Rule 2004 Cannot Be Used to Bypass the Rules Applying to Adversary Proceedings.**

32.     Federal Rule of Bankruptcy Procedure 2004 provides "[o]n motion of any party in interest, the court *may* order the examination of any entity." Fed. R. Bankr. P. 2004(a) (emphasis added).  Rule 2004 further provides the examination "may relate *only* to the acts, conduct, or

---

[3] ITS also previously filed an improper Rule 2004 Motion for discovery into communications between the City and environmental groups, naming the Sierra Club as a "conspirator" with the City. [Doc. No. ].  This Court summarily granted that Motion [Doc. No. 499].  The Sierra Club's Motion to Set Aside the Order is currently pending. [Doc. No. 504].

4857-9888-6862.4

property or to the liabilities and financial condition *of the debtor*, or to any matter which may affect the administration *of the debtor's estate*, or to the *debtor's right to discharge*." *Id.* (Emphasis added). The purpose of this broad authority is to protect against *the debtor* hiding or disposing of assets: "That is to allow a Trustee, or others interested in accomplishing the same ends, to discover and investigate how to bring to light possession of assets of the debtor that might be intentionally concealed or overlooked in ignorance or haste." *In re Valley Forge Plaza Assoc.*, 109 B.R. 669, 674 (Bankr. E.D. Pa.1990). It goes almost without saying that this Rule's purpose is not to provide a debtor with unfettered access, in perpetuity, to the financial records of those entities it perceives to be its political or legal adversaries, or to permit a debtor to assume the role of political watchdog of public entities.

33.     One of the "limits" imposed by the law is that Rule 2004 does not apply to discovery from an adversary party, once an adversary proceeding has actually been initiated: "a majority of courts 'have prohibited a Rule 2004 exam of parties involved in or affected by an adversary proceeding while it is pending.'" *In re Summit Global Logistics*, No. 08-11566 (DHS), 2008 WL 1446722, at *2 (Bankr. D.N.J. Apr. 9, 2008) (quoting *In re 2435 Plainfield Ave.*, *Inc.*, 223 B.R. 440, 455-56 (Bankr. D.N.J. 1998); *In re Valley Forge Plaza Assoc.*, 109 B.R. at 674 (stating that "once an adversary proceeding or a particular contested matter is under way, discovery sought in furtherance of litigation is subject to the F. R. Civ. P. rather than the broader bounds of R2004").

34.     The court in *Summit Global Logistics* explained:

> The reason for this limitation on the availability of Rule 2004 as a discovery device stems from the distinction between the broad scope of a Rule 2004 examination and the more restricted nature of discovery permitted under the Federal Rules of Civil Procedure. For example, while the scope of an examination under Rule 2004 is far-reaching, discovery rules in adversary proceedings and contested matters are more restrictive with respect to the threshold requirement of relevance and in regards to protections available to subpoenaed parties…. Moreover, the expansive nature of Rule 2004 should not be permitted to exact prejudice or injustice on the subpoenaed party….

- 10 -

*Id.*, 2008 WL 1446722, at *3.

35.     Courts thus disallow Rule 2004 examinations once an adversary proceeding is filed precisely to prevent parties (like ITS) from trying to circumnavigate applicable rules:  "[C]ourts will usually not allow a 2004 exam where an adversary proceeding is pending, because the party requesting the exam is likely seeking to avoid the procedural safeguards of Bankruptcy Rules 7026-7037' ".  *In re 2435 Plainfield Ave., Inc*., 223 B.R. at 456 (quoting William L. Norton, Jr., 6 <u>Norton Bankruptcy Law & Practice</u>, § 141:35 (2d ed. 1998)).

36.     This Court should, like all these other courts before it, summarily deny ITS's Motion for Rule 2004 examination of the Defendant City in its currently-pending Adversary Proceeding. That proceeding, and discovery (if any), should be governed by the rules that apply to that proceeding, including, significantly, the law that governs the Court's jurisdiction over these claims in this Court in the first place.

37.      ITS and its counsel are apparently aware of this blackletter law:  ITS simply argues in one short paragraph that this Court should ignore it.  [Doc. No. 508 at 7-8, ¶23.]  But the City is not "side-stepping" or "conflating … misdeeds" (whatever ITS means by that).  [*Id*.] This is the law, and this Court should apply it: there is no basis to grant a Rule 2004 examination of the adversary party in a pending adversarial proceeding.

**B.      Rule 2004, Even If It Applied, Does Not Permit the Discovery ITS Seeks through Its Motion.**

38.     The plain language of Rule 2004 permits discovery *only* into the following topics: "the acts, conduct, or property or to the liabilities and financial condition *of the debtor*, or to any matter which may affect the administration *of the debtor's estate*, or to the *debtor's right to a discharge*."  For all the reasons explained above, the current financial condition of the City in

general, and the negotiations over the potential sale of the City's interest in a sports stadium complex, do not remotely qualify as falling within these topics.   Thus, even if Rule 2004 applied notwithstanding the Adversary Proceeding, this discovery is not permitted by Rule 2004.

39.      Lacking *any* relevant connection to this bankruptcy or the pending Adversary Proceeding, the only basis for "good cause" invoked by ITS here for Rule 2004 discovery into the City's financial transactions is 11 U.S.C. §549(a). [Doc. No. 508 at 7, ¶ 21].  Section 549(a) applies to unauthorized transactions involving the sale of *the debtor's property* ("a transfer of property of the estate").  11 U.S.C. §549(a).  *See also 40235 Washington St. Corp. v. Lusardi*, 329 F.3d 1076, 1080 (9th Cir. 2003); *Matter of Hargis*, 887 F.2d 77, 79 (5th Cir. 1989), decision clarified on reh'g, 895 F.2d 1025 (5th Cir. 1990) ("Section 549(a), which authorizes the trustee to avoid post-petition transfers, speaks only to property 'of the estate'" and does not apply to transfers "out of non-estate assets"); *see also In re Ducker*, No. 06-70250, 2007 WL 1119640, at *2 (Bankr. E.D. Ky. Apr. 3, 2007) (internal citations omitted) ("Section 549 applies only to debtor initiated transfers" of property within the debtor's estate."); 2 Henry J. Sommer & Lawrence P. King, Collier Bankruptcy Manual § 549.06 (16th ed. 2024) (noting that the purpose of § 549(c) is to "protect against a fraudulent debtor selling real property, or its interest therein, for present fair equivalent value to an innocent purchaser who has no knowledge, or reasonable means of knowledge, of the pendency of the bankruptcy case").

40.      This discovery request does not involve ITS's property.  This—the *only* argument for good cause made by ITS—is entirely frivolous, and has no basis in law or any reasonable or even arguable extension of law—as ITS and its counsel are well-aware.   [*See* Rule 9011(a); *see also In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000) ("Rule 2004 examinations cannot be used for the purpose of abuse or harassment").

4857-9888-6862.4

**C.**     **Discovery Should Not Be Granted in Light of The Court's Lack of Jurisdiction and ITS's Failure to State a Claim in the Adversary Proceeding.**

41.     Several other reasons support denial of this Motion in its entirety, not the least of which is this Court's lack of jurisdiction, as fully explained in the City's pending Motion to Dismiss ITS's Adversary Proceeding.  [Adv. Doc. No. 25].   If this Court truly lacks jurisdiction over these claims (which it does), no discovery would ever be appropriate, and this Court cannot order it.  *See In re Tew*, 2023 WL 7981684, at *1 ("Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)); *see also In re Defoor Centre, LLC*, 634 B.R. 630, 632 (Bankr. M.D. Fla. 2021) ("When considering whether to allow post-confirmation Rule 2004 discovery, bankruptcy courts should take into consideration their limited 'related-to' post-confirmation jurisdiction: if the matter being investigated under Rule 2004 is one that lies outside the bankruptcy court's jurisdiction, then no cause exists for Rule 2004 discovery.").

42.     Similarly, this Court should deny this Motion because ITS entirely has failed to state a valid claim on the merits, for all the reasons set forth in the City's pending Motion to Dismiss for failure to state a claim.  [Adv. Doc. No. 25 at 16-24.]  ITS's business torts are time-barred and invalid for any of the other myriad merits reasons set forth in the City's motion, and ITS will therefore never be entitled to any discovery.  Seeking discovery now, prior to this Court's ruling on the pending motion to dismiss for lack of jurisdiction, is entirely inappropriate.

43.     In addition, even if this Court could grant a Rule 2004 notwithstanding the pending Adversary Proceeding (which it cannot), and even if this Court had jurisdiction over the Adversary Proceeding (which it does not), and even if ITS's claims in that action had any merit (which they do not), the discovery that ITS seeks *postconfirmation* in its main bankruptcy case here is patently

- 13 -

irrelevant to anything in the pending Adversary Proceeding.  ITS *admits* that the discovery it now seeks is not actually relevant to the pending claims: "The investigation will merely focus on the City's post-petition financial transactions and dealings; the investigation will not focus on the tortious interference claims asserted against the City in the Adversary Proceeding."  [Doc. No. 508 at 7-8, ¶23.]

44.     Rather than arguing relevance (which it cannot), ITS admits that it seeks here to investigate what it perceives to be problems with the City's finances, and in particular the Coliseum negotiations, for admittedly political purposes (asking this Court to provide a "check and balance"; invoking "public policy benefits" of allowing discovery.  [Doc. No. 508 at 7, ¶22.]  But ITS does not get to *abuse* this Court's jurisdiction (and indeed resources and power) to act as a monitor of the City's finances, or to bring politically-motivated motions such as this one.  Even a "billion dollar" claim is no justification for the type of power and scrutiny that ITS asks this Court to authorize.  That dollar value is in and of itself a frivolous contention, given that the California courts have already completely rejected ITS's business partners attempts to recoup similar damages, predicated entirely on the same contract and business dealings asserted by ITS, as entirely speculative and unsupported. [Adv. Doc. No. 25-1, Exh. B.]

45.     Finally, ITS demands that the City pay for and send a representative to Louisville, Kentucky for this deposition (again, failing to tell the Court that ITS is now represented in this Court by counsel based in the San Francisco Bay Area [see Adv. Proc. Doc. No. 1]).

## CONCLUSION

46.     ITS's Motion, barred by blackletter law and lacking any good faith basis, as with the underlying attempt to hijack this Court's unavailable jurisdiction to bring time-barred and otherwise frivolous California business tort claims against the City here in Kentucky, is treading on territory

- 14 -

governed by Rule 9011, and the City reserves all rights to pursue sanctions pursuant to that Rule.

Given the Motion's lack of merit in light of the pending Adversary Proceeding, the City requests

that the Court consider the Motion at the July 11, 2024 preliminary hearing set in that Adversary

Proceeding, and appropriately deny it at that time.

Dated:   July 5, 2024

By: /s/ *Monique D. Jewett-Brewster*

April A. Wimberg
Ryne E. Tipton
DENTONS BINGHAM GREENBAUM LLP
3500 PNC Tower, 101 South Fifth Street
Louisville, Kentucky 40202
Phone:  (502) 587-3719
Email:   april.wimberg@dentons.com
         ryne.tipton@dentons.com

Barbara Parker, City Attorney (SBN 69722)
Maria S. Bee, Chief Asst City Attorney
(SBN 167716)
Jamilah Jefferson, Supervising Deputy City
Attorney (SBN 219027)
THE CITY OF OAKLAND
One Frank Ogawa Plaza, 6th Floor
Oakland, California 94612
Phone:   (510) 238-3601
Email:   bparker@oaklandcityattorney.org
         mbee@oaklandcityattorney.org
         jjefferson@oaklandcityattorney.org

Monique D. Jewett-Brewster (SBN 217792)
HOPKINS & CARLEY, ALC
The Letitia Building
70 S First Street
San Jose, CA  95113-2406
Phone:        (408) 286-9800
Facsimile:    (408) 998-4790
Email:  mjb@hopkinscarley.com

- 15 -

4857-9888-6862.4

Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
Email:  dleonard@altshulerberzon.com

Attorneys for Defendant,
CITY OF OAKLAND

4857-9888-6862.4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served electronically upon all parties in the electronic filing system in this Proceeding.


By: /s/ *Monique D. Jewett-Brewster*
*Monique D. Jewett-Brewster*

4857-9888-6862.4