UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| INSIGHT TERMINAL | ) CHAPTER 11 |
| SOLUTIONS, LLC, ET AL. | ) (Jointly Administered) |
| | ) |
| Debtor. | ) CASE NO. 19-32231-JAL |
| | ) |

**MOTION FOR RECONSIDERATION AND RELIEF FROM MEMORANDUM-OPINION ORDER DENYING MOTION TO VACATE ORDER GRANTING MOTION FOR 2004 EXAMINATION OF INTERESTED PARTY SIERRA CLUB**

Comes now, the Sierra Club ("Sierra Club"),[1] by and through undersigned counsel, and files its *Motion for Reconsideration and Relief from Memorandum-Opinion Order Denying Motion to Vacate Order Granting Motion by the Reorganized Debtor for a Rule 2004 Examination of the Sierra Club* [Doc. 524] pursuant to Bankruptcy Rule 9024 and Federal of Civil Procedure 60, respectfully stating as follows:

### I. Jurisdiction

1. This Court has subject matter jurisdiction over this case under 28 U.S.C. §1334. Venue is proper pursuant to 28 U.S.C. §1409 as this Court is the District in which Debtor's title 11 bankruptcy proceeding was filed.

2. This matter is a core proceeding pursuant to 28 U.S.C. §157.

3. The filing of this Motion shall not be construed as consent under §157(c)(2) to this Court's jurisdiction to adjudicate any non-core proceedings discussed herein, nor shall it be

---

[1] Debtor's Motion refers to both "Sierra Club" and its "Utah Chapter." There is only a single Sierra Club corporate entity, incorporated in California, which includes the Utah Chapter.

construed as a waiver of Sierra Club's right to move the district court to withdraw any core or non-core proceedings under 28 U.S.C. § 157(d).

## II. Introduction

4. Debtor Insight Terminal Solutions, LLC's ("Debtor") Rule 2004 exam and proposed complaint ("Draft Sierra Club Complaint") seek to punish Sierra Club—one of the nation's most venerated environmental organizations—for "pressuring" the City of Oakland to "vow that, at all costs, coal would not be handled, stored or shipped through the Terminal." The exam seeks "all documents in your possession," "including, but not limited to all" communications with the City concerning a range of subjects. Read literally, Debtor seeks all documents in Sierra Club's possession.

5. Debtor purports to seek information that would allow it to decide whether it has a claim against Sierra Club. But Debtor identifies nothing more than Sierra Club's protected advocacy to the government that took place nearly six years ago. The Court should reject Debtor's attempt to facilitate a billion-dollar lawsuit for conduct at the heart of Sierra Club's mission as a non-profit—*i.e.*, speech and petitioning activity that is absolutely protected by the First Amendment.

6. The Court's order allowing the exam should be reconsidered and clarified. In what appears to be a scrivener's error, the exam order permits discovery into the Oakland Coliseum, a subject having nothing to do with Sierra Club and which Debtor's motion does not mention. The order also permits virtually unlimited discovery from Sierra Club, despite significant overlap with Adversary Proceeding No. 24-03007 (the "Oakland Adversary Proceeding") and despite the Court's express statements disallowing discovery related to the Adversary Proceeding (which are quoted below). The Court should reconsider its motion entirely or, at a minimum, remove the

Oakland Coliseum as a permissible subject and require Debtor to re-serve requests that identify, with reasonable particularity, the documents sought.

### III.     Background

7. Sierra Club incorporates its Motion to Set Aside Order Granting Motion by the Reorganized Debtor for a Rule 2004 Examination of the Sierra Club [Doc. 504] as if fully restated herein.

8. On March 3, 2024, Debtor filed the Oakland Adversary Proceeding.

9. The Debtor's allegations (the "Oakland Complaint") include tortious interference with economic advantage and tortious interference with contract. See *Oakland Complaint* at p. 16-20.

10. On April 22, 2024, the Debtor filed its Motion by the Reorganized Debtor for a Rule 2004 Examination of the Sierra Club [Doc. 499] (the "2004 Motion").

11. The 2004 Motion asserts as grounds therefore that Debtor "continues to investigate, among other things, potential legal and equitable causes of actions against third parties for certain tortious interference claims… relating to the Debtor's contractual rights regarding the construction and financing of a proposed rail-to-ship terminal in Oakland, California…" *2004 Motion* at p. 1.

12. The 2004 Motion specifically requests "to take the deposition of a qualified representative of the Sierra Club and its Utah Chapter, and have those entities produce certain documents and communications relevant to the Debtor's contemplated claims." *Id*. The "contemplated claims" were attached as a draft adversary complaint identified as Exhibit "B" (the Draft Sierra Club Complaint).

13. In the Draft Sierra Club Complaint, the Debtor alleges fraud claims, aiding and abetting, and conspiracy claims based exclusively on Sierra Club's advocacy to the City. *See Id*.

Sixty-seven out of the one-hundred-twenty paragraphs in the Draft Sierra Club Complaint are identical or nearly identical to those in the Oakland Complaint. Compare *Id*. at ¶¶ 2-4, 8, 17, 18, 19, 20, 41, 43-47, 21-28, 64-67, 77-84, 88-120 with *Oakland Adversary Proceeding*, Doc. 1, ¶¶ 2-4, 8, 18, 23, 26, 35, 36, 38-42, 44-53, 54-62, 65-69, 76-83.

14. The Requests are not limited to the statements Debtor identifies in the Draft Sierra Club Complaint or the alleged actions on which it bases its claims. Instead, they broadly seek all of Sierra Club's records "in [its] possession," "including" "all" communications related to the terminal with no time limitation. Among other documents, the requests seek all of Sierra Club's communications with "any elected or appointed official of the City of Oakland" relating to the Debtor (Doc. 499-1 ¶ 3), OBOT (*id.* ¶ 4), the proposed terminal (*id.* ¶ 6), and Sumitomo Mitsui Banking Corporation (*id.* ¶ 5).

15. On April 26, 2024, this Court entered its Order Granting Motion by the Reorganized Debtor for a Rule 2004 Examination of the Sierra Club [Doc. 501] (the "2004 Order"). The 2004 Order was entered without opportunity to respond and without a hearing.

16. On May 24, 2024, Sierra Club filed its Motion to Set Aside Order Granting Motion by the Reorganized Debtor for a Rule 2004 Examination of the Sierra Club (the "Sierra Club 2004 Motion") [Doc. 504]. Debtor filed no response to the Sierra Club 2004 Motion.

17. On July 11, 2024, this Court conducted its hearing on the Sierra Club 2004 Motion and on the Debtor's Motion for a Rule 2004 Examination of the City of Oakland (the "Oakland 2004 Motion") [Doc. 508].

18. On August 26, 2024, this Court entered its Memorandum-Opinion Order Denying Motion to Vacate Order Granting Motion by the Reorganized Debtor for a Rule 2004 Examination of the Sierra Club (the "Sierra Club Order") [Doc. 524].

4

19. In the Sierra Club Order, the Court found that "[t]he Debtor's request herein is well within the limits of Rule 2004 as pre-litigation strategy for determining whether grounds exist for it to bring an action against the Sierra Club." *Sierra Club Order* at 7. The Court concluded its order by stating that "[a]ny discovery attempts regarding those matters set forth in the [Oakland Adversary Proceeding] are not within the scope of this Order." *Id*. at 8.

20. The same day, this Court entered its Memorandum-Opinion Order Granting the Motion by the Reorganized Debtor for Rule 2004 Examination of the City of Oakland (the "Oakland Order") [Doc. 523]. The Oakland Order also contained the statement that "[a]ny discovery attempts regarding those matters set forth in the [Oakland Adversary Proceeding] are not within the scope of this Order." *Id*. at p. 7.

21. Given the significant overlap between the Oakland Complaint and the Draft Sierra Club Complaint, more than half of the allegations in the Draft Sierra Club Complaint are not subject to Rule 2004 examination.

22. The Sierra Club Order also provided that the "Debtor is using Rule 2004 to conduct limited discovery surrounding the ongoing negotiations related to the sale of the Oakland Coliseum." *Sierra Club Order* at p. 4.

23. However, there is no mention in the 2004 Motion or the Draft Sierra Club Complaint of the City of Oakland's sale of the Coliseum. Furthermore, there is no mention of the sale of the Coliseum as it relates to Sierra Club at the hearing other than Debtor's counsel's representation that, "[t]he Rule 2004 subject matter is limited. . . It's limited to what is going on, what has happened with respect to the sale of the fifty-percent interest in the Coliseum." [Doc. 525-1, p. 28, lines 16-19].

24. Finally, the Sierra Club Order permits Debtor to issue requests to Sierra Club that do not specify with any particularity what is sought, and which, literally read, would require production of all of Sierra Club's records about anything.

25. Given the potential for misunderstanding or misuse of these orders, the significant and unnecessary burden of discovery the Debtor seeks to impose through its proposed 2004 examination, and the fact that Debtor's purported claims are a transparent attempt to chill protected advocacy to the government, Sierra Club filed the instant motion.

## IV.     Argument and Citation of Authority

> Rule 9024, applying Federal Rule of Civil Procedure 60, allows for reconsideration of an order when there is: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

*In re Bryan Road, LLC*, 389 B.R. 297, 299 (Bankr. S.D. Fla. 2008). Sierra Club submits that grounds for reconsideration of the Sierra Club Order include (A) mistake, inadvertence, surprise, or excusable neglect; and (B) any other reason justifying relief from the operation of the judgment.

A. Mistake, Inadvertence, Surprise or Excusable Neglect

Federal Rule of Civil Procedure 60(a) provides that the Court may, on motion, correct a "clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." "Rule 60(a) finds application where the record makes apparent that the court intended one thing but . . . did another." *In re Atravasada Land and Cattle Inc.*, 308 B.R. 255 (Bankr. S.D. Tex. 2008) (citing *Matter of West Texas Marketing Corp.*, 12 F.3d 487, 503 (5th Cir. 1994) (citations omitted)); *see Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 388

(6th Cir. 1998). The Court has an inherent power to make such corrections. *Allied Material Corp. v. Superior Products Co., Inc.*, 620 F.2d 224, 226 (5th Cir. 1980).

   1. Scope of the Sierra Club Order

This Court instructed in its Sierra Club Order that "discovery attempts regarding those matters set forth in the [Oakland Adversary Proceeding] are not within the scope of this Order." *Sierra Club Order* at p. 8. However, the earlier entered Rule 2004 Order demanded production of "[a]ll documents in [Sierra Club's] possession, including, but not limited to all Communications with City Officials." These "City Officials" are currently in litigation with Debtor in the Oakland Adversary Proceeding and the Debtor's business partner, OBOT, in California. *See Oakland Adversary Proceeding*, Doc. 25, p. 6-7, ¶16-19. The "Communications" the Debtor seeks in the 2004 Motion are those relating to the "Carbon Counties," the "Contracts," the Debtor, the "OBOT," the "SOMBC," the "Terminal," and the "Utah Funding," see *Rule 2004 Order*, Exhibit "A", all of which are subjects intimately related to the Oakland Adversary Proceeding. Compare Exhibit "A" with the *Oakland Complaint*.

The overlap between the Oakland Complaint and the Sierra Draft Complaint is significant. With sixty-seven nearly identical paragraphs, Debtor cannot, in good faith, claim that the discovery requests in its Rule 2004 Motion do not overlap with the Oakland Adversary Proceeding. To the extent the Court intended to forbid the Debtor from inquiring into matters related to the Oakland Adversary Proceeding in the Sierra Club Order—and thereby correct the original Rule 2004 Motion—the 2004 Order should be expressly limited to that effect, as reflected in the Proposed Order attached hereto.

Corrections of this kind are proper under FRCP 60 and Bankruptcy Rule 9024. In *Allied Materials Corp.*, for example, the district court announced that it found the defendant guilty of

7

civil contempt and ordered it to pay the plaintiff $1,200 orally, asking Allied to prepare a formal judgment to this effect. *See* 620 F.2d at 225. The district court later informed the parties by letter that the award was, in fact, $12,000. *See id*. The Tenth Circuit found the correction was proper under Rule 60(a) and the court's inherent power "to correct inadvertent mistakes." Likewise here, the court originally granted the 2004 Motion without providing time for a hearing or a motion, and then, upon the 2004 Sierra Club Motion, limited the scope of the proceeding to exclude discovery requests that would be duplicative of the discovery to be conducted in the A.P. Proceeding. *See Sierra Club Order* at p. 8. Correcting the order to reflect that limitation is procedurally proper, and will prevent misconstruction of the *Sierra Club Order* that otherwise could permit the Debtor to impose burdensome discovery on Sierra Club for its protected advocacy.

    2. *Ruling in the Sierra Club Order*

The Sierra Club Order provides that the Rule 2004 Examination is limited to the City of Oakland's sale of the Coliseum. *Sierra Club Order*, p. 4. However, the Debtor's Rule 2004 Motion makes no mention of the sale of the Coliseum. *See Rule 2004 Motion*. Sierra Club recognizes the Court's remark to be, in all likelihood, the type of oversight "of the sort that a clerk or [stenographer] might commit, mechanical in nature." *Dura-Wood Treating Co. Div. of Roy O. Martin Lumber Co. v. Century Forest Industries, Inc.*, 694, F.2d 112, 114 (5th Cir. 1984) (citing *Wright & Miller*, Federal Practice and Procedure: Civil § 2854 among other authorities). To the extent that the Sierra Club Order might be misconstrued with regard to this issue, Sierra Club requests an order clarifying that the 2004 Examination does not pertain to the sale of the Coliseum.

    3. *Scope of the Requests*.

An "order for the Rule 2004 examination is subject to objection." *In re Analytical Sys., Inc.*, 71 B.R. 408, 412 (Bankr. N.D. Ga. 1987). "The Court can, and frequently does, fashion

protective orders to safeguard rights of parties to the examination." Thus in *In re Analytical Sys., Inc.*, the court found that it could safeguard due process rights by requiring that a Rule 2004 examination designate "with reasonable particularity the matters on which examination is requested." *Id.* Here, the Requests fail to reasonably identify the documents sought, seeking, for example, "all Communications with City Officials." Thus, even independent of the overlap with the A.P., the Requests are insufficient–and so broad that the Court should require Debtor to narrow the requests and allow Sierra Club an opportunity to object, and if necessary, seek a protective order from the Court.

B.  <u>Any Other Reason Justifying Relief</u>

"Rule 60(b)(6) vests power in the court to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *L.M. Lethers' Sons v. Goldman*, 252 F.2d 188, 190 (6th Cir. 1958) (citing *Klapprott v. United States*, 355 U.S. 601, 614-15 (1949)) (nonmoving party obtained a consent judgment by way of a promise later broken). The reasons justifying relief under Rule 60(b)(6) include facts denoting a "procedural defect" or "irregularity," see *Smith v. Anderson*, 402 F.3d 718, 723 (6th Cir. 2005), as well as the Court's concern for the "broad equities" of the case. *See Fuller v. Quire*, 916 F.2d 358, 360 (6th Cir. 1990).

Relief is appropriate here because the potential claims that Debtor intends to investigate through the Rule 2004 deposition fail as a matter of law. Allowing the enormously broad discovery Debtor has requested would therefore be both extremely burdensome for Sierra Club, costing significant time and money—and entirely pointless.

The Draft Sierra Club Complaint contains claims for (1) tortious interference with a prospective economic advantage, (2) aiding and abetting tortious interference with contract, (3) aiding and abetting tortious interference with prospective economic advantage, (4) inducing breach

of contract, and (5) civil conspiracy. All of the claims seek to hold the Sierra Club liable for its efforts to influence policy speech, including speech to the government and public. Specifically, Debtor bases its claims on statements the Sierra Club made; lobbying it did to prevent city property from being used for coal shipments; proposed ordinances it drafted; and briefs it filed in lawsuits. *See, e.g.*, Sierra Club Complaint ¶¶ 6-7, 29, 31, 34-36, 41-42, 48-53, 73, 81-83, 92-96, 103-106, 114-117. Under black-letter law, all of this conduct is absolutely protected by the First Amendment.

*First*, the First Amendment protections for petitioning activity, as articulated by *Noerr-Pennington* doctrine, immunizes the Sierra Club's conduct from liability. That doctrine, which is named for the two Supreme Court cases that established it, allows individuals to "lobby to influence the legislative, executive, or judicial branches of government or administrative agencies" without subjecting themselves to antitrust, common-law, or tort liability "because the First Amendment's right of petition protects such activities." *Knology, Inc. v. Insight Commc'ns Co.*, 393 F.3d 656, 658 (6th Cir. 2004). All of the claims threatened against Sierra Club fail because they target its exercise of core First Amendment rights: petitioning the government to express its view that a bulk commodity terminal transporting coal should not be built an Oakland. Such speech on matters of public interest "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)). "Although the *Noerr-Pennington* doctrine was initially recognized in the antitrust field, the federal courts have by analogy applied it to claims brought under both state and federal laws." *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 790 (6th Cir. 2007); *see also Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 392 (E.D. Va. 2002) ("It is now clear that the doctrine has been extended to confer

immunity from a variety of tort claims, including claims of tortious interference and abuse of process.").

Courts have applied the doctrine, for example, to bar claims for lobbying a government agency to adopt a preferred policy, as Sierra Club is alleged to have done here—including but not limited to claims for tortious interference and civil conspiracy. *See, e.g.*, *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 487 (6th Cir. 2023) ("[B]ecause Geomatrix cannot make out a claim for fraud or tortious interference because it relies on immunized conduct…dismissal of these claims is proper."); *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988) (applying doctrine to tortious interference claims); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (applying *Noerr-Pennington* to tortious interference and civil conspiracy claims); *Rondigo, LLC v. Twp. of Richmond*, No. 08-cv-10432, 2012 WL 1021726, at *5, *8 (E.D. Mich. Mar. 27, 2012) (applying *Noerr-Pennington* to Section 1983 and defamation claims), aff'd, 522 F. App'x 283 (6th Cir. 2013); *Evers v. Custer Cnty.*, 745 F.2d 1196, 1204 (9th Cir. 1984) ("At most they urged the County to remedy the problem of the closing of what they believed was a public road. This activity falls within the first amendment's protection of the right to petition the government for redress of grievances."); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 615 (8th Cir. 1980) (no § 1983 liability "for activity ostensibly designed to influence public policy"); *Melea Ltd. v. Quality Models Ltd.*, 345 F. Supp. 2d 743, 758 (E.D. Mich. 2004) ("[T]he *Noerr–Pennington* doctrine bars Defendant's counterclaim for tortious interference with a business relationship arising from Plaintiffs' letters to Defendant's customers.").

Similarly, courts have recognized that filing a lawsuit, or a brief in litigation, is likewise protected under *Noerr-Pennington*. *See California Transport v. Trucking Unlimited*, 404 U.S. 508,

510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); *Nader v. Democratic Nat. Committee*, 567 F.3d 692, 696 (D.C. Cir. 2009) ("[T]he Supreme Court has treated lawsuits as petitions."); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1080 n.4 (8th Cir. 1999) ("[T]he First Amendment generally immunizes the act of filing a lawsuit from tort liability under the *Noerr-Pennington* doctrine."); *Eurotech*, 189 F. Supp. 2d at 392 ("[I]t is equally clear that concerted activity aimed at seeking redress from courts is immunized for the same reasons that support immunity for such activity when aimed at legislative and administrative bodies.").

Moreover, *Noerr-Pennington* applies because "governmental action, not private conduct, harmed" Debtor. *Geomatrix, LLC v. NSF Int'l*, 82 F.4th 466, 482–83 (6th Cir. 2023). And this is true even though the proposed claims would be brought between private parties. *See, e.g., California Motor Transp. Co.*, 404 U.S. at 510 (private litigation between trucking companies); *GoSecure Inc. v. Bhandari*, __ F. Supp. 3d. __, 2022 WL 15526054, at *7 (E.D. Va. Oct. 26, 2022) (trademark litigation); *Motown Record Company, L.P. v. Kovalcik*, 2009 WL 455137, at *4 (E.D. Pa. Feb. 23, 2009) (copyright suit). So long as "[p]laintiffs have a right to protect their business interests . . . and have done so within the boundaries of the law and Court-sanctioned procedures," *Noerr-Pennington* bars any claim or counterclaim that challenges the filing of the original lawsuit. *Motown Record Company*, 2009 WL 455137 at *4.

*Second*, to the extent the claims are based on Sierra Club's speech, they independently are barred by the First Amendment's protections for free speech because the Debtor has not identified any false statement of fact that allegedly caused it harm. "If a statement is protected, either because it is true or because it is privileged, that 'protection does not depend on the label given the cause of action.'" *Francis v. Dun & Bradstreet, Inc.*, 3 Cal. App. 4th 535, 540 (1992). *See also Hustler*

*Mag., Inc. v. Falwell*, 485 U.S. 46, 50, 54-56 (1988) (First Amendment barred emotional distress claim for same reasons as defamation claim). Here, Debtor does not allege that any of the statements on which it bases its claims are false. This dooms all of the claims. *Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1367 (1998) (First Amendment barred "claims for invasion of [Plaintiff's] relationship with its marketing executives"); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1012-13 (2001) (same; rejecting interference with economic advantage claim).

*Third*, even setting aside the constitutional bars, the proposed claims would fail. A tortious interference claim fails as a matter of law where the person allegedly interfering with another's contracts or business prospects is asserting its own, lawful interests. *See NCAA v. Hornung*, 754 S.W.2d 855, 858 (Ky. 1988) ("Even if evidence is presented which would otherwise make a submissible case [of tortious interference], the party whose interference is alleged to have been improper may escape liability by showing that he acted in good faith to assert a legally protected interest of his own."). *See also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158-59 (2003) (requiring an independently wrongful act "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard"). The Sierra Club has a First Amendment right to petition the government. Exercising that right cannot constitute tortious interference. *See Geomatrix, LLC*, 82 F.4th at 487 (plaintiff "cannot make out a claim for fraud or tortious interference because it relies on immunized conduct").

*Finally*, Debtor's proposed claims against the Sierra Club are time-barred. The Debtor had two years to bring its claims as alleged in the Draft Complaint. Cal. Gov. Code § 945.6(a)(2); *Lundeen Coatings Corp. v. Dep't of Water & Power*, 232 Cal. App. 3d 816, 827 (1991); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013) ("A tortious-interference claim typically accrues 'at the date of the wrongful act.'"). Its allegations against the Sierra Club

almost exclusively date back to 2018, more than four years outside the statute of limitations. Debtor cannot use post-confirmation jurisdiction to pursue state law claims that are time-barred. To the extent the Debtors have attempted to identify more recent actions, those consist *exclusively* of generic public statements by the Sierra Club opposing coal in Oakland, which are protected by the First Amendment (Draft Complaint at paragraphs 52-53, 60(b)), and conclusory allegations that Sierra Club "actively participated in and encouraged" the City's alleged misconduct, which do not allege any facts whatsoever as to *how*. *See id.* at paragraphs 49-50, 52.[2]

In short, all the things the Sierra Club is alleged to have done here are protected from liability by *Noerr-Pennington* and the First Amendment; fail on their own terms; and/or are time-barred. In the event Debtor were to actually file such a complaint, Sierra Club would seek immediate dismissal on the pleadings, heading off discovery before it could begin. The 2004 exam therefore would serve only to burden Sierra Club and as a work-around to obtain "early" discovery that the Debtor would otherwise never be able to get. It is precisely the kind of request that exceeds the bounds of Rule 2004. *E.g., In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000) ("Rule 2004 examinations cannot be used for the purpose of abuse or harassment and the examination cannot go beyond the bounds of what is, or may be, relevant to the inquiry"); *In re Michalski*, 449 B.R. 273, 282 (Bankr. N.D. Ohio 2011) (Rule 2004 examinations "should not be so broad as to be more disruptive and costly to the party sought to be examined than beneficial to the party).

---

[2] The Draft Complaint also in conclusory fashion alleges that the Debtor "did not ascertain that the City's conduct (and [Sierra Club's] aiding and abetting of that conduct) was without basis and unjustified until January 23, 2024, when the State Court entered Judgment, finding that the City's purported termination of the Ground Lease was unlawful," Draft Complaint at paragraphs 86, 99, 110, 120, presumably in order to invoke the discovery rule. That "misunderstands the discovery rule; it provides that plaintiff's claim accrues 'when the plaintiff suspects or should suspect that her injury was caused by wrongdoing'—not when [plaintiff] learns of the legal theory that would support recovery." *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 524 (N.D. Cal. Nov. 27, 2012) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110, (1988)).

## CONCLUSION

Wherefore, Sierra Club respectfully requests that the Court enter an order setting aside the Sierra Club Order in its entirety and granting the relief requested in the Sierra Club Motion to Vacate. In the alternative, Sierra Club requests that the Court enter an order clarifying and limiting the Rule 2004 Exam of the Sierra Club.

Respectfully submitted,

/s/ Tyler R. Yeager
CHARITY S. BIRD
MICHAEL P. ABATE
TYLER R. YEAGER
**Kaplan Johnson Abate & Bird, LLP**
710 West Main Street
Fourth Floor
Louisville KY 40202
Telephone: 502-540-8285
Facsimile: 502-540-8282
E-mail: cbird@kaplanjohnsonlaw.com
E-mail: mabate@kaplanjohnsonlaw.com
E-mail: tyeager@kaplanjohnsonlaw.com
*Counsel for Sierra Club*

## CERTIFICATE OF SERVICE

It is hereby certified that on September 9, 2024, a true and correct copy of the foregoing was (a) mailed electronically through the U.S. Bankruptcy Court's ECF system at the electronic addresses as set forth in the ECF system to the U.S. Trustee and all other persons receiving electronic notifications in this case, and (b) mailed, first-class, postage prepaid, to those persons, if any, identified in the Court's Notice of Electronic Filing who do not receive electronic notice but are entitled to be served.

/s/Tyler R. Yeager
TYLER R. YEAGER