# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INSIGHT TERMINAL SOLUTIONS, LLC et al. | ) | CASE NO. 19-32231 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Honorable Judge Joan A. Lloyd |
| | ) | |

### DEFENDANT CITY OF OAKLAND'S OBJECTION TO ITS' MOTION TO COMPEL CITY OF OAKLAND TO COMPLY WITH THE COURT'S ORDER GRANTING RULE 2004 MOTION

The City of Oakland ("Defendant" or "the City"), respectfully provides this objection to Insight Terminal Solutions, LLC ("ITS") *Motion to Compel City of Oakland to Comply with the Court's Order Granting Rule 2004 Motion* (the "Motion") [Dkt. 560]. In support of this Response, the City provides as follows:

### INTRODUCTION

1. This Motion pertains to the document request that was attached to ITS's Motion for Rule 2004 Examination. In compliance with the Court's orders, after a thorough and diligent review, the City identified no records showing any conceivable connection between ITS, its estate, and the Coliseum deal – a 2024 sale of a sports stadium.

2. When ITS objected to the City's response, the City explained ITS of its search and noted that if ITS believed that the scope of the Debtor's post-petition assets for purposes of §549(a) would extend beyond "the West Gateway terminal or the ITS Sublease (which for these purposes, the City will assume is Debtor 'property' notwithstanding our legal dispute as to the validity of that document), please do let us know." *See* **Exhibit A**, Leonard Decl.

24620804.v3

3.  The Debtor did not try to make any connection or attempt to respond to this request, instead, that day, filed an emergency motion to require the City to attend a hearing on short notice across the country. [Dkt. 560.] The Debtor did not consult with counsel for the City in advance of filing the request for expedited hearing. *See* **Exhibit A**, Leonard Decl.

4.  The Debtor's Motion to Compel was filed in bad faith, and should be denied..

## BACKGROUND

**I.  THERE ARE NO DOCUMENTS THAT ARE RESPONSIVE TO THE DEBTOR'S 2004 SUBPEONA OR THAT COULD BE COMPELED FROM THE CITY THAT RELATE TO POST-PETITION TRANSFERS FOR THE DEBTOR.**

5.  The Court granted ITS's Rule 2004 Motion with instructions. [Dkt. 523.] Specifically, the Court noted that the subject matter of examination was limited, and that the examination was not to be used to conduct discovery in the related adversary proceeding against the City (which was already pending at the time this Rule 2004 motion was filed and resolved). *Id*. at 6-7. ITS did not raise any objection or move for reconsideration with respect to these instructions:

> Debtor has established that the reason for the Rule 2004 Examination is to determine whether the City's transactions with respect to the Coliseum may constitute an avoidable post-petition transaction under 11 U.S.C. § 549(a) of the United States Bankruptcy Code. The parties herein, however, are cautioned that this Court's Order allowing the requested Rule 2004 Examination of the City of Oakland is not intended for any party to conduct examination of any party related to the matters outside those in the Debtor's Motion for the Rule 2004 Examination. Any discovery attempts regarding those matters set forth in the pending Adversary Proceeding, A.P. No. 24-03007 are not within the scope of this Order.

*Id*.

6.  Post-petition transfers are defined by the Bankruptcy Code in section 549:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

2

24620804.v3

>   (1) that occurs after the commencement of the case; and
>   (2)
>>  (A) that is authorized only under section 303(f) or 542(c) of this title [11 USCS § 303(f) or 542(c)]; or
>>  (B) that is not authorized under this title or by the court
>
> …………..
>
> (d) An action or proceeding under this section may not be commenced after the earlier of—
>   (1) two years after the date of the transfer sought to be avoided; or
>   (2) the time the case is closed or dismissed.

11 USC § 549.

7.  The purpose section 549 is to allow trustee to avoid specified postpetition transfers, whether or not they deplete estate; so what matters is not what effect transfer had on estate, but whether debtor transferred property that did not belong to her and without right to do so. *Feldman v. People First Fed. Credit Union (In re White)*, 2019 Bankr. LEXIS 2451 (Bankr. E.D. Pa. Aug. 7, 2019), aff'd, 2020 U.S. Dist. LEXIS 56395 (E.D. Pa. Mar. 31, 2020).

8.  Therefore, in considering the scope of the 2004 Order and section 549, the City looked at what documents it could have would be responsive. First, the City looked through the prior bankruptcy filings that included the Debtor's schedules, plan of reorganization, monthly operating reports and arguments to better understand what property the Debtor claimed. The City identified the Debtor had limited assets and defined them as the right to construct the West Gateway terminal or the ITS Sublease (which have been defined in related motions).

9.  Additionally, the City reviewed the Debtor's Confirmation Order entered September 10, 2020 [Dkt. 379], that provided that following the Effective Date, the Debtor "may operate its business and use, acquire, and dispose of property and settle and compromise, Claims, Interest, or Litigation Claims without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Rules…" [Dkt. 379, ¶ 11.]

10. The City disputes that the West Gateway terminal project or the ITS Sublease are the Debtor's assets (in light of the pending California state court litigation over the City's termination of the underlying Ground Lease); however, for purposes of responding to these Requests, the City accepted Debtor's identification to set the scope. Because the City had previously moved for reconsideration, which the Court denied on January 28, 2025, the City complied with Court's review of reach.

11. With these considerations, the City of Oakland diligently complied with this Court's instruction, sought to identify documents that pertained to the transaction identified by Debtor (the sale of a City-owned sports stadium) and the West Gateway project, ITS or the ITS Sublease. The City responded in writing to ITS's Rule 2004 with both its objections and, notwithstanding those objections, a response explaining that there were no documents with respect to the topic permitted by this Court: "whether the City's transactions with respect to the Coliseum may constitute an avoidable post-petition transaction under 11 U.S.C. § 549(a)."

12. Again, after explaining again that a search for documents connecting the Coliseum deal and ITS turned up no responsive documents, counsel for the City asked "If you believe that the City is not correct, and there is some category of responsive documents that involve both the Coliseum and the West Gateway terminal or the ITS Sublease … please do let us know." Leonard Decl., Ex. A.

13. No response was provided. *Id*. No meet and confer occurred. Instead, this emergency Motion to Compel was filed.

## ARGUMENT

**I. ITS'S MOTION FAILS TO PROVIDE THIS COURT WITH ANY REASON TO CONCLUDE THE CITY HAS FAILED TO PRODUCE DOCUMENTS**

24620804.v3

14. First and foremost, the City *did* respond to ITS's document requests, by explaining that there are no responsive documents.

15. Given the scope of the 2004 Order which was focused on the Debtor's post-petition transfer of assets and the 2024 transaction of the City's sports stadium, it should not be surprising that there are no responsive documents to be produced.

16. But ITS's Motion asks the Court to ignore logic and simply assume documents exist pertaining to ITS in the context of the Coliseum deal. Instead, it says "just cannot be" that the City "has no documents responsive to ITS's discovery request," as limited by the Court's specific order granting this request. Motion, Page 5. However, a "mere suspicion that the producing party possesses additional information that it has failed to disclose is an insufficient basis for a motion to compel." *Howard v. Onion*, No. 1:20-CV-02802-JG, 2023 U.S. Dist. LEXIS 127381, *8 (N.D. Ohio July 24, 2023) (internal citations and quotations omitted). Even "'an informed suspicion that additional non-privileged documents exist ... cannot alone support an order compelling production of documents.'" *Roe v. Bishop of Charleston*, No. 2:21-CV-00020-RMG, 2021 WL 4272595, at *4 (D.S.C. Sept. 20, 2021) (collecting cases) (emphasis added).

17. Here, ITS has offered no basis to question the accuracy of City's representation that its search revealed no responsive documents. This Court should accordingly deny ITS's motion on that basis alone. *Dreger v. KLS Martin, LP*, No. 2:20-CV-3814, 2023 WL 532012, at *5 (S.D. Ohio Jan. 27, 2023) (if a party "do[es] not provide any evidence demonstrating that responsive documents do, in fact, exist and are being unlawfully withheld, [her] motion to compel must fail") (brackets original).

24620804.v3

18. ITS wants to revisit and expand this Court's prior order, in which this Court carefully delineated the scope of this Rule 2004 examination as specifically limited to issues pertaining to section 549(a) transfers of Debtor property. [Dkt. 523.]

19. Even worse, ITS fails to inform this Court that it has very recently disclaimed reliance on section 549(a) at all. In a recent filing to the District Court, ITS represented to the District Court that the Rule 2004 examination was no longer based on section 549(a) but based on claims that may arise under California state law. Specifically, ITS said: "Section 549(a) is no longer at issue between the parties." W.D.K.Y. Case No. 3:25-cv-00065 Dkt. ECF 10 at 7. ITS cannot have things both ways: arguing here it wants to compel information related to Section 549(a) and then informing the District Court it is not relying on claims related to the Bankruptcy Code. This Court was extremely clear in limiting ITS to examination only on section 549(a) matters, because otherwise this would expand into discovery in the adversary proceeding, which is subject to a different set of procedures and rules. [Dkt. 523 at 6-7.]

## II. THE DEBTOR HAS FAILED TO MEET AND CONFER IN GOOD FAITH AND HAS NOT MET MOTION TO COMPEL STANDARD

20. Rule 37 of the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>") requires a party filing a motion to compel discovery to include a certification that the movant has, in good faith, conferred or attempted to confer with the opposing party in an attempt to resolve the dispute without court involvement. Fed. R. Civ. P. 37(a)(1); *see also Rhiel v. Hook (In re Johnson)*, 408 B.R. 115, 119 (Bankr. S.D. Ohio 2009). The purpose of this certification requirement is "to encourage litigants to resolve discovery disputes by informal means before filing a motion with the court." *Rhiel*, 406 B.R. at 120 (citing *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996)).

21. To properly effectuate this purpose, the moving party must "set forth in the motion essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties." *Shuffle Master*, 170 F.R.D. at 171. Thus, a certification of a meet and confer must include "the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, [and] the dates, times, and results of their discussions." *Id.* It is the movant's responsibility to adequately describe the attempts to confer and resolve, and will not allow emails or letters attached to the motion to substitute the movant's certification requirement. *See Rhiel*, 406 B.R. at 121; *see also Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001) ("The Court is unwilling to decipher letters between counsel to conclude that the requirement is met."); *Sanchez v. Washington Mutual Bank (In re Sanchez)*, 2008 WL 4155115, *2 (Bankr. E.D. Cal. Sept. 8, 2008) ("The court will not wade through a lengthy series of letters in order to determine whether the parties in good faith attempted to resolve their differences.").

22. Good faith under the certification requirement requires a "genuine attempt" to "meaningfully discuss the discovery dispute" and resolve the dispute through non-judicial means. *Shuffle Master*, 170 F.R.D at 171. The "moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss *each contested discovery dispute* in a genuine effort to avoid judicial intervention." *Id.* (emphasis added). Thus, the prerequisite to a valid motion to compel discovery is "the honest effort to discuss the issue in hope of reaching resolution." *Rhiel*, 408 B.R. at 120.

23. At least one bankruptcy court in the Sixth Circuit has denied a motion to compel discovery when the movant failed to provide the necessary "who, where, how, and when" specifics required for a meet and confer certification. *See Rhiel*, 408 B.R. at 121-22; *see also Shuffle Master*,

24620804.v3

170 F.R.D at 171 (stating that a proper certification must include the names of the parties who conferred, the manner by which they communicated, the dispute at issue, and the dates, times, and results of the discussions).  In *Rhiel*, the movant's meet and confer certification in her motion to compel discovery provided the following assertion: "By way of informal efforts, [c]ounsel for [the movant] tried by phone, email, . . . and letter . . . to obtain [the responding party's] compliance, but she refuses to comply."  *Rhiel*, 408 B.R. at 121.  The movant also included emails and letters between the parties as attachments to the motion to compel.  *Id.*  However, the court found that the movant's description of her meet and confer attempts did not provide the necessary specifics required for a certification.  Further, the court refused to search through and interpret the attached correspondence to determine whether the movant satisfied her certification obligations.

24. Here, ITS has not provided the necessary "who, where, how, and when" specifics required for a proper meet and confer certification, and did not fully engage in the meet and confer process.

25. In the Motion, ITS states that its counsel and counsel for the City had a "meet and confer" on **February 4, 2025** and a subsequent email exchange.  With regards to the "meet and confer," ITS simply states that the parties had the "meet and confer" on February 4, 2025 and that during the "meet and confer," the City agreed to provide ITS with responsive documents on or before March 4, 2025.  [Docket No. 560, ¶¶ 6-7.]  There are no details about the manner in which the "meet and confer" was carried out or the specific disputes discussed during the "meet and confer."

26. As ITS points out in its Motion, the City "offered to respond to the document requests contained in the Rule 2004 motion in 30 days, by March 4."  [Docket No. 560, ¶ 7.]  The City did, in fact, respond to the documents request by the deadline but determined after a diligent

8

24620804.v3

search that no responsive documents exist.  It appears that ITS anticipated that the City would produce responsive documents by the deadline, but it seems to have come up with this assumption on its own and the fact that "[a]t no time did the City suggest that it would not produce documents on or before March 4."  [Docket No. 560, ¶ 7.]

27. This apparent misunderstanding highlights the inadequacy of any alleged "meet and confer" that occurred before the filing of the Motion.  After ITS received the City's written response, explaining the lack of responsive documents, ITS sent a single e-mail to counsel, demanding production.  The City's counsel responded by asking ITS to provide further explanation for how or why there could be documents connecting ITS, the estate, or the ITS Sublease to the Coliseum deal.  ITS did not respond, and filed this motion.  Therefore, ITS has not met its good faith requirement because it has not shown that it has made a genuine attempt to meaningfully discuss the dispute at issue in the Motion with the City.

## CONCLUSION

WHEREFORE, the City respectfully requests that the Bankruptcy Court deny ITS's Motion.

24620804.v3

Dated: March 10, 2025 By: /s/ *April A. Wimberg*
April A. Wimberg
DENTONS BINGHAM GREENBAUM LLP
3500 PNC Tower, 101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3719
Email: april.wimberg@dentons.com

Maria S. Bee, Chief Asst City Attorney (SBN 167716)
Ryan Richardson, City Attorney (SBN 223548)
Kevin McLaughlin, Supervising Deputy City Attorney (SBN 251477)
THE CITY OF OAKLAND
One Frank Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-3601
Email: mbee@oaklandcityattorney.org
       rrichardson@oaklandcityattorney.org
       kmclaughlin@oaklandcityattorney.org

Monique D. Jewett-Brewster (SBN 217792)
HOPKINS & CARLEY, ALC
The Letitia Building
70 S First Street
San Jose, CA 95113-2406
Telephone: (408) 286-9800
Email: mjb@hopkinscarley.com

Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Email: dleonard@altshulerberzon.com

*Attorneys for Defendant,*
*City of Oakland*

## CERTIFICATE OF SERVICE

The foregoing was served on March 10, 2025 via the Court's CM/ECF System.

*/s/ April A. Wimberg*
April A. Wimberg
*Counsel for Defendant, City of Oakland*

24620804.v3